1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    JACOB R. SORENSEN (Cal. Bar No. 209134)
2   jake.sorensen@pillsburylaw.com
    JOHN M. GRENFELL (Cal. Bar No. 88500)
3   john.grenfell@pillsburylaw.com
    ALEKZANDIR MORTON (Cal. Bar No. 319241)
4   alekzandir.morton@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
5   San Francisco, CA 94111-5998
    Telephone:     (415) 983.1000
6   Facsimile:     (415) 983.1200

7   Attorneys for Defendants
    THE BOARD OF TRUSTEES OF THE
8   LELAND STANFORD JUNIOR UNIVERSITY;
    R. LANIER ANDERSON; DAN EDELSTEIN;
9   PARNA SENGUPTA; ELIZABETH SOROKA;
    JENNY MARTINEZ; AND RICHARD SALLER

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14

15  AMEER HASAN LOGGINS,                      Case No. 3:24-cv-02027 JSC

16          Plaintiff,                        NOTICE OF MOTION AND
                                              MOTION OF STANFORD AND SIX
17          vs.                               INDIVIDUAL DEFENDANTS TO DISMISS
                                              FIRST AMENDED COMPLAINT AND
18  LELAND STANFORD JUNIOR UNIVERSITY;        STRIKE DEFAMATION CLAIM
    KEVIN T. FEIGELIS; R. LANIER
19  ANDERSON; DAN EDELSTEIN; PARNA            Hearing Date: July 18, 2024
    SENGUPTA; ELIZABETH SOROKA; JENNY         Time: 10:00 a.m.
20  S. MARTINEZ; and RICHARD SALLER,          Courtroom: 8

21          Defendants.                       Before the Honorable Jacqueline Scott Corley

22

23

24

25

26

27

28

1

<u>TABLE OF CONTENTS</u>

2    I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...........................................1

3    II.   STATEMENT OF ALLEGED FACTS.................................................................3

4          A.    Plaintiff's Actions on October 10 and Stanford's Response ............................3

5          B.    The Individual Defendants.................................................................5

6          C.    Plaintiff's Eight Claims for Relief .......................................................6

7    III.  PROCEDURAL STANDARDS.........................................................................7

8    IV.   ARGUMENT ...............................................................................................7

9          A.    Plaintiff Makes No Plausible Allegation That Any Adverse Employment
                 Action Had Anything To Do With His Race, Skin Color, or Religion ............7
10
                 1.    But-For Causation Under 42 U.S.C. § 1981 .......................................9
11
                 2.    Motivating Factor Causation Under Title VII ....................................10
12
                 3.    California FEHA Claims.............................................................11
13
                 4.    The Individual Defendants ...........................................................11
14
          B.    The Complaint Fails to State a Claim for Retaliation.....................................12
15
                 1.    An Employee's Denial of a Charge of Misconduct Is Not "Protected
16                     Activity" Such That the Employer's Subsequent Investigation of That
                       Charge Becomes "Retaliation" ..........................................................13
17
                 2.    Even if Plaintiff had Identified a Protected Activity, He Has Not Pled
18                     Causation..................................................................................14

19               3.    In Any Event, the Individual Defendants Cannot Be Liable for
                       Retaliation ................................................................................14
20
          C.    Plaintiff's Defamation Claim Should Be Stricken Under The California Anti-
21               SLAPP Statute ..............................................................................14

22               1.    The Defamation Claim Arises From Protected Activity.....................17

23               2.    Plaintiff's Defamation Claim Lacks Merit As A Matter of Law. ........18

24        D.    In the Alternative, the Defamation Claim Should be Dismissed....................20

25   V.    CONCLUSION.................................................................................21

26

27

28

1

**Table of Authorities**

2

<u>Cases</u>

3

*1-800 Contacts, Inc. v. Steinberg*,
4         107 Cal. App. 4th 568 (2003) ...................................................................................18

5

*Albro v. Spencer*,
          854 F. App'x 169 (9th Cir. 2021) ........................................................................12, 14
6

*Ames v. City of Novato*,
7         No. 16-cv-02590-JST, 2016 WL 6024587 (N.D. Cal. Oct. 14, 2016)......................12

8

*Astre v. McQuaid*,
9         804 Fed. Appx. 665 (9th Cir. 2020)........................................................................9, 10

10

*Baron v. Staff Benefits Management, Inc.*,
          No. 22cv691-LL-DDL, 2023 WL 8241537 (S.D. Cal. Nov. 28, 2023)...................9, 10

11

*Barrett v. Rosenthal*,
12        40 Cal. 4th 33 (2006) ...............................................................................................17

13

*Bell Atl. Corp. v. Twombly*,
          550 U.S. 544 (2007)....................................................................................................7
14

*Briggs v. Eden Council for Hope & Opportunity*,
15        19 Cal. 4th 1106 (1999) ......................................................................................15, 17

16

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
17        589 U.S. 327 (2020).....................................................................................................9

18

*Damon v. Ocean Hills Journalism Club*,
          85 Cal. App. 4th (2000) .............................................................................................17
19

*Dean v. Friends of Pine Meadow*,
20        21 Cal. App. 5th 91 (2018) ..................................................................................18, 19

21

*Defrancesco v. Arizona Bd. of Regents*,
22        No. 21-16530, 2023 WL 313209 (9th Cir. Jan. 19, 2023)..................................10, 11

23

*Doe v. Roman Catholic Archbishop of Los Angeles*,
          247 Cal. App. 4th 953 (2016) ....................................................................................19
24

*Fabbrini v. City of Dunsmuir*,
25        544 F. Supp. 2d 1044 (E.D. Cal. 2008)......................................................................17

26

*Fayver v. Vaughn*,
27        649 F.3d 1061 (9th Cir. 2011) (per curiam)................................................................7

28

*Freitag v. Ayers*,
          468 F.3d 528 (9th Cir. 2006) .....................................................................................12

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ...................................................................................20

*Grinzi v. San Diego Hospice Corp.*,
  120 Cal. App. 4th 72 (2004) ...................................................................................13

*Gunn v. Drage*,
  65 F.4th 1109 (9th Cir. 2023) .................................................................................15

*Guz v. Bechtel Nat. Inc.*,
  24 Cal. 4th 317 (2000) ...........................................................................................11

*Hecimovich v. Encinal School Parent Teacher Organization*,
  203 Cal.App.4th 450 (2012) ...................................................................................18

*Jones v. Lodge Torrey Pines Partnership*,
  42 Cal. 4th 1158 (2008) .........................................................................................14

*Kephart v. Genuity, Inc.*,
  136 Cal. App. 4th 280 (2006) .................................................................................19

*Makaeff v. Trump Univ., LLC*,
  775 F.3d 254 (9th Cir. 2013) ..................................................................................15

*Metabolife Intern., Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ..................................................................................15

*Miller v. Maxwell Int'l Inc.*,
  991 F.2d 583 (9th Cir. 1993) .............................................................................12, 14

*Navellier v. Sletten*,
  29 Cal. 4th 82 (2002) .............................................................................................15

*Parents for Privacy v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ...................................................................................7

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ..................................................................................16

*Reno v. Baird*,
  18 Cal. 4th 640 (1998) ...........................................................................................12

*Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO*,
  105 Cal. App .4th 913, 919-24 (2003) ....................................................................18

*Scott v. McDonnell Douglas Corp.*,
  37 Cal. App. 3d 277 (1974) ....................................................................................18

*Shahid Buttar for Congress Committee v. Hearst Communications, Inc.*,
  2023 WL 298023 (N.D. Cal. April 18, 2023) ..........................................................17

