Jason S. Takenouchi (CBN 234835)
**Kasowitz Benson Torres LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Fax: (415) 398-5030
jtakenouchi@kasowitz.com

Andrew L. Schwartz (*pro hac vice*)
Joshua E. Roberts (*pro hac vice*)
Lea Dartevelle (*pro hac vice*)
**Kasowitz Benson Torres LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
aschwartz@kasowitz.com
jroberts@kasowitz.com
ldartevelle@kasowitz.com

*Attorneys for Defendant Kevin T. Feigelis*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMEER HASAN LOGGINS, PH.D., <br><br> Plaintiff, <br><br> v. <br><br> LELAND STANFORD JUNIOR UNIVERSITY, KEVIN T. FEIGELIS individually, R. LANIER ANDERSON, individually DAN EDELSTEIN individually, PARNA SENGUPTA individually, ELIZABETH SOROKA individually JENNY S. MARTINEZ individually, RICHARD SALLER individually, <br><br> Defendants. | Case No: 3:24-cv-02027-JSC <br><br> **NOTICE OF MOTION AND MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Hearing Date:  August 15, 2024 <br> Hearing Time:  10:00 a.m. <br> Hearing Location:  Courtroom 8 <br> Judge:  Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

II.     STATEMENT OF FACTS ................................................................................ 3

        A.      Loggins's Actions in the Wake of October 7, 2023 ................................. 3

        B.      The Congressional Hearing .......................................................................... 5

III.    LEGAL STANDARD ....................................................................................... 6

IV.     ARGUMENT ................................................................................................. 7

        A.      Loggins's Claims Against Feigelis Must Be Stricken Under California's
                Anti-Slapp Statute ......................................................................................... 7

        B.      Plaintiff's Causes of Action Arise from Protected Activity ..................... 8

        C.      Loggins Cannot Demonstrate a Probability of Prevailing on His Claims
                as a Matter of Law ......................................................................................... 9

                1.      Loggins Cannot Demonstrate a Probability of Prevailing on
                        Any of His Claims Because Feigelis's Statements Are Subject to
                        Absolute Privilege ............................................................................ 10

                2.      Loggins Cannot Demonstrate a Probability of Prevailing on His
                        Defamation Claims .......................................................................... 11

                        a.      Loggins Cannot Establish That the Alleged Defamatory
                                Statements Were False ..................................................... 11

                        b.      Plaintiff Cannot Show Malice or Present Sufficient Evidence
                                That Feigelis Believed His Statement Was False ......................... 12

                        c.      The Statement That Loggins Was Among Stanford's
                                "Most Racist Faculty Members" Is Not Actionable ..................... 13

V.      LOGGINS'S CLAIMS AGAINST FEIGELIS MUST BE DISMISSED UNDER RULE
        12(b)(6) ........................................................................................................ 14

        A.      The Complaint Does Not Comply with Rule 8 ...................................... 14

        B.      Loggins's Claims for Discrimination and Retaliation Are Derivative of His
                Defamation Claim and Must Be Dismissed ............................................. 16

        C.      Feigelis Cannot Be Liable for Discrimination Claims Arising Under FEHA ....... 16

        D.      Feigelis Cannot Be Liable for Claims Arising Under the California Labor Code . 17

        E.      Loggins Fails to State a Claim Under 42 U.S.C § 1981 ......................... 17

VI.     CONCLUSION .............................................................................................. 18

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Abbas v. Foreign Pol'y Grp., LLC*,
  975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) ............................... 8

5

*Alejandro v. ST Micro Elecs., Inc*,
  178 F. Supp. 3d 850 (N.D. Cal. 2016) .................................................................................. 16

6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 7

7

8

*Astre v. McQuaid*,
  804 F. App'x 665 (9th Cir. 2020) ........................................................................................ 18

9

10

*Barry v. State Bar of Calif.*,
  2 Cal. 5th 318 (2017) ............................................................................................................ 7

11

*Bibi v. VxL Enter., LLC*,
  2021 WL 5998439 (N.D. Cal. Dec. 20, 2021) ...................................................................... 17

12

13

*Birkner v. Lam*,
  156 Cal. App. 4th 275 (2007) .............................................................................................. 10

14

15

*Conwright v. City of Oakland*,
  2010 WL 3515741 (N.D. Cal. Sept. 8, 2010) ...................................................................... 13

16

*Day v. Cal. Lutheran Univ.*,
  2023 WL 4893650 (9th Cir. Aug. 1, 2023) ..................................................................... 9, 12

17

18

*Dean v. Friends of Pine Meadow*,
  21 Cal. App. 5th 91 (2018) .................................................................................................. 10

19

*Domino's Pizza, Inc. v. McDonald*,
  546 U.S. 470 (2006) ............................................................................................................ 17

20

21

*Evans v. McKay*,
  869 F.2d 1341 (9th Cir. 1989) ............................................................................................ 18

22

23

*Fernandez v. Big Lot Stores, Inc.*,
  2014 WL 3418112 (C.D. Cal. July 10, 2014) ...................................................................... 17

24

*Forte v. Jones*,
  2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) ..................................................................... 14

25

26

*Fox Searchlight Pictures, Inc. v. Paladin.*,
  89 Cal. App. 4th 294 (2001) ................................................................................................. 9

27

28

ii

*Gauvin v. Trombatore*,
      682 F. Supp. 1067 (N.D. Cal. 1988) ........................................................................ 14

*Gertz v. Robert Welch, Inc.*,
      418 U.S. 323 (1974) .................................................................................................. 12

*Glassey v. Microsemi Inc.*,
      2014 WL 5499098 (N.D. Cal. Oct. 30, 2014) ......................................................... 15

*Herring Networks, Inc. v. Maddow*,
      445 F. Supp. 3d 1042 (S.D. Cal. 2020) ................................................................... 13

*Herring Networks, Inc. v. Maddow*,
      8 F.4th 1148 (9th Cir. 2021)....................................................................................... 7

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
      140 Cal. App. 4th 515 (2006) ............................................................................ 11, 12

*Jaiyeola v. Apple, Inc.*,
      2024 WL 1329922 (N.D. Cal. Mar. 27, 2024) ......................................................... 18

*Jones v. Lodge at Torrey Pines P'ship*,
      42 Cal. 4th 1158 (2008) ........................................................................................... 16

*Laker v. Bd. of Trs.*,
      32 Cal. App. 5th 745 (2019)..................................................................................... 10

*Layton v. Terremark N. Am., LLC*,
      2014 WL 2538679 (N.D. Cal. June 5, 2014) ........................................................... 11