-iii-

1

*Sharifi Takieh v. Banner Health*,
2   515 F. Supp. 3d 1026 (D. Ariz. 2021) ...................................................................10

3   *Tarin v. Cnty. of Los Angeles*,
    123 F.3d 1259 (9th Cir. 1997) ...............................................................................12
4

    *United States v. Corinthian Colleges*,
5   655 F.3d 984 (9th Cir. 2011) .................................................................................21

6   *University of Texas Southwestern Medical Center v. Nassar*,
    570 U.S. 338 (2013).................................................................................................10
7

    *Vasquez v. County of Los Angeles*,
8   349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004) .....................................11

9
    *Verizon Delaware, Inc. v. Covad Comms. Co.*,
10  377 F.3d 1081 (9th Cir. 2004) ..........................................................................15, 20

11  *Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................15
12

    *Whitehead v. Pacifica Senior Living Mgmt. LLC*,
13  No. 21-15035, 2022 WL 313844 (9th Cir. Feb. 2, 2022) .......................................11

14  *Wilson v. Parker, Covert & Chidester*,
    28 Cal. 4th 811 (2002) ...........................................................................................16
15

16  *Wood v. City of San Diego*,
    678 F.3d 1075 (9th Cir. 2012) (*internal citations omitted*) ...................................10
17

    *Yanowitz v. L'Oreal USA, Inc.*,
18  36 Cal. 4th 1028 (2005) .........................................................................................13

19  *Yoshimoto v. O'Reilly Auto., Inc.*,
    No. C 10-5438 PJH, 2013 WL 6446249 (N.D. Cal. Dec. 9, 2013) .........................12
20

21                                    Statutes and Codes

22  California Code of Civil Procedure
23      Section 415.16(b)(1) ........................................................................................15
        Section 425.16..........................................................................................1, 2, 7, 15
24      Section 425.16(a) .............................................................................................15
25      Section 425.16(c)(1) ................................................................................1, 15, 20
        Section 47(b).....................................................................................................18
26      Section 47(b)(1) ..........................................................................................18, 19
        Section 47(b)(2) ...............................................................................................18
27      Section 12940....................................................................................................11

28

California Code, Government Code Section 12940(h).................................................6, 13
    Section 12940(k).................................................................................................6

California Fair Employment and Housing Act, Government Code
    Section 12940(a).................................................................................................6

California Labor Code Section 98.6 ................................................................6, 12, 13
    Section 98.6(a)..................................................................................................13

Title VII of the Civil Rights Act of 1964............................................................ passim

United States Code Annotated Title 42
    Section 2000e *et seq*..........................................................................................6
    Section 2000e-2(a)(1) ......................................................................................10
    Section 2003-e(a) .............................................................................................13
    Section 42.....................................................................................6, 9, 10, 11

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
    Section 12(b)(6) ........................................................................................ passim
    Section 56...........................................................................................................16

1                                   **NOTICE OF MOTION AND MOTION**

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3           PLEASE TAKE NOTICE that on July 18, 2024, at 10:00 a.m. or as soon thereafter as the

4   matter may be heard, in Courtroom 8 of the above-entitled Court, at 450 Golden Gate Avenue in San

5   Francisco, California, before the Honorable Jacqueline Scott Corley, Defendants The Board of

6   Trustees of the Leland Stanford Junior University (sued as Leland Stanford Junior University)

7   ("Stanford"), R. Lanier Anderson, Dan Edelstein, Parna Sengupta, Elizabeth Soroka, Jenny

8   Martinez, and Richard Saller will and hereby do move, pursuant to Rule 12(b)(6) of the Federal

9   Rules of Civil Procedure, for an order dismissing the First through Seventh Causes of Action in the

10   First Amended Complaint herein (Dkt. No. 7) (the "Complaint" or "FAC") with prejudice, on the

11   ground that they fail to state a claim on which relief can be granted.  In addition, said Defendants

12   will and hereby do move, pursuant to California Code of Civil Procedure Section 425.16, for an

13   order striking the Eighth Cause of Action in the Complaint and awarding Defendants their attorneys'

14   fees under Section 425.16(c)(1), on the ground that Plaintiff cannot establish a probability that he

15   will prevail on that claim.  In the alternative, if the Court for any reason determines that Section

16   425.16 does not apply, Defendants will and hereby do move to dismiss the Eighth Cause of Action

17   under Rule 12(b)(6).  This motion is based on this Notice of Motion and Motion; the following

18   Memorandum of Points and Authorities; the declaration of Jacob R. Sorensen; the complete files in

19   this action; the argument of counsel; and such other matters as the Court may consider.

20                     **MEMORANDUM OF POINTS AND AUTHORITIES**

21   **I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

22           On October 11, 2023—four days after Hamas attacked and killed hundreds of Israelis—

23   Stanford received complaints from multiple students that their instructor, Plaintiff Ameer Loggins,

24   had singled out Jewish students during a discussion of the conflict in Gaza on the previous day.  The

25   complaints included that Plaintiff asked students to identify themselves if they were Jewish, called

26   Jewish students "colonizers," and took the belongings of a Jewish student in order to simulate what

27   he believed Israel was doing to Palestinians in Gaza.  Due to the serious nature of these

28   complaints—which, on their face, raised concerns as to whether *Plaintiff* had discriminated against

1    students and violated the law—Stanford placed Plaintiff on paid leave pending an investigation into

2    the student complaints against him.

3         Plaintiff denied that the students' complaints were accurate and denies being antisemitic.

4    Stanford's investigation determined that Plaintiff had not discriminated against any of his students.

5    Stanford also concluded, however, that Plaintiff's conduct on October 10—notably his request that

6    Jewish students identify themselves as such, and his classification of students as "colonizers" or

7    "colonized" based on their national origins—showed poor judgment and had foreseeably produced a

8    bad educational outcome.  Because the investigation was completed just days before the end of the

9    winter quarter, when Plaintiff's teaching contract would expire by its terms, Plaintiff's leave was

10   extended for those few days.

11        The instant Complaint largely admits the conduct on which Stanford based its decision.  It

12   asserts, however, that because Plaintiff is Black, African American, and Muslim, Stanford's decision

13   must have been based on those protected characteristics.  Plaintiff also asserts that Defendant Kevin

14   Feigelis defamed him during a congressional hearing, and that this purportedly defamatory statement

15   should be imputed to Stanford simply because Feigelis is a Stanford graduate student and research

16   assistant.

17        Plaintiff is incorrect in all respects, and each of his claims is subject to dismissal under Rule

18   12(b)(6) or being stricken under California Code of Civil Procedure Section 425.16:

19        [1]    Plaintiff's First, Second, Fourth, and Sixth Causes of Action for discrimination, or

20               failure to prevent discrimination, fail to state a claim because Plaintiff makes no

21               plausible allegation that any purported adverse employment action resulted from his

22               protected characteristics as opposed to Stanford's determination—supported even by

23               the allegations of the Complaint—that Plaintiff's teaching methods on October 10

24               were ill-judged.  The critical factual predicate of Plaintiff's discrimination claims is

25               that Stanford would have treated a white, non-Muslim instructor who engaged in the

26               same conduct differently than it treated Plaintiff.  But the Complaint suggests no

27               plausible basis for such an inference.

28        [2]    Plaintiff's Third, Fourth, Fifth, and Seventh Causes of Action for retaliation, or

1    failure to prevent retaliation, fail to state a claim because Plaintiff does not allege that

2    he engaged in legally protected activity or that any adverse employment action

3    resulted from such activity on his part.