*Lobo v. Air-India Ltd.*,
      2021 WL 254312 (N.D. Cal. Jan. 26, 2021) ............................................................ 17

*M.G. v. Time Warner, Inc.*,
      89 Cal. App. 4th 623 (2001)..................................................................................... 16

*Malloy v. Regents of Univ. of Cal.*,
      2020 WL 789821 (N.D. Cal. Feb. 18, 2020)............................................................ 15

*McGarry v. Univ. of San Diego*,
      154 Cal. App. 4th 97 (2007)............................................................................... 11, 13

*Overhill Farms, Inc. v. Lopez*,
      190 Cal. App. 4th 1248 (2010)................................................................................. 14

*Patel v. Chavez*,
      48 Cal. App. 5th 484 (2020)....................................................................................... 8

*Phelps v. Wichita Eagle-Beacon*,
      886 F.2d 1262 (10th Cir. 1989) ................................................................................ 18

iii

*Planet Aid, Inc. v. Reveal*,
    44 F.4th 918 (9th Cir. 2022).............................................................................. 12, 13

*Reno v. Baird*,
    18 Cal. 4th 640 (1998) .............................................................................................. 16

*Rivero v. Am. Fed'n of State, Cnty., and Mun. Emps.*,
    105 Cal. App. 4th 913 (2003)..................................................................................... 9

*Rudnick v. McMillan*,
    25 Cal. App. 4th 1183 (1994).................................................................................... 12

*In re Sagent Tech., Inc. Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) .................................................................... 14

*Scott v. McDonnell Douglas Corp.*,
    37 Cal. App. 3d 277 (1974)........................................................................................ 10

*Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*,
    2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ......................................................... 12

*Skidmore v. Gilbert*,
    2022 WL 464177 (N.D. Cal. Feb. 15, 2022)............................................................. 14

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995)..................................................................................... 14

*Steed v. Dep't of Consumer Affs.*,
    204 Cal. App. 4th 112 (2012)...................................................................................... 9

*Strick v. Superior Ct.*,
    143 Cal. App. 3d 916 (1983)...................................................................................... 16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008)...................................................................................... 10

*United States v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011)........................................................................................ 4

*Vergos v. McNeal*,
    146 Cal. App. 4th 1387 (2007)..................................................................................... 8

*Verizon Delaware, Inc. v. Covad Commc'ns. Co.*,
    377 F.3d 1081 (9th Cir. 2004)...................................................................................... 7

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010)........................................................................................ 4

*Williams v. Gorton*,
    529 F.2d 668 (1976).................................................................................................... 18

iv

*Wilson v. Cable News Network, Inc.*,
  7 Cal. 5th 871 (2019) .......................................................................................... 9, 11

*Young v. CBS Broad., Inc.*,
  212 Cal. App. 4th 551 (2012) ...................................................................................... 13

*ZL Techs., Inc. v. Does 1-7*,
  13 Cal. App. 5th 603 (2017) ........................................................................................ 11

*Zoll v. Jordache Enters., Inc.*,
  2001 WL 1550943 (S.D.N.Y. Dec. 5, 2001) .............................................................. 16

**Statutes**

42 U.S.C. § 1981 ............................................................................................. *passim*

Cal. Civ. Code § 47 ................................................................................................ 10

California Civil Code § 3425.3 ......................................................................... 16, 17

Cal. Civ. Proc. Code § 425.16 ................................................................... *passim*

California Gov. Code, § 12940 ........................................................... 3, 6, 16, 17

California Labor Code § 98.6 ...................................................................... *passim*

Title VII of the Civil Rights Act of 1964 ...................................................... 6

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................... 14, 15

Fed. R. Civ. P. 11 ................................................................................................. 2

Fed. R. Civ. P. 12 ................................................................................... *passim*

v

1

2

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

4

5

6

7

8

PLEASE TAKE NOTICE that on August 15, 2024, at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 8 of the above Court, at 450 Golden Gate Avenue in San Francisco, California, before the Honorable Jacqueline Scott Corley, Defendant Kevin Feigelis will and hereby does move, pursuant to California Code of Civil Procedure §425.16, for an order striking the First Amended Complaint, Dkt. No. 7 ("Complaint" or "FAC"), and each cause of action alleged therein.

9

10

11

12

13

In the alternative, if the Court for any reason determines that California Code of Civil Procedure § 425.16 does not apply,  Feigelis will and hereby does move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules" or "Fed. R. Civ. P."), for an order dismissing the first through eighth causes of action in the FAC with prejudice as they pertain to Feigelis, on the ground that they fail to state a claim on which relief can be granted.

14

15

16

This motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the Declaration of Andrew L. Schwartz ("Schwartz Decl."); the complete files in this action; the argument of counsel; and such other matters as the Court may consider.

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Feigelis seeks an order striking Plaintiff Ameer Loggins's Complaint as to Feigelis under California's "anti-SLAPP" statute (Cal. Civ. Proc. Code § 425.16), which applies to federal cases governed by California law, and dismissing the Complaint under Rule 12(b)(6).[1]

Loggins's case against Feigelis is a paradigm of bad-faith litigation and misuse of the judicial system.[2] Loggins, then a lecturer at defendant Stanford, became infamous when, three days after Hamas's October 7 terrorist attack in Israel, he reportedly singled out and humiliated Jewish students. Loggins does not deny that the discriminatory incident occurred, but recharacterizes it as a "classroom exercise" on "dehumanization" and "settler colonialism." FAC ¶¶ 62-63, 94, 99-100. Stanford, in turn, suspended Loggins on October 11, 2023, and later declined to renew his contract. Loggins now seeks to blame anyone he can: his former employer; his former colleagues; and Feigelis, a doctoral student at Stanford's Department of Physics and a research assistant at Stanford's Neurosciences Institute. On their face, Loggins's claims against Feigelis are frivolous, harassing, and must be stricken and dismissed.

Loggins's claims against Feigelis arise solely from Feigelis's written submission in connection with his testimony, at Congress's invitation, at a hearing held by the United States House of Representatives Committee on Education and the Workforce ("Committee") regarding antisemitism on American university campuses ("Hearing"). During the Hearing, Feigelis testified on the rise of antisemitism at Stanford since the October 7 terrorist attack. Feigelis did not mention Loggins in his oral testimony. In his written submission to the Committee, Feigelis included a reference to, as well as one of the many news and social media reports concerning, Loggins's conduct in his classroom on October 10, 2023—three days after the single deadliest

---

[1] Leland Stanford Junior University ("Stanford"), R. Lanier Anderson, Dan Edelstein, Parna Sengupta, Elizabeth Soroka, Jenny S. Martinez, and Richard Saller (together, "Co-Defendants") filed their own motion to dismiss the Complaint and motion to strike the defamation claim on June 10, 2024. Dkt. No. 30. Feigelis incorporates various arguments set forth in that memorandum by reference thereto.