4    [3]    Plaintiff's claims against the individual Defendants fail for the additional reason that

5    such claims can only be stated against employers, and not individual supervisors,

6    managers, or students.

7    [4]    Plaintiff's Eighth Cause of Action, for defamation, should be stricken under

8    California's anti-SLAPP statute, and Stanford should be awarded its attorneys' fees,

9    because the alleged defamatory statements were made to a legislative body and

10   therefore were absolutely privileged under California law.  In addition, even if no

11   privilege applied, the defamation claim against Stanford should be stricken because

12   Feigelis was speaking in his personal capacity and not as a representative of Stanford.

13   Even if the California anti-SLAPP statute did not apply, the defamation claim should

14   still be dismissed under Rule 12(b)(6) for the same reasons.

15   **II.    STATEMENT OF ALLEGED FACTS**

16   **A.    Plaintiff's Actions on October 10 and Stanford's Response**

17   Plaintiff was a lecturer in the Stanford Introductory Studies ("SIS") program.  *See* FAC ¶¶ 7,

18   50.  On October 10, 2023, he chose to devote his class (in two sections) to the Hamas attack on

19   Israel three days earlier.

20   By his own account, Plaintiff organized these classes around the theme of "settler colonialism."

21   *Id.* ¶ 62.  He called attention to the plight of Palestinian civilians (*id.* ¶¶ 97-99) and said he did not

22   "condone the loss of innocent lives" (*id.* ¶ 65), but he does not otherwise claim to have mentioned the

23   hundreds of Israelis who had just been killed, raped, or kidnapped.  He asserted that the Holocaust

24   claimed fewer lives than Belgian rule in the Congo and compared it to alleged genocides in the United

25   States, Australia, and elsewhere.  *Id.* ¶¶ 76-85.  At one point he "asked whether any Jewish students

26   were present in the classroom."  *Id.* ¶ 71.  He asked two students, "one white/Jewish male and one

27   woman of Asian descent," to surrender their backpacks and computers, stand facing the window, and

28

1    produce identification as a condition of returning to their seats.  *Id.* ¶¶ 88-93.  "The purpose was to do

2    an exercise on profiling and policing within a scripted space."  *Id.* ¶ 94.

3            Even students who later came to Plaintiff's defense acknowledged that "[m]aybe the

4    classroom demonstration wasn't done in the most unproblematic of ways" and that Plaintiff's

5    teaching methods were "easily misconstrued."  *Id.* ¶ 131, p. 25.  Other students raised much more

6    serious charges: that "Loggins demanded Jewish students to stand up, took their phones [and] told

7    them to face the wall/sit in the corner;" that "Dr. Loggins was 'singling out' Jewish students;" and

8    that "Loggins went down the line yelling at Jewish students, labeling them as colonizers."  *Id.*, p.

9    27.  Other students denied these charges or sought to put them in context.  *Id.*  The controversy

10   quickly spread through articles in the student newspaper and the outside press, prompting vile

11   messages to Plaintiff from persons not affiliated with Stanford.  *See id.* ¶ 134.

12           In the face of all this, Stanford did the only thing it could have done: it initiated an

13   investigation and, pending the results of that investigation, put Plaintiff on paid leave.  *See id.* ¶¶

14   101-102, 106.

15           The conclusions of the investigation were explained to Plaintiff in a letter dated March 25,

16   2024.  *Id.* ¶ 164.  On the one hand,

17           [t]he neutral fact finders concluded that the evidence did not establish that you
             intended to target Jewish or Israeli students for different treatment.  The investigators
18           discovered quite wide differences in the way your actions were perceived by different
             students, and in light of these differences, the evidence did not support a finding that
19           you intentionally or objectively discriminated against any of the students.

20   *Id.*

21           On the other hand, the evidence "did raise substantial concerns that the pedagogical strategies

22   you adopted during the sections were unwise and might have been predicted to lead to a bad

23   educational outcome."  *Id.*

24           The most troubling complaints concerned your request that students identify their
             ethnic and national-origin backgrounds, which included protected identities, and two
25           of your demonstrations: one that used a student based on their physical characteristics
             (size or stature) to represent a relatively powerless actor while you played the role of
26           a more powerful actor by taking away the student's things, etc., and a second
             demonstration in which you asked about each student's national origin, and labeled
27           that nation or culture as "colonizer" or "colonized."

28   *Id.*  Moreover, Plaintiff failed to consider the context of his presentations:

1  [Y]our students were new undergraduates in their first quarter, participating in a required class.  The two classes took place only four days after the violent Hamas
2  attack against Israel on October 7, when many people on our campus were acutely fearful, or angry, or both.  In addition, a great many students perceived you to have
3  clear sympathies in the emerging conflict, which predictably led to some students who disagreed with your perceived view to feel uncomfortably silenced in the
4  discussion.

5  *Id.*

6        The letter concluded by noting that Plaintiff's appointment was scheduled to end on March

7  31, 2024 (i.e., six days later), and that he would remain on paid leave for the remainder of the

8  contract term.  *Id.*  The Complaint does not allege that Stanford ever planned to give Plaintiff a new

9  contract or had led him to believe it would do so.

10        **B.**     **The Individual Defendants**

11        In addition to Stanford, the Complaint names seven individuals as Defendants.  They fall into

12  four groups:

13        [1]     Professor Dan Edelstein and Dr. Parna Sengupta direct the SIS Program, and

14                  Elizabeth Soroka is a Director of Human Resources at Stanford.  *See id.* ¶¶ 16-24,

15                  168.  The day after Plaintiff's October 10, 2023 lecture, they allegedly "subjected

16                  Plaintiff to a barrage of pretextual allegations" and informed him that Stanford would

17                  open an investigation and that meanwhile he would be suspended with pay.  *Id.* ¶¶

18                  101-102, 106.

19        [2]     Professor R.  Lanier Anderson is the Vice Provost for Undergraduate Education at

20                  Stanford.  *See id.* ¶¶ 13-15.  He signed the March 25, 2024 letter informing Plaintiff

21                  of the outcome of the investigation and allegedly made the decision not to extend

22                  Plaintiff's contract.  *Id.* ¶¶ 163-165.  He also (together with Edelstein and Sengupta)

23                  sent an email to the other SIS lecturers which very briefly summarized the outcome of

24                  the investigation and drew lessons for the future.  *Id.* ¶ 168.

25        [3]     Professors Richard Saller and Jenny Martinez are respectively the President and

26                  Provost of Stanford.  *See id.* ¶¶ 25-30.  Their only alleged action vis-à-vis Plaintiff

27                  was to issue a statement on October 11 disclosing that a non-faculty instructor (who

28                  was not named) had been placed on leave pending an investigation of alleged

1    misconduct which, if the allegations were found to be true, was a matter for serious

2    concern.  *Id.* ¶¶ 112-115; *see* Ex. A to the accompanying declaration of Jacob

3    Sorensen.  Although the Complaint describes this statement as defamatory (¶ 112), it

4    does not allege that anything in it was untrue.

5    [4]    Kevin Feigelis is a doctoral student and research assistant at Stanford, who is sued for

6    allegedly defaming Plaintiff in testimony before a committee of the U.S.  House of

7    Representatives.  *See id.* ¶¶ 12, 140-161; *see* Exhibit B to the Sorensen Declaration.

8    The Complaint does not allege that Feigelis provided this testimony as part of his

9    responsibilities at Stanford or with Stanford's prior knowledge.