[2] Feigelis reserves the right to seek sanctions on the ground that the Complaint contains frivolous claims. *See* Fed. R. Civ. P. 11.

2

day for Jews since the Holocaust—conduct that shook the Stanford community and prompted Stanford to investigate Loggins.

The inclusion of that reference and the single public report in that written submission is the sole basis for Loggins's defamation claim—and every other retaliation and discrimination claim—against Feigelis. Loggins ginned up these baseless claims to inflict harassment, expense, and negative publicity on Feigelis, going so far as to gratuitously include Feigelis's picture in the Complaint. Loggins's claims against Feigelis are merely an expression of his misplaced animus and, much like his classroom misconduct, harassment targeting a Jewish student—in this case, one who was brave enough to represent his peers before Congress.

As shown below, Loggins's cause of action for defamation and the discrimination and retaliation causes of action[3] should be stricken and Feigelis awarded his attorney's fees under California's anti-SLAPP statute (Cal. Civ. Proc. Code § 425.16), given that, among other things, the alleged conduct—Feigelis's statements before Congress—are absolutely privileged. Loggins's claims are equally frivolous and must be dismissed under Rule 12(b)(6), because, among other things, he does not and cannot proffer a single non-conclusory allegation to support them, his conclusory allegations do not come close to meeting applicable pleading requirements, his FEHA and California Labor Code § 98.6 claims can be stated only against his employer (and not Feigelis, who is a student and research assistant), and they are entirely derivative of his failed defamation claim.

Accordingly, all of Loggins's claims against Feigelis should be stricken and dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    Loggins's Actions in the Wake of October 7, 2023

Loggins was a lecturer in the Stanford Introductory Studies Program. *See* FAC ¶¶ 7, 50. On October 10, 2023, three days after Hamas terrorists invaded Israel and slaughtered, tortured,

---

[3] Those purported claims are for race discrimination under 42 U.S.C. § 1981, discrimination under California Gov. Code, § 12940(a), retaliation under California Gov. Code, § 12940(h), failure to prevent California Fair Employment and Housing Act ("FEHA") violations under California Gov. Code, § 12940(k), and retaliation under California Labor Code § 98.6.

raped, burned, and mutilated 1,200 people—including infants, children, and the elderly—and kidnaped hundreds of others, Loggins devoted his class to the theme of "settler colonialism." *Id*. ¶ 62. According to Loggins, he "felt it necessary to re-introduce settler colonialism into the classroom conversation." *Id*.

Students in the class reported that "Loggins was 'singling out' Jewish students"—he "demanded Jewish students to stand up, took their phones [and] told them to face the wall/sit in the corner" and "went down the line yelling at Jewish students, labeling them as colonizers." *Id*. ¶ 131. Loggins admits that he "asked whether any Jewish students were present in the classroom." *Id*. ¶ 71. He also concedes that he asked a "white/Jewish male" to surrender his backpack and computer, stand facing the window, and produce identification as a condition of returning to his seat. *Id*. ¶¶ 88-93. Loggins now claims "the purpose was to do an exercise on profiling and policing within a scripted space." *Id*. ¶ 94.

Word spread quickly, and Stanford began investigating Loggins the next day, October 11, 2023. Dkt. No. 30-1, Ex. A. Stanford President Richard Saller and Provost Jenny Martinez issued an official statement that Loggins was reported for "identity-based targeting of students" and "to have addressed the Middle East conflict in a manner that called out individual students in class based on their backgrounds and identities," indicating "serious concern." *Id*. On October 11, 2023, Loggins was suspended from teaching at Stanford. FAC ¶ 33. In April 2024, his contract expired and was not renewed. *Id*. ¶ 165.

News of Loggins's conduct and Stanford's investigation was reported by major media outlets, including *CNN*, the *San Francisco Chronicle*, the *New York Times*, and the *Stanford Daily*. *See* Schwartz Decl., Exs. A-C; Dkt. No. 30-1, Ex. C.[4] According to those reports, based on interviews with students, when a student said he was from Israel, Loggins responded: "Oh,

---

[4] The Court can consider the exhibits to the Schwartz Declaration in ruling on a motion to dismiss because they are expressly referenced in the FAC or public articles. *See, e.g*., FAC ¶ 140 ("*Ph.D. student testifies before Congress on antisemitism at Stanford,*" The Stanford Daily), ¶ 147 n.4 (Committee's statement). *See United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). In addition, the Court may take judicial notice of public news reports about the subject of this action. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of magazine reports about the subject of the suit).

**MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND DISMISS**
CASE NO. 3:24-CV-02027

definitely a colonizer." Schwartz Decl., Ex. B at 4; Dkt. No. 30-1, Ex. C at 39. Loggins then asked Jewish students to stand separately from their classmates to demonstrate to them how, in his view, Israel treats Palestinians. Schwartz Decl., Ex. B at 3; *see also* FAC ¶¶ 88-93. Students also recalled how Loggins minimized the Holocaust: Loggins "asked how many Jews died in the Holocaust," and when students said 6 million, he responded, "Yes. Only 6 million." Dkt. 30-1, Ex. C at 39. Students also recounted how Loggins "justified Hamas' attacks in Israel" saying that "Hamas' actions were part of the resistance." Schwartz Decl., Ex. B at 2; Dkt. No. 30-1, Ex. C at 39.

**B.      The Congressional Hearing**

On February 29, 2024, following a rise of antisemitism across university campuses, the Committee held a "bipartisan roundtable to hear from Jewish students from nine universities about their experiences with antisemitism on campus" in order to "help inform the Committee's next steps in the antisemitism investigation as it continues to hold postsecondary education accountable for rampant antisemitism." Schwartz Decl., Ex. D. The Committee's Chairwoman, Virginia Foxx, stated, "these students are dealing with antisemitism at their respective universities on a daily basis" and "[t]heir courage to speak out and share their stories will give the American people a new look at what is truly happening on college campuses around the country." *Id.* Feigelis was one of the students invited to testify at the bipartisan roundtable.