10    For reasons best known to Plaintiff and his counsel, the Complaint includes photographs of

11    each individual Defendant and an allegation that all of them (except Feigelis) "are vindictive, racist,

12    Islamophobic, manipulative, controlling, abusive individuals …."  *Id.* ¶ 54.  *Compare* N.D. Cal.

13    Guidelines for Professional Conduct, Guideline 7 (in written submissions, "[a] lawyer should avoid

14    denigrating the intelligence, ethics, morals, integrity, or personal behavior of the opposing party,

15    counsel, or witness, unless such matters are at issue in the proceeding.").

16    **C.    Plaintiff's Eight Claims for Relief**

17    The FAC asserts eight causes of action: [1] race discrimination in violation of 42 U.S.C. §

18    1981 ("Section 1981"); [2] discrimination based on race, skin color, and religion in violation of the

19    California Fair Employment and Housing Act ("FEHA"), Government Code § 12940(a); [3]

20    retaliation for activity protected by FEHA, in violation of Government Code § 12940(h); [4] failure

21    to prevent FEHA violations, in violation of Government Code § 12940(k); [5] retaliation in violation

22    of California Labor Code § 98.6; [6] employment discrimination in violation of Title VII of the Civil

23    Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; [7] retaliation in violation of Title VII; and [8]

24    common law defamation based on Feigelis's testimony before Congress.

25    The first seven claims appear to be asserted indiscriminately against all Defendants, but with

26    little explanation (apart from sweeping legal conclusions) how the individual Defendants could be

27    liable.  The defamation claim appears to be asserted only against Feigelis and Stanford.

28

1    **III.    PROCEDURAL STANDARDS**

2          By this motion, Defendants seek dismissal of Plaintiff's first seven claims under Fed. R. Civ.

3    P. 12(b)(6).  To avoid dismissal under that Rule, Plaintiff must "set forth a set of facts that, if true,

4    would entitle the complainant to relief."  *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir.

5    2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  However, the Court is "not

6    required to accept as true legal conclusions couched as factual allegations."  *Id.*; *see also Fayver v.*

7    *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) ("Although factual allegations are taken

8    as true, we do not assume the truth of legal conclusions merely because they are cast in the form of

9    factual allegations.") (internal quotations omitted).  A court does not need to consider a plaintiff's

10   allegations if they are merely a recitation of the elements of a claim—even if those elements are

11   framed as factual allegations.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also*

12   *Ashcroft v. Iqbal,* 556 U.S. 662, 680-81 (2009) (stating that the defendants were responsible for a

13   discriminatory policy was a bare assertion that did nothing more than recite the elements of a

14   constitutional discrimination claim).

15         Defendants also seek an order striking Plaintiff's eighth claim (for defamation) under

16   California's "anti-SLAPP" statute (Cal. Code. Civ. P. § 425.16), as it applies in federal cases

17   governed by California law.  The standards applicable to the motion to strike are discussed in Part

18   IV.C of the Argument, below.  If the motion to strike is granted, Defendants will be entitled to their

19   attorneys' fees for that motion.  If the motion to strike is denied, Defendants seek dismissal of the

20   defamation claim under Rule 12(b)(6).

21   **IV.    ARGUMENT**

22         **A.    Plaintiff Makes No Plausible Allegation That Any Adverse Employment Action**
23                **Had Anything To Do With His Race, Skin Color, or Religion**

24         Plaintiff is African-American, Black, and Muslim, and hence falls within three protected

25   groups: race, skin color, and religion.  FAC ¶¶ 7-8.  And he alleges that he suffered several adverse

26   employment decisions:  suspension (with pay) following his October 10, 2023 lectures; the public

27   announcement of his suspension; and Stanford's decision not to renew his teaching contract when it

28   expired in March 2024.  What is missing from the Complaint is any connection between these two

1  sets of allegations—*i.e.*, any plausible, fact-based explanation of how Plaintiff's protected

2  characteristics **caused or motivated** the adverse employment decisions.  Put differently, the

3  Complaint alleges no facts to suggest that Stanford would have treated a white, non-Muslim

4  instructor who acted as Plaintiff did any differently than it treated Plaintiff.

5       While the various statutes under which Plaintiff sues (Section 1981, Title VII, and FEHA)

6  have somewhat different pleading standards, each of them incorporates an element of causation, as

7  discussed below.  None of them provides a remedy for a plaintiff who alleges only membership in a

8  protected group and that something bad happened to him at work.

9       To be sure, the Complaint is replete with allegations of "a pattern and practice of

10  discrimination based on race, color, and religion, as well as a hostile work environment, and

11  retaliation and wrongful suspension."  FAC ¶ 2; *see also id.* ¶¶ 53-54, 137-138.  But these are mere

12  buzz words referring to the different categories of unlawful employment discrimination.  They are

13  not factual allegations, sufficient to satisfy federal pleading standards, that Stanford engaged in such

14  discrimination.

15       Likewise, the Complaint repeatedly alleges that Stanford "do[es] not treat similarly-situated

16  non-black, non-African American, non-Muslim employees in the same manner [as Plaintiff]."  FAC

17  ¶ 108; *see also id.* ¶¶ 109, 113, 116-117, 167, 170-173, 178-179.  Given the unique circumstances of

18  Plaintiff's case, it would be surprising if he could substantiate this allegation.  And in fact, the only

19  example Plaintiff can come up with is "situated" as differently from him as could be imagined.

20  Stanford Law School Professor Alan Joseph Bankman has been sued by creditors of his son's

21  company, FTX Trading Ltd., for "fraudulent and illegal conduct," such as "fund[ing] an all-expenses

22  paid trip for a Stanford law student to attend a Formula One event in France."  *Id.* ¶¶ 118-130.

23  Plaintiff alleges that Bankman is "Caucasian and/or Jewish" (*id.* ¶ 130), and that this is why Stanford

24  did not "launch an investigation" of him, suspend him, or "discuss [his] issues publicly."  *Id.* ¶¶ 123-

25  128.  The accusations against Bankman, however, involve his "outside activities" (*id.* ¶ 127); they

26  are categorically different and at least arguably outside the scope of Stanford's purview.[1]  Plaintiff,

27

---

28  [1] This is true even if Bankman contributed money earned from those activities to Stanford.  *See id.* ¶ 120.

1    in contrast, was accused by students of misconduct **in the classroom**, which Stanford **is** responsible

2    for policing.

3                    **1.        But-For Causation Under 42 U.S.C. § 1981**

4            Plaintiffs suing under Section 1981 are required to plead but-for causation to survive a

5    motion to dismiss.  *Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S.

6    327, 341 (2020).  As the Supreme Court explained in *Comcast*, Section 1981 provides that all

7    persons "shall have the same right[s] . . . as [are] enjoyed by white citizens," and this guarantee

8    "directs our attention to the counterfactual — what would have happened if the plaintiff had been

9    white?"  *Id.* at 333.

10           If the defendant would have responded the same way to the plaintiff even if he had
             been white, an ordinary speaker of English would say that the plaintiff received the
11           "same" legally protected right as a white person. . . . Nor does anything in the statute
             signal that this test should change its stripes (only) in the face of a motion to dismiss.
12

13   *Id.*; *see also Astre v. McQuaid*, 804 Fed. Appx. 665, 667 (9th Cir. 2020) (affirming dismissal of

14   Section 1981 claim where "the complaint identifies independent non-discriminatory reasons" for the

15   defendant's actions).