On February 29, 2024, Feigelis testified for approximately six minutes.[5] In his opening statement, Feigelis explained, "I come here today before Congress to ask you all: Please step in and help us." Schwartz Decl., Ex. E at 1-2. Feigelis did not mention Loggins in his opening remarks or in his follow-up remarks. At the request of the Committee, Feigelis also submitted written testimony, which referred to several antisemitic incidents reported at Stanford and included the statement that "just after the attacks of October 7th, Stanford Lecturer Ameer

---

[5] Committee on Education & the Workforce, *WATCH: Jewish Students Share Shocking Details of Antisemitism on College Campuses* (March 4, 2024), https://edworkforce.house.gov/news/documentsingle.aspx?DocumentID=410211 (Feigelis's opening remarks start at 38:19).

1    Loggins segregated Jews in his classroom." FAC ¶ 147. Loggins claims that this statement is

2    defamatory.

3           Feigelis's written testimony also included a collection of public social media posts, one of

4    which reported on Loggins's October 10, 2023 class under the heading "Stanford's most racist

5    faculty members." *Id.* ¶ 140. The post stated that Loggins "publicly shame[d]" students whom

6    Loggins called "colonizers," claimed "that Hamas is not a terrorist organization, but a group of

7    legitimate freedom fighters," and stated "that Hamas represents the Palestinian people and what

8    Hamas is doing is 100% legitimate." *Id.* ¶ 147. Loggins claims that Feigelis's inclusion of the

9    post in his written testimony was also defamatory. *Id.* ¶ 141.

10          Shortly after the Hearing, the Committee posted Feigelis's oral and written testimony on

11   its website along with the testimony of the other students who appeared before Congress.

12   Schwartz Decl., Ex. F.

13   **III.     LEGAL STANDARD**

14          The Complaint asserts eight claims indiscriminately against all Defendants: (1) race

15   discrimination in violation of 42 U.S.C. § 1981; (2) discrimination based on race, skin color, and

16   religion in violation of FEHA, California Government Code § 12940(a); (3) retaliation for

17   activity protected by FEHA, in violation of California Government Code § 12940(h); (4) failure

18   to prevent FEHA violations, in violation of California Government Code § 12940(k);

19   (5) retaliation in violation of California Labor Code § 98.6; (6) employment discrimination in

20   violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et se*q.; (7) retaliation in

21   violation of Title VII; and (8) common law defamation based on Feigelis's testimony before

22   Congress. In subsequent email correspondence, Loggins's counsel confirmed that the sixth and

23   seventh claims are not being asserted against Feigelis. *See* Schwartz Decl. Ex. G.[6]

24          Feigelis seeks an order striking all causes of action against him under California Code of

25   Civil Procedure § 425.16, which was enacted to curb the "disturbing increase in lawsuits brought

---

[6] Feigelis therefore requests that the Court dismiss the sixth and seventh causes of action as to him. Regardless, the sixth and seventh causes of action should also be dismissed against Feigelis. *See supra* Section IV.B; Sections IV.A and IV.B of Co-Defendants' Motion to Dismiss (Dkt. 30), which is incorporated herein.

**MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND DISMISS**
CASE NO. 3:24-CV-02027

1   primarily to chill the valid exercise of the constitutional rights of freedom of speech" (also known

2   as strategic lawsuits against public participation (SLAPP)) and in the "public interest to

3   encourage continued participation in matters of public significance." Cal. Civ. Proc. Code

4   § 425.16(a).[7] This anti-SLAPP statute provides that a "cause of action against a person arising

5   from any act of that person in furtherance of the person's right of petition or free speech . . . in

6   connection with a public issue shall be subject to a special motion to strike." *Id.* § 425.16(b)(1).

7   The statute, which is to "be construed broadly," *id.*, "ensur[es] that SLAPP suits are ended early

8   and without great cost to the SLAPP target," *Barry v. State Bar of Calif.*, 2 Cal. 5th 318, 324

9   (2017) (citation and quotation omitted).

10          Feigelis also seeks dismissal of all claims against him under Rule 12(b)(6) of the Federal

11   Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6) for failure to state a

12   claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

13   relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

14   *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

15   **IV.    ARGUMENT**

16          **A.    Loggins's Claims Against Feigelis Must Be Stricken Under California's Anti-
                   Slapp Statute**

17          "The analysis of an anti-SLAPP motion proceeds in two steps: First, the court decides

18   whether the defendant has made a threshold showing that the challenged cause of action is one

19   'arising from' protected activity." *Barry*, 2 Cal. App. 5th at 321 (cleaned up). Second, once a

20   defendant establishes the activity is protected, the burden shifts to the plaintiff to "demonstrate[] a

21   probability of prevailing on the claim." *Id.* Loggins's claims must be stricken because they

22   depend exclusively on Feigelis's congressional testimony, a protected activity, and Loggins

23   cannot meet his burden to show a probability of prevailing given that Feigelis's testimony was

24   statutorily privileged, true, made without malice, and unactionable opinion.

25

26   _____

     [7] A party "sued in federal courts can bring anti-SLAPP motions to strike state law claims and are
27   entitled to attorneys' fees and costs when they prevail." *Verizon Delaware, Inc. v. Covad Comms.*
     *Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citations omitted); *see also Herring Networks, Inc. v.*
28   *Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) ("California's anti-SLAPP statute allows a
     defendant to file a 'special motion to strike' a plaintiff's complaint.").

1

2      **B.      Plaintiff's Causes of Action Arise from Protected Activity**

Under California Code of Civil Procedure § 425.16(e),[8] protected activity (*i.e.*, activity "in

3  furtherance of a person's right of petition or free speech under the United States or California

4  Constitution") includes:

5              (1) any written or oral statement or writing made before a
             legislative, executive, or judicial proceeding, or any other official
6            proceeding authorized by law, (2) any written or oral statement or
             writing made in connection with an issue under consideration or
7            review by a legislative, executive, or judicial body, or any other
             official proceeding authorized by law, (3) any written or oral
8            statement or writing made in a place open to the public or a public
             forum in connection with an issue of public interest, or (4) any
9            other conduct in furtherance of the exercise of the constitutional
             right of petition or the constitutional right of free speech in
10           connection with a public issue or an issue of public interest.

11  Cal. Civ. Proc. Code § 425.16(e). Feigelis's Congressional testimony—including his allegedly

12  defamatory written material—is protected under all four subsections.