16           The Complaint here does not address the counterfactual; it suggests no reason why Stanford

17   would not have responded in the same way if Plaintiff had been white.[2]  Plaintiff alleges in

18   conclusory fashion that Stanford forced him to endure discrimination "at its highest levels" and

19   "devised a plan to pretextually terminate his employment based on protected characteristics …."

20   FAC ¶¶ 52, 162.  Similar claims were raised in *Baron v. Staff Benefits Management, Inc.*, No.

21   22cv691-LL-DDL, 2023 WL 8241537 (S.D. Cal. Nov. 28, 2023), where the plaintiff alleged that his

22   employer had "colluded and conspired" against him and harassed him throughout his employment

23   due to his race.  *Id.* at *3.  The court dismissed the complaint, observing that "Plaintiff's allegations

24   remain conclusory and speculative, at best," and that he did not allege that the manager who fired

25

26

27

28
     ---
     [2] Section 1981 does not address discrimination based on national origin or religion.

1   him "ever harassed or made discriminatory statements to Plaintiff, or that race played any part in

2   [the manager's] decision." *Id.*[3]

3        In the present case, the Complaint itself suggests multiple independent, non-discriminatory

4   reasons for the adverse actions of which Plaintiff complains.  *See Astre*, 804 Fed. Appx. at 667.

5   Plaintiff's own account of the events of October 10 clearly points to Plaintiff's extremely bad

6   judgment as the reason for Stanford's actions.  *See also Sharifi Takieh v. Banner Health*, 515 F.

7   Supp. 3d 1026, 1035 (D. Ariz. 2021) (dismissing Section 1981 claim as "implausible because the

8   FAC identifies four independent, non-discriminatory reasons" for the adverse actions), *aff'd sub*

9   *nom. Takieh v. Banner Health*, No. 21-15326, 2022 WL 474170 (9th Cir. Feb. 16, 2022).

10       **2.    Motivating Factor Causation Under Title VII**

11       Under Title VII, it is unlawful for an employer to "discriminate against any individual with

12   respect to his … privileges of employment [] because of such individual's race, color, religion, sex,

13   or national origin."  42 U.S.C.A. § 2000e-2(a)(1).  A plaintiff cannot survive a Rule 12(b)(6) motion

14   unless they have adequately alleged their employer had a "discriminatory intent or motive for taking

15   a job-related action."  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir.  2012) (*internal*

16   *citations omitted*).  While that discriminatory motive need not be the sole reason an employer took

17   an action, it must be a motivating factor.  *University of Texas Southwestern Medical Center v.*

18   *Nassar*, 570 U.S. 338, 343 (2013).

19       Plaintiff's Title VII claim fails for the same reason as his Section 1981 claim: he does not

20   plead, except as a bare legal conclusion, that Defendants were motivated by any protected

21   characteristics in deciding to suspend him and terminate his contract.  In *DeFrancesco v. Arizona*

22   *Bd. of Regents*, No. 21-16530, 2023 WL 313209, at *1 (9th Cir. Jan. 19, 2023), a university

23   employee alleged discrimination because he was gay.  He alleged, among other things, that he was

24   passed up for a promotion in favor of a heterosexual man.  *Id.*[4]  In affirming dismissal of the

25   plaintiff's Title VII claim, the Ninth Circuit held that these allegations did not allow it to "'infer

26   _____

27   [3] The plaintiff did allege that another manager asked him when and why he had immigrated to the United States and said he had fired the plaintiff's predecessor, "who was also Asian."  2023 WL 8241537, at *3.  That is considerably more than Plaintiff can allege here.

28   [4] Again, this comes closer to a factual basis for a discrimination claim than anything alleged by Plaintiff here.

1   more than a mere possibility of misconduct.'" *Id.* at *2 (quoting *Iqbal*, 556 U.S. at 679).  The court

2   pointed out, for example, that the individual who was promoted had a dozen more years of

3   experience than the plaintiff.  *Id.* at *1.

4          Here, Plaintiff's only meaningful attempt to allege causation is his comparison of himself

5   with Professor Bankman.  Such a comparison, however, carries weight only when the individuals

6   being compared "have similar jobs and display similar conduct."  *Vasquez v. County of Los Angeles*,

7   349 F.3d 634, 641-42 (9th Cir. 2003), *as amended* (Jan. 2, 2004).  Plaintiff was disciplined in

8   connection with his conduct in a Stanford classroom, whereas Bankman was sued by creditors of "a

9   company his convicted son ran as a family business with Bankman's assistance."  FAC ¶ 119.

10  Plaintiff points to Stanford's statement (regarding Bankman) that it does not "take positions on the

11  outside activities of our individual faculty members, nor do we discuss personnel issues or other

12  confidential matters."  *Id.* ¶ 127.  But Plaintiff was not suspended in connection with any "outside

13  activities," and Stanford is not alleged to have disclosed any "confidential matters" regarding

14  Plaintiff; it merely stated that "a non-faculty instructor" was "not currently teaching" (as his students

15  would necessarily have learned) pending an investigation of a controversy that had already received

16  wide publicity.

17                      **3.      California FEHA Claims**

18         Because of the similarities between state and federal discrimination law, courts utilize federal

19  precedent when analyzing FEHA claims. *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 354 (2000); *see*

20  *also Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844, at *2 (9th

21  Cir. Feb. 2, 2022) (dismissing both Title VII and FEHA discrimination claims where an employee

22  failed to plead facts to support the inference that she was terminated due to her protected

23  characteristics).  Since Plaintiff's claims fail to meet the causation standards required under Title VII

24  and Section 1981, he also has not adequately alleged any adverse actions occurred "because of" his

25  protected characteristics under FEHA.  Cal. Gov't Code § 12940.

26                      **4.      The Individual Defendants**

27         In addition to the reasons stated above as to why the Complaint fails to sufficiently state any

28  claim for discrimination, it further fails as to the individual Defendants because there is no individual

1    liability for discrimination under Title VII or FEHA.  *See Reno v. Baird*, 18 Cal. 4th 640, 663 (1998)

2    ("[I]ndividuals who do not themselves qualify as employers may not be sued under the FEHA for

3    alleged discriminatory acts."); *Ames v. City of Novato*, No. 16-cv-02590-JST, 2016 WL 6024587, at

4    *5 (N.D. Cal. Oct. 14, 2016) ("Plaintiffs may not sue an individual supervisory employe . . . for . . .

5    failure to prevent discrimination under FEHA."); *Miller v. Maxwell Int'l Inc.*, 991 F.2d 583, 587 (9th

6    Cir. 1993) (ruling there is no individual liability under Title VII).  Thus, at a minimum, the FEHA

7    and Title VII discrimination claims must be dismissed as to the individual defendants.

8        **B.      The Complaint Fails to State a Claim for Retaliation**

9        Plaintiff alleges that he was retaliated against under Title VII, FEHA, and California Labor

10   Code Section 98.6.  The pleading standards under all three of these statutes are similar: Plaintiff

11   must sufficiently allege that he engaged in a protected activity, was subjected to an adverse

12   employment action, and that there was a causal relationship between his protected activity and the

13   adverse action.  *Albro v. Spencer*, 854 F. App'x 169, 170 (9th Cir. 2021) (*quoting Freitag v. Ayers*,

14   468 F.3d 528, 541 (9th Cir. 2006)); *Tarin v. Cnty. of Los Angeles*, 123 F.3d 1259, 1264, n. 4 (9th

15   Cir. 1997) (noting that the requisites for proving unlawful retaliation are the same under FEHA and

16   Title VII); *Yoshimoto v. O'Reilly Auto., Inc.,* No. C 10-5438 PJH*, 2013 WL 6446249, at *24 (N.D.

17   Cal. Dec. 9, 2013) (granting an employer's summary judgment motion in a case where an

18   employee's Section 98.6 retaliation claim was "substantively the same" as his Title VII and FEHA

19   retaliation claims).