13      Feigelis's statements to the Committee were "statement[s] or writing[s] made before" and

14  "in connection with" a legislative . . . proceeding." *Id.* §§ 425.16(e)(1), (e)(2). Feigelis testified in

15  a proceeding before Congress, a legislative body, and he did so at the Committee's request

16  concerning an "issue under consideration"—namely, to "help inform the Committee's next steps

17  in the antisemitism investigation as it continues to hold postsecondary education accountable for

18  rampant antisemitism" as Jewish "students are dealing with antisemitism at their respective

19  universities on a daily basis." Schwartz Decl., Ex. D. "[E]ven if false" (and Feigelis's testimony

20  was true), such testimony "constitute[s] the 'valid exercise' of the constitutional right of free

21  speech to which the Legislature referred in" the anti-SLAPP statute. *Patel v. Chavez*, 48 Cal.

22  App. 5th 484, 490 (2020). "Under the plain terms of the statute . . . all that matters is that the First

23  Amendment activity take place in an official proceeding or be made in connection with an issue

24  being reviewed by an official proceeding." *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1395

25  (2007); *see also Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 13 (D.D.C. 2013), *aff'd*,

26

27  ───────────────
[8] Feigelis incorporates by reference pages 17 and 18 of Co-Defendants' Motion to Dismiss,
28  Dkt. No. 30, as they pertain to him.

8

783 F.3d 1328 (D.C. Cir. 2015) (testimony before Congress was within protection of D.C.'s Anti-SLAPP Act as statements made before a legislative, executive, or judicial body).

Feigelis's statements are also protected under sections 425.16(e)(3) and (e)(4) because his testimony was made in connection with an issue of public interest. Discrimination on American university campuses, the subject of the statements here, is a topic of public interest. *See, e.g.*, *Day v. Cal. Lutheran Univ.*, 2023 WL 4893650, at *1-2 (9th Cir. Aug. 1, 2023) (striking defamation claims and finding statements privileged because they were "made in connection with an incident that sparked campus-wide discussions about racism and racial justice, matters involving significant public interest")*; Rivero v. Am. Fed'n of State, Cnty., and Mun. Emps.*, 105 Cal. App. 4th 913, 919-24 (2003) (collecting cases in which the subject statements either concerned a topic of widespread public interest, conduct that could directly affect many people beyond the direct participants, or a person or entity in the public eye); *see also* FAC ¶ 112 (alleging articles about Loggins were "picked up worldwide").

Loggins's eighth cause of action for defamation falls squarely within the reach of section 425.16. *See Fox Searchlight Pictures, Inc. v. Paladin.*, 89 Cal. App. 4th 294, 305 (2001) ("[D]efamation suits are a prime target of SLAPP motions."). Given that the only substantive allegations attributed to Feigelis relate to his Congressional testimony, Loggins's first through fifth causes of action for retaliation and discrimination must be stricken as well. *See Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 890 (2019) (striking discrimination and retaliation claims because "for anti-SLAPP purposes discrimination and retaliation claims arise from the [protected activity]" and "[i]f conduct that supplies a necessary element of a claim is protected, the defendant's burden at the first step of the anti-SLAPP analysis has been carried").

**C.    Loggins Cannot Demonstrate a Probability of Prevailing on His Claims as a Matter of Law**

Because Loggins's allegations arise from protected activity, the burden shifts to Loggins to establish a probability that he will prevail on the merits of his causes of action. *See* Cal. Civ. Proc. Code § 425.16(b); *Steed v. Dep't of Consumer Affs.*, 204 Cal. App. 4th 112, 124 (2012). A plaintiff fails to demonstrate the probability of prevailing if the plaintiff fails to demonstrate that

1    an affirmative defense is "not applicable to the case as a matter of law." *Birkner v. Lam*, 156 Cal.

2    App. 4th 275, 285 (2007) (citation omitted).[9]

3              **1.    Loggins Cannot Demonstrate a Probability of Prevailing on Any of His Claims Because Feigelis's Statements Are Subject to Absolute Privilege**

4

5         Loggins's first through fifth and eighth causes of action have no probability of prevailing

6    because Feigelis's testimony is "privileged" under California Civil Code section 47.[10] Similar to

7    California's anti-SLAPP statute, section 47(b) designates as privileged statements made in any:

8    "legislative proceeding" or "other official proceeding authorized by law." Cal. Civ. Code § 47(b).

9         Statements protected under California Civil Code section 47 "are afforded '[a]bsolute

10   immunity'—*i.e.*, "the existence of malice on the part of the declarant will not defeat the

11   privilege." *Scott v. McDonnell Douglas Corp.,* 37 Cal. App. 3d 277, 285-86 (1974) (holding that

12   letters published at a council meeting and in the press were privileged as having "a clear

13   connection with the work of the legislative body"). "Put another way, application of the privilege

14   does not depend on the publisher's motives, morals, ethics or intent." *Dean v. Friends of Pine*

15   *Meadow*, 21 Cal. App. 5th 91, 107 (2018) (citations omitted).

16        Feigelis's statements to Congress are thus privileged and accorded absolute immunity. *See*

17   *Laker v. Bd. of Trs.*, 32 Cal. App. 5th 745, 769 (2019) ("[A] plaintiff cannot establish a

18   probability of prevailing if the litigation privilege precludes the defendant's liability on the

19   claim."). As Loggins himself alleges, Feigelis's written materials were submitted as part of "a

20   bipartisan roundtable hosted by the [Committee]," FAC ¶¶ 140, 147, 250-55, and "were publicly

21   posted to the Congressional Docket in or around March 2024," *id*. ¶ 158. The purpose of

22   Feigelis's testimony was to urge Congress to institute an investigation into treatment of

23   antisemitic incidents. Schwartz Decl., Ex. D.[11] Chairwoman Foxx noted that the Hearing was held

24   _____

25   [9] Even if Loggins's statements are not subject to absolute privilege protection—which they are—
     Loggins cannot demonstrate a probability of prevailing on his discrimination or retaliation claims
26   as they pertain to Feigelis for the additional reasons stated below. *See infra* Section B.

     [10] Feigelis incorporates by reference pages 18 and 19 of Dkt. No. 30 as they pertain to him.

27   [11] For the same reasons, the *Noerr-Pennington* doctrine, which precludes claims based on efforts
     to petition the government under the First Amendment, also applies here. *See Dean*, 21 Cal. App.
28   5th at 108-09; *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th

                                           10
     **MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND DISMISS**
                                           CASE NO. 3:24-CV-02027

1  in order to "help inform the Committee's next steps in the antisemitism investigation as it
2  continues to hold postsecondary education accountable for rampant antisemitism." *Id.*

3      Because the alleged defamatory and discriminatory statements are subject to an absolute
4  privilege, Loggins's claims are barred and Feigelis's anti-SLAPP motion to strike must be
5  granted. *See Wilson*, 7 Cal. 5th at 890 (striking discrimination, retaliation, and defamation
6  claims).