20       In an attempt to meet this standard, Plaintiff alleges two types of protected activity: that he

21   "vehemently object[ed] to and den[ied]" the student complaints against him (FAC ¶ 105), and that he

22   "retain[ed] a law firm to protect and enforce his rights under the anti-discrimination laws" (*id*. ¶

23   136).  But these assertions of protected activity are insufficient for a retaliation claim to survive a

24   motion to dismiss.  *Taylor v. Adams & Assocs.*, Inc., 817 F. App'x 510, 511 (9th Cir. 2020)

25   (upholding the dismissal of an employee's FEHA retaliation claim because "[n]on-specific

26   assertions of protected activities do not suffice").  Moreover, even if these allegations of protected

27   activity were sufficient, Plaintiff has failed to draw a connection between that activity and Stanford's

28

1   decisions to put him on leave with pay pending an investigation and not to renew his fixed-term

2   teaching contract (which Plaintiff does not allege Stanford had any obligation to do).

3   **1.      An Employee's Denial of a Charge of Misconduct Is Not "Protected Activity" Such That the Employer's Subsequent Investigation of That Charge Becomes "Retaliation"**

4

5   At the outset, Plaintiff fails to adequately identify a protected activity under Title VII, FEHA,

6   or the California Labor Code.  Under Title VII, Plaintiff must plead that he "opposed any practice

7   made an unlawful employment practice by [Title VII]" or that he "made a charge, testified, assisted,

8   and participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII.  42

9   U.S.C. § 2000e-3(a).  Similarly, under FEHA, Plaintiff must plead that he "opposed any practices

10   under [FEHA]" or "filed a complaint, testified, or assisted in any proceeding" pursuant to FEHA.

11   Cal. Gov't Code § 12940(h).  Finally, under California Labor Code Section 98.6, Plaintiff must

12   plead that he engaged in conduct or exercised his rights under the Labor Code.  Cal. Lab. Code §

13   98.6(a); *see also Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87-88, (2004).  Plaintiff

14   is not permitted to simply allege he believed he was the subject of discrimination; instead, he must

15   allege that he informed Stanford that he believed he was the subject of discrimination. *See Yanowitz*

16   *v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1046 (2005) ("[A]n employee's unarticulated belief that an

17   employer is engaging in discrimination will not suffice to establish protected conduct for the

18   purposes of establishing a prima facie case of retaliation.").

19   Plaintiff here never alleges that he opposed discriminatory practices or participated in any

20   proceeding under Title VII or FEHA.  Nor does he allege that he opposed unlawful practices or

21   exercised his rights under the Labor Code such as claiming he was owed unpaid wages.  Rather,

22   Plaintiff alleges that he engaged in "protected activity" merely by denying the student complaints

23   against him and denying that his lecture was antisemitic.  FAC ¶ 105 (Plaintiff's protected activity

24   was "vehemently objecting to and denying these clearly false allegations and pretextual

25   investigation" and "providing a detailed explanation of his intentions with his lecture, establishing

26   that there was nothing antisemitic about it whatsoever").  But an employee's objection to an

27   investigation of his own alleged misconduct, including denial of that misconduct, cannot be

28   "protected activity" giving rise to a retaliation claim.  It would undermine the very public policy that

-13-

1   Title VII and FEHA were intended to advance—ending discrimination in the workplace—if an

2   employer were not permitted to investigate complaints that one of its employees acted in a

3   discriminatory manner.

4        Plaintiff also alleges he engaged in "protected activity" by retaining a law firm, but that alone

5   is not protected activity, and Plaintiff does not allege that the law firm engaged in any protected

6   activity on his behalf.  FAC ¶ 136.

7           **2.**      **Even if Plaintiff had Identified a Protected Activity, He Has Not Pled**

8                 **Causation**

9        Elsewhere in the Complaint, Plaintiff accuses Stanford of placing him on leave and allowing

10   his teaching contract to lapse because he hired an attorney (*id.* ¶ 136) and participated in

11   "proceedings related to the FEHA" (*id.* ¶ 211).  However, Plaintiff alleges that he engaged a law

12   firm on October 24, 2023, which was after he was placed on leave.  *Id.* ¶ 136.  He also never alleges

13   that Stanford knew he engaged an attorney or was taking steps toward filing a lawsuit, meaning that

14   the University could not have retaliated against him based on those actions.  *See Albro v. Spencer,*

15   854 F. App'x at 170-71 (finding there could not be causation for a Title VII retaliation claim where

16   an employee never alleged that his managers knew of his protected activities).

17           **3.**      **In Any Event, the Individual Defendants Cannot Be Liable for**
              **Retaliation**

18        In addition to the problems just discussed, the Complaint fails as to the individual defendants

19   because there is no individual liability for retaliation under Title VII or FEHA.  *See Jones v. Lodge*

20   *Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173 (2008) ("[T]he employer is liable for retaliation

21   under section 12940, subdivision (h), but nonemployer individuals are not personally liable for their

22   role in that retaliation."); *Miller*, 991 F.2d at 587 (ruling there is no individual liability under Title

23   VII).  Thus, at a minimum, the FEHA and Title VII retaliation claims must be dismissed as to the

24   individual defendants.

25       **C.**     **Plaintiff's Defamation Claim Should Be Stricken Under The California Anti-**

26                 **SLAPP Statute**

27        Plaintiff's defamation claim is based primarily on a statement made by Defendant Feigelis

28   (in his personal capacity and not on behalf of Stanford) to a Congressional committee.  This claim

1    may also be based (the Complaint is unclear) on the public statement of President Saller and Provost

2    Martinez on October 11, 2023.  Because both statements were made in the exercise of protected

3    rights of speech and petition, and because the defamation claim based on them lacks merit as a

4    matter of law, this Court should strike that claim under California Code of Civil Procedure Section

5    425.16 (the "California Anti-SLAPP Statute").

6         The California Anti-SLAPP Statute prohibits "strategic lawsuits against public participation,"

7    which are actions "brought primarily to chill the valid exercise of the constitutional rights of

8    freedom of speech and petition for redress of grievances."  Cal. Civ. P. Code § 425.16(a).  It is

9    broadly construed to strike meritless claims that target free speech and other protected activity.  *Id.*;

10   *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119 (1999).  Its purpose is "to

11   allow early dismissal of meritless first amendment cases aimed at chilling expression through costly,

12   time-consuming litigation."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003)

13   (quoting *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)).  The Statute also

14   provides that a prevailing defendant is entitled to recover attorney's fees and costs.  Cal. Civ. P.

15   Code § 425.16(c)(1).  The Ninth Circuit has long held that a party "sued in federal courts can bring

16   anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they

17   prevail."  *Verizon Delaware, Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

18        The California Anti-SLAPP Statute requires a two-step analysis.  First, "the court decides

19   whether the defendant has made a threshold showing that the challenged cause of action is one

20   arising from protected activity."  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002); *see also Gunn v.*

21   *Drage*, 65 F.4th 1109, 1120-21 (9th Cir. 2023); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261

22   (9th Cir. 2013).  Protected activity means "any act of [the defendant] in furtherance of [his or her]

23   right of petition or free speech under the United States Constitution or the California Constitution in

24   connection with a public issue."  Cal. Civ. P. Code § 415.16(b)(1).  Examples are provided in

25   Section 425.16(e)(1)-(4).

26        Second, "if the defendant meets its initial burden, the plaintiff is then charged with the

27   burden of establishing, by competent and admissible evidence, a probability of prevailing on his or

28   her claims at trial."  *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1048 (N.D. Cal. 2012)

1   (citations omitted); *see also Club Members for an Honest Election v. Sierra Club*, 45 Cal 4th 309,

2   316 (2008).  "To do this, the plaintiff must demonstrate that the complaint is legally sufficient and

3   supported by a prima facie showing of *facts* to sustain a favorable judgment if the evidence

4   submitted by the plaintiff is credited."  *Smith v. Fireside Thrift Co.,* 2007 WL 2729329, at *2 (N.D.