7      **2.      Loggins Cannot Demonstrate a Probability of Prevailing on His
           Defamation Claims**

8      While the absolute privilege protection is sufficient reason to grant this motion in its
9  entirety, Loggins cannot establish a probability of prevailing on his defamation claim for several
10  additional reasons, any one of which would be sufficient to grant this motion.

11      To state a claim for defamation, a plaintiff must allege "(a) a publication that is (b) false,
12  (c) defamatory, and (d) unprivileged, and (e) has a natural tendency to injure or that causes
13  special damage." *Layton v. Terremark N. Am., LLC*, 2014 WL 2538679, at *8 (N.D. Cal. June 5,
14  2014). When the speech involves a matter of public concern, a plaintiff bears the burden of
15  proving the falsity of the defamatory statements. *See ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th
16  603, 631 (2017). And public figures "must also show the speaker made the objectionable
17  statement with malice." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007).
18  Loggins cannot establish a probability that he will prevail on his defamation claim against
19  Feigelis.

20      **a.      Loggins Cannot Establish That the Alleged Defamatory
           Statements Were False**

21      Loggins's defamation claim fails because he cannot establish the falsity of the alleged
22  defamatory statements. When, as here, the "speech involves a matter of public concern, . . .
23  plaintiff must prove the falsity of the offensive speech." *ZL Techs.*, 13 Cal. App. 5th at 631; *see
24  also Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 529 (2006)
25  ("[T]he burden to prove falsity shifts to the plaintiff when the statement relates to an issue of

26
27
28  Cir. 2008) ("The doctrine has since been applied to actions petitioning each of the three branches
    of government, and has been expanded beyond its original antitrust context.").

11

public concern, even when the plaintiff is not a public figure."); *Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*, 2022 WL 1215307, at *5 (N.D. Cal. Apr. 25, 2022) ("Defendant has made out a prima facie showing that the anti-SLAPP statute applies. Accordingly, the burden shifts to Plaintiffs to demonstrate a probability of prevailing on the[ir] claim of defamation . . . [Plaintiffs must] show that each statement which they claim is defamatory is, in fact, materially false.").[12] Loggins does not, as he cannot, proffer any evidence establishing the falsity of the alleged defamatory statements.[13] Instead, he admits to the truth, or at least the substantial truth, of the alleged statements. *See e.g.*, FAC ¶¶ 62 (Loggins "felt it necessary to re-introduce settler colonialism into the classroom conversation"), 71 (Loggins "asked whether any Jewish students were present in the classroom").

### b. Plaintiff Cannot Show Malice or Present Sufficient Evidence That Feigelis Believed His Statement Was False

Where the plaintiff, like Loggins here, is a "limited purpose public figure,"[14] he "must also show the speaker made the objectionable statement with malice," *i.e.*, "with knowledge that

---

[12] "[C]ampus-wide discussions about racism and racial justice"—like those here—"[are] matters involving significant public interest." *Day*, 2023 WL 4893650, at *1. The very fact that the alleged defamatory statements were presented before a congressional committee establishes that antisemitism on campuses across the country, including Stanford, is a "matter of public interest." *See, e.g.*, *Fitzgibbons*, 140 Cal. App. 4th at 519, 523 (email about hospital's financials concerned a public issue under anti-SLAPP because hospitals' financials had been "the subject of public hearings held by both the California Senate and the Orange County Board," and were "discussed in [] articles in newspapers").

[13] Published student accounts, including those describing Loggins as "saying that Hamas' actions were part of the resistance" and that "the students said the instructor tried to justify the actions of Hamas" also confirm the truth of Feigelis's statements. *See e.g.*, Schwartz Decl., Ex. B at 2 (CNN reporting on students' account to local Rabbi); Dkt. No. 30-1, Ex. C at 39 (*San Francisco Chronicle*).

[14] A plaintiff can become limited purpose public figure "by discussing the matter with the press or by being quoted by the press, thus thrusting himself into the vortex of a public issue." *Rudnick v. McMillan*, 25 Cal. App. 4th 1183, 1190 (1994) (citation omitted). Loggins is a well-known contributor regarding issues of racial justice or discrimination on several media platform including the *Guardian* and *Washington Post*. *See* Schwartz Decl., Ex. H. By his own admissions, Loggins meets the three-prong test for designation as a limited-purpose public figure. *See Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 925 (9th Cir. 2022). First, a "public controversy existed when the challenged statements were made," *id.*, here, the heavily reported conflict involving Israel and Hamas. Second, Loggins "voluntarily inject[ed] himself or [wa]s drawn into [this] particular public controversy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *see also Reveal*, 44 F.4th at 926 (voluntariness is "interpreted broadly" and "can[] be satisfied by a showing that a person . . . engaged in a course of conduct that foreseeably put themselves at risk of public

12

it was false or with reckless disregard of whether it was false or not." *McGarry*, 154 Cal. App. 4th at 114 (citation omitted); *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 562-63 (2012) (reckless disregard established where defendant "made the false publication with a 'high degree of awareness of [] probable falsity,'[] or must have 'entertained serious doubts as to the truth of his publication.'") (citation omitted). "In opposing an anti-SLAPP motion," a limited purpose public figure plaintiff must "introduce[e] sufficient facts to establish a prima facie case of actual malice; in other words, [he] must establish a reasonable probability that [he] can produce clear and convincing evidence showing that the statements were made with actual malice." *Young*, 212 Cal. App. 4th at 563.

Loggins offers no allegations of malice other than a single conclusory line: Feigelis "published his false statements about Plaintiff with common law malice, knowing them to be false or with reckless disregard for the truth." FAC ¶ 160. Loggins's unsupported claim that Feigelis "published the [alleged defamatory material] because Plaintiff had expressed opinions critical of the Israeli government" also fails. *Id.* ¶ 152. Such a general allegation falls far short of his burden to "specifically allege malice with detailed facts showing defendant's ill will toward him." *Conwright v. City of Oakland*, 2010 WL 3515741, at *6 (N.D. Cal. Sept. 8, 2010) (citation omitted). Accordingly, Plaintiff has not established a "reasonable probability that [Plaintiff] can produce clear and convincing evidence" of actual malice. *Young*, 212 Cal. App. 4th at 563.