5   Cal. Sept. 18, 2007) (emphasis in original); *accord Wilson v. Parker, Covert & Chidester*, 28 Cal.

6   4th 811, 821 (2002).

7          Federal courts "review anti-SLAPP motions to strike under different standards depending on

8   the motion's basis."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d

9   828, 833 (9th Cir. 2018).  "[W]hen an anti-SLAPP motion to strike challenges only the legal

10  sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6)

11  standard and consider whether a claim is properly stated."  *Id.* at 834.  "[O]n the other hand, when an

12  anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of

13  Civil Procedure 56 standard will apply."  *Id.*

14         In the present case, the defamation claim is based primarily on allegations that

15         "on or about March 1, 2024, in addressing a bipartisan roundtable hosted by the
        [U.S.] House [of Representatives] Committee on Education and the Workforce,
16      Feigelis, a Stanford student, employee and educator, defamed and slandered Plaintiff
        by unfairly, unjustifiably, unreasonably, untruthfully, and inaccurately subjecting him
17      to the public mischaracterization as one of two of "Stanford's most racist faculty
        member[s]."

18

19  FAC ¶ 140.  Plaintiff further alleges that, during this same hearing, Feigelis "slandered and libeled

20  Plaintiff" by making false claims about his conduct on October 10, 2023.  FAC ¶ 147.  These

21  statements of Feigelis will be referred to herein as the "House Committee Statement."  A copy of the

22  House Committee Statement is included as Exhibit B to the Sorensen Declaration.

23         Plaintiff also alleges that "on or about October 11, 2023, Saller and Martinez released a

24  defamatory, discriminatory statement, which was picked up worldwide and had the purpose and

25  effect of publicizing Stanford's discriminatory decision to suspend Plaintiff's employment, thereby

26  demonizing and scandalizing Plaintiff before the world."  FAC ¶ 112.  This statement is referred to

27  herein as the "October 11 Public Statement," and a copy is included as Exhibit A to the Sorensen

28  Declaration.  Whether Plaintiff's defamation claim is partly based on the October 11 Public

1    Statement (which is not referenced in the Eighth Cause of Action) is unclear.[5]  For present purposes,

2    however, we assume that it is.

3                  **1.       The Defamation Claim Arises From Protected Activity**

4            Defendants meet their initial burden under the California Anti-SLAPP Statute because both

5    of the statements on which the defamation claim is based constitute "protected activity" as defined in

6    Sections 425.16(b)(1) and (e).

7            The House Committee Statement was a "written or oral statement or writing made before a

8    legislative . . . proceeding," and thus was protected activity under the specific terms of Section

9    425.16(e)(1).  *See Briggs,* 19 Cal. 4th at 1116 ("[A]ll that matters is that the First Amendment

10   activity take place in an official proceeding or be made in connection with an issue being review by

11   an official proceeding.").

12           The October 11 Public Statement was published by Stanford in the "Stanford Report," an

13   online news portal for the Stanford community that is available on the Internet to the public.

14   Sorensen Declaration, ¶ 3.  As such, it was a written statement made in a public forum in connection

15   with an issue of public interest, making it protected speech under Section 425.16(e)(3) and (e)(4).[6]

16   *See* FAC ¶ 112 (alleging the statement was "picked up worldwide"); *see also Shahid Buttar for*

17   *Congress Committee v. Hearst Communications, Inc.*, 2023 WL 2989023, at *2 (N.D. Cal. April 18,

18   2023) (newspaper constitutes "public forum"); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044,

19   1050-51 (E.D. Cal. 2008) (press release constitutes "public forum"); *Damon v. Ocean Hills*

20   *Journalism Club*, 85 Cal. App. 4th 471, 474 (2000) (newsletter constitutes "public forum"); *Barrett*

21   *v. Rosenthal*, 40 Cal. 4th 33, 41 n. 4 (2006) (websites accessible to the public constitute "public

22   forums").  The student complaints against Plaintiff have been the subject of numerous published

23

24   _____

25   [5] Instead, Plaintiff's grievance with respect to the October 11 Public Statement appears to be that it
     was "discriminatory," in that Stanford supposedly "do[es] not publicly confirm personnel actions
     taken against Caucasian, Jewish, and non-Muslim employees."  FAC ¶ 116.  This theory suffers
26   from the same defects as the other discrimination claims discussed above.

     [6] Section 425.16(e)(3) provides that protected speech includes "any written or oral statement or
27   writing made in a place open to the public or a public forum in connection with an issue of public
     interest."  Section 425.16(e)(4) extends protection to "any other conduct in furtherance of the
28   exercise of the constitutional right of petition or the constitutional right of free speech in connection
     with a public issue or an issue of public interest."

1   articles, confirming that this was a topic of "widespread, public interest."  *See Rivero v. American*

2   *Federation of State, County, and Municipal Employees, AFL-CIO*, 105 Cal. App. 4th 913, 919-24

3   (2003); Sorensen Declaration, Exs.C, D.[7]

4        Because the defamation claim arises from protected activity, the burden shifts to Plaintiff to

5   establish a probability of prevailing on that claim.

6        **2.        Plaintiff's Defamation Claim Lacks Merit As A Matter of Law.**

7             **a.        The House Committee Statement (Primary Liability)**

8        The defamation claim based on the House Committee Statement fails as a matter of law

9   because that statement was absolutely privileged under California law.  Under Section 47(b) of the

10  California Civil Code, "[a] privileged publication or broadcast is one made … [i]n any (1) legislative

11  proceeding [or] (2) judicial proceeding …."  California courts treat the privilege applicable to

12  legislative proceedings under Section 47(b)(1) as coextensive with the "litigation privilege"

13  applicable to judicial proceedings under Section 47(b)(2).  *Dean v. Friends of Pine Meadow*, 21 Cal.

14  App. 5th 91, 107-08 (2018); *1-800 Contacts, Inc. v. Steinberg,* 107 Cal. App. 4th 568, 586 (2003).

15  And this privilege "'is absolute;'"

16        "it applies, if at all, regardless whether the communication was made with malice or
          the intent to harm.  Put another way, application of the privilege does not depend on
17        the publisher's 'motives, morals, ethics or intent.'"

18  *Dean*, 21 Cal. App. 5th at 107 (citations omitted); *see also Scott v. McDonnell Douglas Corp.*, 37

19  Cal. App. 3d 277, 285 (1974) ("Absolute immunity attaches to statements made before a legislative

20  body," and "malice on the part of the defendant will not defeat the privilege when … the statement

21  which is alleged to be defamatory has some connection to the work of the legislative body" (citation

22  omitted)).

23        As noted above, Feigelis allegedly defamed Plaintiff "in addressing a bipartisan roundtable

24  hosted by the House Committee on Education and the Workforce."  FAC ¶¶ 140, 147, 250-255.