### c.   The Statement That Loggins Was Among Stanford's "Most Racist Faculty Members" Is Not Actionable

The statement in Feigelis's written materials that asserted Loggins was among Stanford's "most racist faculty members" is a non-actionable opinion. *See Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1048-49 (S.D. Cal. 2020) ("[D]efamation involves the intentional publication of a statement of *fact* . . . [not] one of opinion."). Calling someone a

---

scrutiny with respect to a limited range of issues"); FAC ¶¶ 62-63 (Loggins "felt it necessary to re-introduce settler colonialism" into his class and "have a difficult dialogue about" Israel and Palestine), 71 (Loggins "asked whether any Jewish students were present"). Third, the alleged defamation "relate[s] to the plaintiff's participation in the controversy," as the alleged defamatory statements were about Loggins's class. *Reveal*, 44 F.4th at 925, 928 (citation omitted).

**MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND DISMISS**

1  "racist" or claiming that they made racist remarks is not a "provably false assertion of fact,"

2  *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010), and is "not actionable under

3  defamation-type claims because it is a word that lacks precise meaning." *Skidmore v. Gilbert*,

4  2022 WL 464177, at *9 (N.D. Cal. Feb. 15, 2022) (cleaned up); *see also Forte v. Jones*, 2013 WL

5  1164929, at *7 (E.D. Cal. Mar. 20, 2013) ("[T]hat sort of name-calling [implying the plaintiff is a

6  racist] is not actionable, no matter how subjectively hurtful it may be, because the statement is not

7  of the sort that can be verified as false."); *Standing Comm. on Discipline v. Yagman*, 55 F.3d

8  1430 (9th Cir. 1995) (remark to newspaper that judge's record of "sanctioning Jewish lawyers"

9  appeared to the speaker as "evidence of antisemitism" was a non-actionable opinion).

10  ## V.   LOGGINS'S CLAIMS AGAINST FEIGELIS MUST BE DISMISSED UNDER RULE 12(B)(6)

11

12  Loggins's claims should be dismissed as against Feigelis because: (1) the Complaint does

13  not comply with applicable pleading requirements (first through eighth causes of action);[15] (2) the

14  discrimination and retaliation claims (first through seventh causes of action) are derivative of and

15  rely entirely on Loggins's failed defamation claim; (3) Feigelis cannot be held individually liable

16  under FEHA or California Labor Code § 98.6 (fourth and fifth causes of action); and (4) Loggins

17  fails to state a claim under 42 U.S.C. § 1981 (first cause of action).[16]

18  ### A.   The Complaint Does Not Comply with Rule 8

19  To survive a motion to dismiss, a plaintiff must specifically identify in the complaint

20  which of the defendants participated in which allegedly wrongful conduct so that they are advised

21  of the claims they must defend against. *See, e.g.*, *In re Sagent Tech., Inc. Derivative Litig.*, 278 F.

22  Supp. 2d 1079, 1093-94 (N.D. Cal. 2003) (broad allegations that fail to specify which individual

23  defendants are responsible for which allegedly wrongful conduct are insufficient under Fed. R.

24  Civ. P. 8(a)); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("lump[ing]

25

26  [15] Feigelis adopts in full and joins in the arguments—as they pertain to him—submitted in Co-Defendants' Motion to Dismiss—as to why the Complaint fails to sufficiently state any claim for

27  discrimination or retaliation. *See* Dkt. 30 at 7-14.

28  [16] Loggins's defamation claim against Feigelis should be dismissed under Rule 12(b)(6) for the same reasons asserted in § IV.B.1, *supra*.

1  together" multiple defendants "in a single, broad allegation" fails to satisfy notice requirements

2  of Fed. R. Civ. P. 8).

3      Loggins fails to plead a single, non-conclusory allegation that mentions Feigelis—much

4  less even links Feigelis—to the allegations underlying the first through seventh causes of action,

5  though Loggins asserts the claims against all "Defendants." Loggins alleges, for example, that

6  "[i]n a pattern of discriminatory and retaliatory harassment based on Plaintiff's protected

7  characteristics and protected conduct, ANDERSON, SENGUPTA, EDELSTEIN, SOROKA,

8  SALLER and MARTINEZ have made adverse employment decisions with respect to Plaintiff's

9  job opportunities at STANFORD." FAC ¶ 56. Feigelis, a student researcher with no authority

10  over Loggins, is unsurprisingly not mentioned.

11      These sweeping and indiscriminate allegations against "Defendants" (which presumably

12  includes Feigelis) are insufficient under Rule 8 and should be dismissed. *See*, *e.g.*, *Malloy v.*

13  *Regents of Univ. of Cal.*, 2020 WL 789821, at *1, *4 (N.D. Cal. Feb. 18, 2020) (complaint by

14  former employee against university asserting defamation, discrimination, and retaliation

15  "defective under Rule 8, and [] subject to dismissal" where plaintiff failed to "list factual

16  allegations that connect each Defendant with an alleged wrongdoing, and identify which claim is

17  asserted against which Defendant," instead "simply 'lump[ing] defendants [together] without

18  facts to distinguish their individual alleged wrongs'") (citation omitted); *Glassey v. Microsemi*

19  *Inc.*, 2014 WL 5499098, at *2 (N.D. Cal. Oct. 30, 2014) (dismissing "wholly insufficient"

20  pleading that mentions several defendants "only twice" and "fails to state a claim for relief

21  against the vast majority of the 'defendants'").[17]

22

23

24  [17] The second, fourth, and fifth causes of action should also be dismissed against Feigelis for the

25  additional reason that Loggins fails to adequately plead causation or a non-conclusory allegation
   that links Feigelis to the facts underlying the discrimination claims. *see* Section IV.A of Co-

26  Defendants' Motion to Dismiss (Dkt. 30), which is incorporated herein. The third and fourth
   causes of action should also be dismissed against Feigelis because, as explained in Section IV.B

27  of Co-Defendants' Motion to Dismiss, Loggins fails to adequately identify a protected activity
   under FEHA or the California Labor Code and has not pled that there was a causal relationship

28  between his protected activity and any adverse action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.      **Loggins's Claims for Discrimination and Retaliation Are Derivative of His Defamation Claim and Must Be Dismissed**

California Civil Code § 3425.3, otherwise known as the "Single Publication Rule" provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." This precludes plaintiffs from circumventing free speech protections by recasting defamation claims as discrimination or retaliation causes of action.