25  Those statements "were publicly posted to the Congressional Docket in or around March 2024."  *Id.*

26

27  _____

28  [7] Complaints regarding discrimination in the educational setting have been found to be topics of
    public interest.  *See, e.g., Hecimovich v. Encinal School Parent Teacher Organization*, 203
    Cal.App.4th 450, 465-66 (2012).

1   ¶ 158.  Thus, Plaintiff affirmatively pleads that the allegedly defamatory statements were made in a

2   "legislative proceeding," and the absolute privilege applies.[8]  The allegation that Feigelis "published

3   his false statements about Plaintiff with common law malice" (*id.* ¶ 160) is meaningless under the

4   cases cited above.

5          **b.**   **The House Committee Statement (Secondary Liability)**

6     Based on the House Committee Statement, the Complaint attempts to charge Stanford and

7   Feigelis (but apparently not the other individual Defendants) with defamation.  *See* FAC ¶¶ 142,

8   145, 152, 155, 250-255.  As just explained, the absolute privilege of Civil Code Section 47(b)(1)

9   protects both Feigelis and Stanford from such claims.  But even if Feigelis could be liable to Plaintiff

10  for defamation, such liability would not extend to Stanford.

11    Plaintiff alleges that Stanford "is responsible [for Feigelis's testimony] under the doctrine of

12  *Respondeat Superior.*"  FAC ¶ 155.  This is another legal conclusion unsupported by properly

13  pleaded facts.  There is no allegation, for instance, that Feigelis's appearance before the House

14  Committee was part of his duties as a "postdoctoral researcher" or "assistant teacher" at Stanford

15  (FAC ¶ 12).[9]  Obviously it was not.  Nor is there any allegation that Stanford authorized Feigelis to

16  testify or knew in advance that he was going to testify or what he was going to say.  *Compare Doe v.*

17  *Roman Catholic Archbishop of Los Angeles,* 247 Cal. App. 4th 953, 969 (2016) (principal may be

18  liable for agent's wrongful conduct only if principal "directly authorizes" that conduct or ratifies it

19  after the fact, or the agent acts "in the scope of his employment and in performing services on behalf

20  of the principal" (citations omitted)); *Kephart v. Genuity, Inc.,* 136 Cal. App. 4th 280, 297 (2006)

21  ("an employer will not be held liable where [an employee's] intentional misconduct does not arise

22  from the conduct of the employer's enterprise but instead arises from personal malice…").  Indeed,

23

24

25  [8] Separately, the "*Noerr-Pennington*" doctrine originally developed under federal antitrust law precludes tort claims based on efforts to petition the government, unless the petition is a "sham" in

26  the sense that the defendant was not making a "genuine effort to influence government action." *Dean*, 21 Cal. App. 5th at 108-09 (cleaned up).  That doctrine also applies in the present case,

27  because Feigelis was urging the Congressional committee to take various actions to combat antisemitism on campus.  *See* Sorensen Declaration, Ex. B.

28  [9] In his published remarks, Feigelis identified himself as a "PhD Student, Physics"—not as a Stanford agent or employee.  Sorensen Declaration Ex. B, p. 1.

1    read as a whole, Feigelis' remarks were more an attack on Stanford (for supposedly tolerating anti-

2    Semitic activity) than on Plaintiff.  *See* Sorensen Declaration, Ex. B.

3           Plaintiff also complains that "Stanford failed to train Feigelis regarding the private and

4    confidential nature of employee personnel matters …."  FAC ¶ 145; *see also id.* ¶ 152.  First, even if

5    Stanford had and breached a duty to "train" students in this regard, it would not follow that Stanford

6    was liable **for defamation**.  Second, the Complaint does not allege that Feigelis disclosed or had

7    access to any private or confidential information in Stanford's possession.  It goes no further than to

8    allege that Feigelis repeated things he had read in the Stanford student newspaper or other public

9    sources. *See id.* ¶ 140.

10          **c.**    **The October 11 Public Statement**

11          Insofar as the defamation claim is based on the October 11, 2023 Public Statement, it also

12   fails as a matter of law because nothing in that Statement was, or is alleged to have been, false.  *See*

13   *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28 (2007) ("In all cases of alleged defamation, the truth of the

14   offensive statements or communications is a complete defense against civil liability, regardless of

15   bad faith or malicious purpose" (cleaned up)).  As described by Plaintiff, the October 11 Public

16   Statement "confirmed that there was a personnel action being taken against Plaintiff, that the

17   investigation was being done because the allegations if true could be considered illegal acts and that

18   the alleged behavior was serious."  FAC ¶ 114.  Far from alleging that any part of this was false, the

19   Complaint concedes its essential truth: Plaintiff **had** been suspended; his actions on October 10 **were**

20   being investigated; and, if the accusations against him were true, those actions **were** serious and

21   potentially unlawful.  *See* FAC ¶¶ 102, 106; *see also* ¶ 140 (citing article in the *Stanford Daily*

22   regarding students' accusations of "identity-based targeting" by Plaintiff); ¶ 71 (Plaintiff admittedly

23   "asked whether any Jewish students were present in the classroom").

24          **D.**    **In the Alternative, the Defamation Claim Should be Dismissed**

25          Under the California Anti-SLAPP Statute, "a prevailing defendant on a special motion to

26   strike shall be entitled to recover that defendant's attorney's fees and costs."  Cal. Code Civ. P. §

27   425.16(c)(1).  As noted above, this aspect of the Statute applies in federal court. *Verizon Delaware,*

28

1  *Inc.*, 377 F.3d at 1091.  Defendants will therefore seek such a fee award if their motion to strike is

2  granted.

3         The defamation claim is subject to dismissal under Rule 12(b)(6) for the same reasons

4  discussed in Part IV.C above:  because the House Committee Statement is absolutely privileged, and

5  because the October 11 Public Statement was substantially true.[10]  Accordingly, Defendants move

6  for dismissal in the alternative.

7         If the motion to strike is granted, Defendants' alternative motion to dismiss the defamation

8  claim will be moot.  The reverse is not true, however.  Because Rule 12(b)(6) carries no right to

9  attorneys' fees, the issue of Defendants' entitlement to fees under the California Anti-SLAPP Statute

10  would remain for decision even if the defamation claim were dismissed.  Accordingly, the Court

11  should address the motion to strike first, and proceed to the alternative motion to dismiss only if it

12  determines that the California Anti-SLAPP Statute does not apply (and we respectfully submit that it

13  clearly does apply).

14  **V.     CONCLUSION**

15         For the foregoing reasons, the moving Defendants respectfully submit that the FAC should

16  be dismissed with prejudice as to the first seven causes of action, and that the eighth cause of action

17  should be stricken.

18

19  Dated:  June 10, 2024              PILLSBURY WINTHROP SHAW PITTMAN LLP

20                              By:  */s/ Jacob R. Sorensen*
                                    _____
21                                          JACOB R.  SORENSEN
22                                   JOHN M. GRENFELL
                                    ALEKZANDIR MORTON
23                                   *Attorneys for Defendants*
                                    *The Board of Trustees of the Leland Stanford Junior*
24                                   *University; R.  Lanier Anderson; Dan Edelstein;*
                                    *Parna Sengupta; Elizabeth Soroka; Jenny Martinez; and*
25                                   *Richard Saller*

26

27  _____
   [10] The Court can consider the actual written statements at issue (Exhibits A, B to the Sorensen
   Declaration) in ruling upon a motion to dismiss because they are expressly referenced in the FAC
28  (*see, e.g.,* FAC, ¶¶ 112, 147, n. 4) even though they are not physically attached to it.  *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).