The first through fifth causes of action as against Feigelis are based solely on the same purported facts as Loggins's defamation claim against Feigelis (the only allegations about him in the Complaint). *See, e.g.*, FAC ¶ 142 (alleging Feigelis "published [] his false mischaracterization with the purpose and intended effect of further retaliating and discriminating against [Plaintiff]"). "A plaintiff may have only one cause of action for one publication rather than multiple causes of action for torts . . . civil rights violations, or fraud and deceit." *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 630 (2001); *see also* Cal. Civ. Code § 3425.3. Because Loggins's defamation claim should be stricken or otherwise dismissed, any derivative claims fail as well and should be dismissed. *See Strick v. Superior Ct.*, 143 Cal. App. 3d 916, 924 (1983) (dismissing additional tort claims where "the harm allegedly sustained . . . is the same as that caused by [defamation]" and "proof of [that harm] is *inextricably linked* to the entire *contents* of the *mass communication*") (emphasis in original); *Zoll v. Jordache Enters., Inc.*, 2001 WL 1550943, at *3 (S.D.N.Y. Dec. 5, 2001) (denying plaintiff's motion to add statutory and common law claims under Cal. Civ. Code § 3425.3).

C.      **Feigelis Cannot Be Liable for Discrimination Claims Arising Under FEHA**

FEHA—the basis for the second through fourth causes of action—only applies to employers. *See Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1162, 1173 (2008) ("nonemployer individuals are not personally liable" under FEHA "for their role in [the alleged] retaliation"); *Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) ("[I]ndividuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts."); *see also Alejandro v. ST Micro Elecs., Inc*, 178 F. Supp. 3d 850, 864 (N.D. Cal. 2016) (same, discussing §

16

12940(k)). Loggins admits as much. FAC ¶ 217 ("California Government Code § 12940 . . . required a covered *employer* to take all reasonable steps . . . .") (emphasis added). Because Feigelis is not Loggins's employer, but instead is a student and research assistant at Stanford, the second through fourth causes of action must be dismissed as to Feigelis.

**D.   Feigelis Cannot Be Liable for Claims Arising Under the California Labor Code**

California Labor Code § 98.6(a) provides that "[n]o person shall discharge an employee or in any manner discriminate against any employee." Unlike with FEHA, some courts have extended this provision to certain supervising employees. *See, e.g.*, *Fernandez v. Big Lot Stores, Inc.*, 2014 WL 3418112, at *2-3 (C.D. Cal. July 10, 2014) (finding an "absence of clear case law" in California whether "individual supervisors" can be proper defendants under § 98.6(a)). Feigelis, however, is not and is not alleged to have had any authority or supervisory responsibility over Loggins (a professor), let alone the authority to discharge or take discriminatory employment action against any employees, including Loggins. *See Lobo v. Air-India Ltd.*, 2021 WL 254312, at *1, *5-6 & n.7 (N.D. Cal. Jan. 26, 2021) (dismissing Labor Code claims where "no facts alleged" that defendant "could plausibly be considered an individual with corporate policy-making authority"). Accordingly, the fifth cause of action must be dismissed as to Feigelis.

**E.   Loggins Fails to State a Claim Under 42 U.S.C § 1981**

"[N]othing in the text of [42 U.S.C] § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice . . . a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed) contract that he wishes to make and enforce." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006) (citation omitted). Accordingly, "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Bibi v. VxL Enter., LLC*, 2021 WL 5998439, at *4 (N.D. Cal. Dec. 20, 2021). Where a plaintiff "failed to make [an] allegation that racial discrimination blocked the creation of a contractual relationship, or impaired an existing contractual relationship, he has failed to plead a [Section] 1981 claim." *Id.* (finding plaintiff failed to: "explain how [a] subcontract relationship enable[d] him to bring a § 1981 claim against" the

17

principal, with which he had no contract; "point[] to any authority indicating that, by working for the subcontractor," he "thereby had some kind of contractual relationship with" the principal; and "contend[] that [the principal] interfered with his [sub]contract").

Here, the Complaint contains only conclusory words to the effect that "Defendants" "deprived Plaintiff of [] employment benefits," without any detail related to Feigelis. FAC ¶ 5. Allegations of defamation alone (the only allegations attributed to Feigelis in the Complaint), however, do not establish a cause of action under the Civil Rights Act, which includes Section 1981. *Williams v. Gorton*, 529 F.2d 668 (1976) ("Defamation itself does not establish a cause of action under these sections. It is the deprivation of constitutional rights for which the Act creates a remedy, and on that score the allegations contained in the complaint were deficient."); *see also Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989) (even if plaintiff were defamed and "thus arguably made [] less attractive to some who otherwise might want to contract with him, the defamation does not deny him the basic right to contract").

Section 1981 also requires allegations of intentional discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). Loggins falls far short, alleging, at most, that he is an "African American, Muslim." FAC ¶ 7. But Loggins does not allege, as he must, that Feigelis discriminated against him because of his race or religion. Rather, Loggins alleges only a political or ideological motivation: that "Feigelis published the testimony . . . because Plaintiff had expressed opinions critical of the Israeli government." *Id.* ¶ 152. This is fatal to Loggins's Section 1981 claim. *See Astre v. McQuaid*, 804 F. App'x 665, 667 (9th Cir. 2020) (holding "the § 1981 claims in this case are 'implausible' because the 'complaint identifies independent non-discriminatory reasons for' the alleged" loss of a protected right (citation omitted)); *Jaiyeola v. Apple, Inc.*, 2024 WL 1329922, at *7 (N.D. Cal. Mar. 27, 2024) (dismissing claims by former employee without leave to amend "where FAC is devoid of facts connecting the alleged conduct to [plaintiff's] race").

## VI.    CONCLUSION

For all the foregoing reasons, moving Defendant Kevin Feigelis requests that the Court grant the Motion to Strike and Motion to Dismiss with prejudice.

18

1    Dated: July 5, 2024                    Respectfully submitted,

2

3                                           By: */s/ Andrew L. Schwartz*
                                                Andrew L. Schwartz (admitted pro hac vice)
4                                               Joshua E. Roberts (admitted pro hac vice)
                                                Lea Dartevelle (admitted pro hac vice)
5                                               KASOWITZ BENSON TORRES LLP
                                                1633 Broadway
6                                               New York, New York 10019
                                                Tel.: (212) 506-1700
7                                               Fax: (212) 506-1800
                                                aschwartz@kasowitz.com
8                                               jroberts@kasowitz.com
                                                ldartevelle@kasowitz.com
9

10                                              Jason S. Takenouchi (CBN 234835)
                                                KASOWITZ BENSON TORRES LLP
11                                              101 California Street, Suite 3950
                                                San Francisco, California 94111
12                                              Tel.: (415) 421-6140
                                                Fax: (415) 398-5030
13                                              jtakenouchi@kasowitz.com

14

15                                          *Attorneys for Defendant Kevin Feigelis*

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION OF DEFENDANT KEVIN FEIGELIS TO STRIKE AND DISMISS**

CASE NO. 3:24-CV-02027