Tracey L. Brown (SBN 166152)
tbrown@cochranfirmny.com
Derek S. Sells
dsells@cochranfirmny.com
The Cochran Firm, PLLC
55 Exchange Plaza, 23rd Floor
New York, NY 10006
Tel No.: (212) 553-9214
Fax No.: (212) 227-8763
Attorneys for Plaintiff Ameer Hasan Loggins

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

Dr. AMEER HASAN LOGGINS, Ph.D

Plaintiff,

      vs.

LELAND STANFORD JUNIOR
UNIVERSITY,
KEVIN T. FEIGELIS individually,
R. LANIER ANDERSON, individually
DAN EDELSTEIN individually,
PARNA SENGUPTA individually,
ELIZABETH SOROKA individually
JENNY S. MARTINEZ individually,
RICHARD SALLER individually,

      Defendants.

Case No.: 3:24-cv-02027 JSC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
OPPOSITION TO MOTION OF KEVIN T.
FEIGELIS TO DISMISS FIRST
AMENDED COMPLAINT AND STRIKE
DEFAMATION CLAIM**

Hearing Date: August 15, 2024
Time: 10:00 a.m.
Courtroom: 8

Before the Honorable Jacqueline Scott Corley

1
2
**<u>TABLE OF CONTENTS</u>**
3
<u>**Page**</u>
4
TABLE OF AUTHORITIES………………………………………………..…………..ii
5
PRELIMINARY STATEMENT……………………………………………….........1
6
FACTS ……………………………………………………………………………….2
7
LEGAL STANDARDS…………………………………………….....................6
8
ARGUMENT……………………………………………………………………….8
9
10
    PLAINTIFF HAS ALLEGED VALID CLAIMS FOR DEFAMATION...................................8
11
    DEFENDANT SHOULD BE REQUIRED TO COMPENSATE PLAINTIFF FOR HAVING TO RESPOND
    TO THIS MOTION…………………………………………...............................16
12
    PLAINTIFF HAS SUFFICIENTLY PLEADED ALL REMAINING CLAIMS…………….……….17
13
    IF A MOTION FOR LEAVE TO AMEND THE COMPLAINT IS REQUIRED, PLAINTIFF SO MOVES
    AND THE AMENDMENT SHOULD BE GRANTED………….................................20
14
15
CONCLUSION...............................................................................22
16
17
18
19
20
21
22
23
24
25
26
27
28

<div style="text-align:left; writing-mode: vertical">Initiative Legal Group LLP
1800 CENTURY PARK EAST. SECOND</div>

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.*,
137 Cal. App. 4th 1118, 1129 (2006) …………………………………….......................**10**

*Alch v. Superior Court*,
122 Cal. App. 4th 339, 389–390, 19 Cal. Rptr. 3d 29, 94 Fair Empl. Prac. Cas. (BNA) 793 (2d
Dist. 2004) …………………………….............................................................**17**

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)…………………………………….......................................**8**

*Baker v. Los Angeles Herald Examiner*,
42 Cal.3d at pp. 260–261, 228 Cal.Rptr. 206, 721 P.2d 87. ..…………………………...**13, 14**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007)………...……………. ……………………….…….........**7, 8**

*Bonni v. St. Joseph Health System*
(2021) 11 Cal.5th 995, 1009…………....………………………………………**8**

*Brooks v. City of San Mateo*,
229 F.3d 917, 928 (9th Cir. 2000). ………………………..…………………………….....**19**

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
(9th Cir. 2016) 824 F3d 1156, 1159………………………………………………….....**8**

*Campanelli v. Regents of University of California*
(1996) 44 Cal.App.4th 572…………………………………………………….....................**13**

*Cartwright v. Viking Indus., Inc.*,
249 F.R.D. 351, 353 (E.D. Cal. 2008)..…………………………………………………**7**

*Celotex Corp. v. Catrett*,
477 U.S. 317, 327 (1986)…………………….…………………………………………**7**

*Coffin v. Safeway, Inc.*
(D AZ 2004) 323 F.Supp.2d 997, 1000…………………………………...………..**8**

*Comcast Corp. v. National Association of African American Owned Media, et. at.*,
140 S. Ct. 1009 (2020) ………………………………………..……………………**18**

*Crowe v. County of San Diego,*
303 F. Supp. 2d 1050, 1111 (S.D. Cal. 2004) ………………………….………….…………**17**

*Davis v. Elec. Arts Inc.,*
No. C-10-03328 RS DMR, 2011 WL 2621626, (N.D. Cal. July 5, 2011)……………………………………………………………………….……………..……**22**

*Equilon Enterprises v. Consumer Cause, Inc.,*
29 Cal.4th 53, 67 (2002). ……………………………………...……………………..**6**

*Ferlauto v. Hamsher*
(1999) 74 Cal.App.4th 1394, 1401………………………………………..……………….**13**

*Franklin v. Dynamic Details, Inc.,*
116 Cal.App.4th at p. 385, 10 Cal.Rptr.3d 429. ………………………………………**10, 14**

*Garrett v. Wexford Health*
(3d Cir. 2019) 938 F.3d 69, 91……………………………………...………………..**8**

*Gilligan v. Jamco Develop. Corp.*
197 F.3d 246, 249 (9th Cir. 1997)………………….........…………………………………**7**

*Glob. Network Commc'ns, Inc. v. City of New York,*
458 F.3d 150, 156–57 (2d Cir. 2006) ……………….......................................................**16**

*HMS Capital Inc. v. Lawyers Title Co.,*
118 Cal. App.4th 204, 212 (2004)...………….……………………………………………**7**

*Hong v. U.S. Dept. of Homeland Security Citizenship and Immigration Services*
(C.D. Cal. 2009), 662 F.Supp.2nd 1195, 1198)...……………………………………………**7**

*In re Gilead Sciences Sec. Litig.,*
536 F.3d 1049, 1057 (9th Cir. 2008)...…………………………………………………..**7**

*In re Immune Response Sec. Litig.,*
375 F.Supp.2d 983, 995–96 (S.D. Cal. 2005) ...…………………………………………....**16**

*J arrow Formulas, Inc. v. LaMarche*
31 Cal.4th 728, 738 (2003) ...…………………………………....................**7**

*Jardin v. DATAllegro, Inc.,*
2011 U.S. Dist. LEXIS 84509, *16 (S.D. Cal. July 29, 2011) …………………………....**17**

*Kachmar v. SunGard Data Sys., Inc.,*
109 F.3d 173, 177 (3rd Cir.1997). ……………………………………………………**19**

*Lazy Y Ranch*,
546 F.3d 580, 588 (9th Cir. 2008) …………….......................................................**7**

*Lipman v. Brisbane Elementary School Dist.*
(1961) 55 Cal.2d 224, 233…………………………………………………………**15**

*Liu v. Moore*,
69 Cal.App.4th 745, 781 (1999) …………….......................................................**6**

*Mack v. Cal. Dep't of Corr. & Rehab.*,
2016 U.S. Dist. LEXIS 96808, *28-29 (E.D. Cal. July 25, 2016) ………………………………..**17**

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254, 275 (9th Cir. 2013) …………….......................................................**21**

*Martinez v. Metabolife Int'l, Inc.*,
113 Cal. App. 4th 181, 193 (2003) …………….......................................................**10**

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 802 (1973) …………….......................................................**19**

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832, 845 (9th Cir. 2001) …………….......................................................**21**

*Navellier v. Sletten*,
29 Cal.4th 82, 88 (2002*)*…………….......................................................**6, 12**

*Park v. Board of Trustees of California State University*
(2017) 2 Cal.5th 1057, 1061. …………….......................................................**4**

*Piping Rock Partners, Inc. v. Davis Lerner Assoc., Inc.*,
946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) …………….......................................................**9, 10**

*Porter v. California Dep't of Corr.*,
419 F.3d 885, 895 (9th Cir. 2005) …………….......................................................**19**

*Reno v. Baird*,
18 Cal. 4th 640, 657, 76 Cal…………….......................................................**18**

*Roby v. McKesson Corp.*,
219 P.3d 749, 761-62 (Cal. 2009) …………….......................................................**18**

*Rogers v. Home Shopping Network, Inc.*,
57 F.Supp.2d 973, 980 (C.D.Cal.1999)…………….......................................................**21**

*Rouse v. Law Offices of Rory Clark*,

465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2007) …………………........................................**10**

*Ruiz v. Harbor View Community Association,*
134 Cal.App.4th 1456, 1471, 37 Cal.Rptr.3d 133 (2005) …………………......................**10, 13**

*Seismic Reservoir 2020, Inc. v. Paulsson*
(9th Cir. 2015) 785 F3d 330, 335)...…………………………………………………….....**8**

*Schaedler v. Reading Eagle Publ'n, Inc.,*
370 F.2d 795, 798 (3d Cir. 1967)……………………………….....…..........................……**8**

*Slaughter v. Friedman*
(1982) 32 Cal.3d 149, 154] ..……………………………………….....................………**13, 14**

*Smith v. BP Lubricants USA Inc.,*
64 Cal. App. 5th 138, 145–46, 278 Cal. Rptr. 3d 587, 593–94 (4th Dist. 2021)……………….....**17**

*Soukup v. Law Offices of Herbert Hafif,*
39 Cal.4th 260, 269 (2006) ..…………………………..…….......................…………..……**7**

*Taylor v. City of Los Angeles Dept. Of Water and Power*
(2006) 144 Ca1App.4th 1216, 1236-1237 ……………………….......................................**18**

*Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054, 1065 (9th Cir. 2002)…………………….…......................................……**19**

*Weinberg v. Feisel,*
110 Cal.App.4th 1122, 1132–1133, 2 Cal.Rptr.3d 385 (2003) …………….…...……………...**9**

*Wilbanks v. Wolk*
(2004) 121 Cal.App.4th 883, 904…………………………….....................................……**13**

*Wilcox v. Superior Court,*
27 Cal. App.4th 809, 815 (1994) ……………………………….......................................**6**

*Williams & Cochrane, LLP v. Quechan Tribe,*
2018 U.S. Dist. LEXIS 196075, *48-9 (S.D. Cal. Nov. 15, 2018) ………………………….....**17**

*Wilson v. Parker, Covert & Chidester* (2002)
28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733………………….…......................….....**11**

*Wilson v. Cable News Network, Inc,*
7 Cal. 5th 871 (Supreme Ct. Calif. 2019). ………………………………….....................…....**15**

*Winarto v. Toshiba AM Electronics Components,*
274 F.3d 1276, 1287-1288 (9th Cir. 2001) ……………………………………....................**18**

*Other*

FRCP 12(b)(6)………………………………………………………………………**1, 9, 10**
42 U.S.C. § 1981(b)……………………………………………………………..... **12**
CCP § 425.16 (b)(1)………………………………………………………………**9, 11**

## <u>PRELIMINARY STATEMENT</u>

Plaintiff's First Amended Complaint ("Plaintiff's Complaint" and/or "Compl." and/or "the Complaint") addresses multiple employment law violations by Defendant including, without limitation, willful and deliberate disparate treatment of Plaintiff during the course of his employment based upon his protected characteristics.

Defendant KEVIN T. FEIGELIS (hereinafter referred to as "Defendant" and/or "**FEIGELIS**") has filed Defendant's Motion to Dismiss (hereinafter referred to as "Defendant's Motion" and/or "the MTD") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "FRCP") seeking to dismiss Plaintiff's First Amended Complaint against the Defendant in its entirety.

Rather than addressing Plaintiff's claims head-on, Defendant's Motion is, yet another, occasion of Defendant's baseless assassination of Plaintiff's character by repeating accusations which have already been debunked. Defendant's Motion consistently misstates the law, omits controlling authority, and selectively quotes from inapposite cases. What Defendants lack in legal reasoning, he makes up for in bombast.

Better suited for an opening statement to a jury, Defendant absurdly claims that Plaintiff "ginned up these baseless claims to inflict harassment, expense, and negative publicity on Feigelis, going so far as to gratuitously include Feigelis's picture in the Complaint. Loggins's claims against Feigelis are merely an expression of his misplaced animus and, much like his classroom misconduct, harassment targeting a Jewish student—in this case, one who was brave enough to represent his peers before Congress" ECF No. 57, p.3.

Dishonest mudslinging and projection is a *leitmotif* of Defendant's Motion, and this mischaracterization conveniently omits that **FEIGELIS** made the initial decision to gratuitously

include Plaintiff's picture in his own defamatory statement which is at the heart of Plaintiff's claims against Defendant.

Additionally, Plaintiff has not "ginned up….baseless claims" and has not filed the Complaint to "inflict harassment, expense, and negative publicity" on **FEIGELIS**. On the contrary, Plaintiff's Complaint alleges that the Defendant's defamatory statements materially contributed to a false narrative surrounding Plaintiff and Plaintiff's lecture, by accusing Plaintiff of discriminatory conduct with zero supporting evidence; what evidence *does* exist, in the form of a conclusive report following an investigation into these allegations, simply proved the falsity of the said narrative. Plaintiff's Complaint demonstrates in painstaking detail the effects of Defendant's defamatory statements, including pages upon pages of hate-mail and death threats. Therefore, the reality is that Plaintiff filed the Complaint merely to seek lawful justice for suffering a litany of indignities arising as a result of Defendant's wrongdoing.

The Court should not be swayed by Defendant's unscrupulous attacks, which are particularly inappropriate against a Plaintiff who has been proven by Defendant **LELAND STANFORD JUNIOR UNIVERSITY** to have been wrongfully accused. Defendant's arguments are frivolous in the face of the Complaint which contains sufficiently pleaded facts and very specific allegations, including, but not limited to, discrimination based on race, color, religion, political affiliations, a hostile work environment, protected activity, consequent retaliation, and establishes the Defendant's liability for all causes of action under the applicable laws.

## **FACTS**

Plaintiff Dr. Ameer Hasan Loggins (hereinafter referred to as "Dr. Loggins " and/or "Plaintiff") is an individual black, African American, Muslim male who is a resident of the State of California. Plaintiff is therefore a member of multiple protected classes. Plaintiff has enjoyed a good

reputation, both generally and in his occupation as a lecturer. He earned his Doctoral Degree in 2019 from the University of California at Berkeley. Beginning on or about August 8, 2023, Defendant Leland Stanford Jr. University ( **STANFORD** hired Plaintiff as a lecturer. At all times material, Plaintiff was, and still is, qualified for his position as a lecturer at **STANFORD**. ECF No. 7, ¶ ¶ 50-51. On or about October 10, 2023, Plaintiff walked into class with a lesson largely planned around a quote from the reading for the week. The quote was posted by a classroom community member in their reading reflection from Jenny Odell's *How to Do Nothing: Resisting the Attention Economy*, in it. In the selected quote, Odell says, "...I see a…battle playing out for our time, a colonization of the self by capitalist ideas of productivity and efficiency." Plaintiff wanted, in praxis, for the students to see their contributions to the class guiding the discussion. Plaintiff also wanted to make time and space to have a difficult dialogue about a conversation that was not just taking place on **STANFORD**'s campus but around the world. The conversation surrounded dehumanization, Israel, and Palestine.. *Id* ¶ ¶ 57-65. **STANFORD** immediately began a pattern of discriminatory misconduct in response to Plaintiff's lecture.

Defendant **FEIGELIS** at all times material was, and still is, a postdoctoral researcher at **STANFORD**. **FEIGELIS** is an individual non-black, non-African American, non-Muslim man, who serves as an employee of **STANFORD** in the role of assistant teacher, researcher and/or other paying position. *Id* ¶ ¶ 12. **FEIGELIS** contributed to **STANFORD**'s misconduct, including retaliation, and personally violated Plaintiff's rights and publicly defamed Plaintiff, by circulating outright lies about Plaintiff. On or about March 1, 2024, in addressing a bipartisan roundtable hosted by the House Committee on Education and the Workforce **FEIGELIS**, a **STANFORD** student, employee and educator, defamed and slandered Plaintiff by unfairly, unjustifiably, unreasonably, untruthfully, and inaccurately subjecting him to the public mischaracterization as one of two of "**STANFORD**'s most racist faculty member[s]." Plaintiff is categorically not racist,

making **FEIGELIS'** statement a defamatory, slanderous, and libelous mischaracterization of the Plaintiff. **FEIGELIS** published this false mischaracterization with the purpose and intended effect of further retaliating and discriminating against Dr. Loggins all with **STANFORD**'s implicit consent since Standford had taken no action to remedy the hostile work environment it created surrounding Plaintiff's suspension. This is especially true because **FEIGELIS** was not in Dr. Loggins' classroom when he gave his lectures, nor was he part of the investigation into the lectures and he had no firsthand knowledge of what occurred in the classes that were at issue. As an employee of **STANFORD**, **FEIGELIS** not only defamed Dr. Loggins, but he also failed to follow the rules and regulations of the school which prohibit commenting on personnel matters which are private and confidential. **STANFORD** failed to train **FEIGELIS** regarding the private and confidential nature of employee personnel matters and Defendants **STANFORD, SALLER,** and **MARTINEZ**'s own  statement to the press revealing its decision to suspend Plaintiff based on an investigation into potential illegal conduct gave **FEIGELIS** the belief that he could say anything he wanted publicly about Dr. Loggins without repercussion. The defamatory statement clearly cast Plaintiff into a bad light and caused ridicule, scorn, and economic injury to Plaintiff by harming his professional reputation and employability generally and as a lecturer. During the bipartisan roundtable hosted by the House Committee on Education and the Workforce **FEIGELIS** slandered and libeled Plaintiff by publishing an image and falsely claiming that "just after the attacks of October 7th, Stanford Lecturer Ameer Loggins segregated Jews in his classroom" that Plaintiff "proceeded to publicly shame these Stanford students...Ameer called these students "colonizers" and stated that Hamas is not a terrorist organization, but a group of legitimate freedom fighters" and that Plaintiff "Stated that Hamas represents the Palestinian people and what Hamas is doing is 100% legitimate. Plaintiff categorically did not segregate Jews in his classroom. Plaintiff categorically did not publicly shame the Jewish Stanford students or

call these students "colonizers." Plaintiff categorically did not state that "Hamas is not a terrorist organization, but a group of legitimate freedom fighters," or that "Hamas represents the Palestinian people and what Hamas is doing is 100% legitimate", making **FEIGELIS'** statement a defamatory and libelous mischaracterization of the Plaintiff's actions. **FEIGELIS** published this false mischaracterization with the purpose and intended effect of discriminating against Dr. Loggins and piggybacking on **STANFORD**'s misconduct of verifying its suspension of Dr. Loggins to cause further injury to Plaintiff's professional reputation. **FEIGELIS'** publishing the testimony proximately harmed Plaintiff by negatively impacting his ability to return to and/or obtain professional employment. **FEIGELIS'** publishing the testimony and infographic referenced above has proximately harmed Plaintiff by causing persons in his chosen profession to form an unfavorable opinion of Plaintiff. **FEIGELIS** published the testimony and infographic referenced above, because Plaintiff had expressed opinions critical of the Israeli government and he felt empowered to do so because of **STANFORD**'s, **SALLER**'s and **MARTINEZ**'s failure to take effective remedial action and their failure to enforce the school's regulations as it relates to the privacy and confidentiality of African American, Muslim, and non-Caucasian employees like Dr. Loggins. *Id* ¶ ¶ 140-152.

Upon information and belief, when **FEIGELIS** published the testimony he knew and/or acted in reckless disregard to the fact that there was nothing to corroborate his claims since he was not present for the lectures at issue. **FEIGELIS'** statements refer to Plaintiff by name, were made of and concerning him, and were so understood by those who heard it. **FEIGELIS'** false statements about Plaintiff are libelous, defamatory, and slanderous on their face and clearly exposed Plaintiff to hatred, contempt, ridicule, and obloquy. **FEIGELIS'** false statements have been seen by an untold number of readers since they were publicly posted to the Congressional Docket in or around March 2024. **FEIGELIS** published his false statements about Plaintiff with

common law malice, knowing them to be false or with reckless disregard for the truth. *Id* ¶ ¶ 153-160.

## **LEGAL STANDARDS**

Defendant moves for an Order striking Plaintiff's Complaint pursuant to California Code of Civil Procedure ("CCP") section 425.16 (b)(1), and to dismiss Plaintiff's Complaint for failure to state a claim pursuant to FRCP **12(b)(6)** (hereinafter "Rule 12(b)(6)"). A Strategic Lawsuit Against Public Participation ("SLAPP") is a "meritless suit filed primarily to chill the defendant's exercise of first amendment rights." *Wilcox v. Superior Court*, 27 Cal. App.4th 809, 815 (1994). The anti-SLAPP motion is therefore designed to protect the defendant who has been "victimized" by such a "meritless" and "retaliatory" suit. *Liu v. Moore*, 69 Cal.App.4th 745, 781 (1999).

In evaluating an anti-SLAPP motion under California Code of Civil Procedure ("CCP") section 425.16 (b)(1), the trial court engages in a "two-step process." First, the moving defendant must meet its burden of demonstrating that the act of which the plaintiff complains was taken in furtherance of the defendant's right of petition or free speech under the U.S. or California Constitution in connection with a matter of public concern, as defined in CCP 425.16(b)(1). *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). If the defendant meets this burden, then the burden shifts to the plaintiff to show that the claims have at least "minimal merit." *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002).

Only a cause of action that involves "protected activity" and lacks even "minimal merit" is subject to dismissal under the anti-SLAPP statute. *Navellier* at 88. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App.4th 688, 700 (2007) ("Precisely because the [anti-SLAPP] statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high. . . Only a cause of action that lacks 'even

minimal merit' constitutes a SLAPP."); *J arrow Formulas, Inc. v. LaMarche*, 31 Cal.4th 728, 738 (2003) (requiring only a minimum level of legal sufficiency and triability). In deciding whether the cause of action lacks even minimal merit, courts neither weigh credibility nor compare the weight of the evidence. Rather, courts accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 269 (2006); *HMS Capital Inc. v. Lawyers Title Co.*, 118 Cal. App.4th 204, 212 (2004) (it is "the court's responsibility ... to accept as true the evidence favorable to the plaintiff. . . .").

A Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) is viewed with disfavor by the Courts and is rarely granted. *Gilligan v. Jamco Develop. Corp.* 197 F.3d 246, 249 (9th Cir. 1997). "To survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Id. "[A] district court ruling on a motion to dismiss is not sitting as a trier of fact." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible," the motion to dismiss must be denied. *Id*. Indeed, the "court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint." *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 353 (E.D. Cal. 2008). Factual disputes are properly resolved only on summary judgment or at trial, not on motion to dismiss. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. FED.R.CIV.P. 8(a)(2)." *(Hong v. U.S. Dept. of Homeland Security Citizenship and*

*Immigration Services* (C.D. Cal. 2009), 662 F.Supp.2nd 1195, 1198.) "[T]he decision to dismiss a complaint should not be entered lightly because it "forecloses inquiry into the merits." *(Garrett v. Wexford Health* (3d Cir. 2019) 938 F.3d 69, 91 (quoting *Schaedler v. Reading Eagle Publ'n, Inc.,* 370 F.2d 795, 798 (3d Cir. 1967).) A Rule 12(b)(6) dismissal is proper when the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp.* (9th Cir. 2016) 824 F3d 1156, 1159; *Coffin v. Safeway, Inc.* (D AZ 2004) 323 F.Supp.2d 997, 1000 (citing text); *Seismic Reservoir 2020, Inc. v. Paulsson* (9th Cir. 2015) 785 F3d 330, 335.

While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "In determining whether the complaint states a plausible discrimination case, a "court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 11.

Applying these standards, the Defendant's Motion must fail.

## ARGUMENT

**PLAINTIFF HAS ALLEGED A VALID CLAIM FOR DEFAMATION**

In the first step under the two-step anti-SLAPP analysis, the court determines whether the plaintiff's claims arise from protected activity. *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009; *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061. At this stage, the defendant's burden is "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Id.*) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.) Thus, "a

claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)     Here, Defendant **FEIGELIS'** defamatory statements about Dr. Loggins do not qualify as statements of an issue of public interest notwithstanding that those statements took place before a congressional panel.  In this regard, California law is clear:

> "Although California's anti-**SLAPP** law provides no definition of "an issue of public interest," courts have established guiding principles for what distinguishes a public interest from a private one:
>
> (1) "public interest" does not equate with mere curiosity;
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.
>
> *See Weinberg v. Feisel,* 110 Cal.App.4th 1122, 1132–1133, 2 Cal.Rptr.3d 385 (2003)"

*Piping Rock Partners, Inc. v. Davis Lerner Assoc., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)(Ilston, J.).  There was no public interest in whether Dr. Loggins was one of the two most racist professors at Stanford.  Instead, Dr. Loggins, who was under investigation as an employee of Stanford at the time the defamatory statements were made, should not have been mentioned at all publicly since the policy of the University was to keep such personal matters private and not to comment publicly at all.  Defendant Feigelis' statements about Dr. Loggins was thus a clear policy violation of the School and  not an issue of public interest.  Utilizing the guiding principles stated in the *Piping Rock, supra,* case, of private versus public interest evaluation embodied by California Law shows that Defendant Feigelis has not met the requisite showing to make his defamatory statements about Dr. Loggins an issue of a public interest.  Viewed in the light most

favorable to the plaintiff, Feigelis' defamatory statements about Dr. Loggins was "a mere effort to gather information for another round of private controversy" and an attempt to "turn otherwise private information into a matter of public interest simply by communicating to a large number of people."

Where, as here, the moving party fails to meet its initial burden, the Court need not consider whether the plaintiff has demonstrated a probability of success before denying a special motion to strike. *Rouse v. Law Offices of Rory Clark*, 465 F. Supp. 2d 1031, 1038 (S.D. Cal. 2007) (citing *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.*, 137 Cal. App. 4th 1118, 1129 (2006)); *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 193 (2003) (holding that unless defendants carry their burden at the first step of the anti-SLAPP analysis to show the suit arises from acts in furtherance of their protected activity, the court must deny the motion).

In addition, **FEIGELIS**' claimed opinion that Dr. Loggins was one of the two most racist professors at Stanford was based on an implied knowledge of facts that were untrue and therefore not protected.  The opinion relied on a statement attributing specific actions taken by Plaintiff in his lecture, including segregating students based on race and religion, publicly shaming students based on race and religion, and claiming that Hamas' actions are "100% legitimate" were not true and therefore not protected by the First Amendment as pure opinion.  *Piping Rock Partners, Inc. v. Davis Lerner Assoc., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013)(Ilston, J.).  As the *Piping Rock Partners*, *supra*, court made clear:

> Although statements of opinion are not *per se* actionable, an opinion loses its constitutional protection and becomes actionable when it is "based on implied, undisclosed facts" and "the speaker has no factual basis for the opinion." *Ruiz v. Harbor View Community Association,* 134 Cal.App.4th 1456, 1471, 37 Cal.Rptr.3d 133 (2005). That is, expressions of opinion do not enjoy blanket constitutional protection. *See Franklin v. Dynamic Details, Inc.,* 116 Cal.App.4th 375, 384, 10 Cal.Rptr.3d 429 (2004). "If a statement of opinion implies a knowledge of facts which may lead to a **defamatory** conclusion, the implied facts

must themselves be true." *Ringler Associates Inc. v. Maryland Casualty Co.,* 80 Cal.App.4th 1165, 1181, 96 Cal.Rptr.2d 136 (2000).

Therefore, the Court need not address the second prong of the anti-SLAPP analysis because **FEIGELIS** has failed to prove that all Plaintiff's claims arise from protected activity.

However, even if the Court were to decide that it must reach the second part of the equation, the plaintiff has demonstrated a probability of prevailing on his claim. "A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).)

The second step of the anti-SLAPP analysis has been described as a summary-judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940, 243 Cal.Rptr.3d 880, 434 P.3d 1152, whereby the court "'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.]" (*Ibid.*) This threshold is "not high." (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 458, 156 Cal.Rptr.3d 901.) Claims with minimal merit proceed, and the plaintiff need only have "'stated and substantiated a legally sufficient claim.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, 81 Cal.Rptr.2d 471, 969 P.2d 564 (*Briggs* ), quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412, 58 Cal.Rptr.2d 875, 926 P.2d 1061 (*Rosenthal* ).)

"Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, 123 Cal.Rptr.2d 19, 50 P.3d 733, quoting *Matson v. Dvorak*

(1995) 40 Cal.App.4th 539, 548, 46 Cal.Rptr.2d 880.); *Navellier v. Sletten*, 29 Cal. 4th 82, 88–89, 52 P.3d 703, 708 (2002); *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 211.) 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—*i.e.*, that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'(*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645, 24 Cal.Rptr.3d 619.)

A claim for defamation requires proof of a false and unprivileged publication that exposes the plaintiff "to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ.Code, § 45.) A statement is defamatory when it tends "directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, trade, profession, or business that has a natural tendency to lessen its profits[.]" (Civ.Code, § 46, subd. 3.) Statements that contain such a charge directly, and without the need for explanatory matter, are libelous *per se*. (Civ.Code, § 45a.) "The *sine qua non* of recovery for defamation ... is the existence of falsehood." (*Letter Carriers v. Austin* (1974) 418 U.S. 264, 283, 94 S.Ct. 2770, 41 L.Ed.2d 745.) Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. The court in *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1, refining the distinction between nonactionable statements of opinion and actionable assertions of false facts, rejected the contention that statements of opinion enjoy blanket constitutional protection. *Milkovich* reasoned that "[s]imply couching such statements in terms of opinion does not dispel these [false, defamatory] implications" (*id.* at p. 19, 110 S.Ct. 2695) because a speaker may still imply "a knowledge of facts which lead to the [defamatory]

conclusion." (*Id.* at p. 18, 110 S.Ct. 2695.) The court explained that expressions of opinion may imply an assertion of objective fact, and a statement that implies a false assertion of fact, even if couched as an opinion, can be actionable. (*Id.* at pp. 18–19, 110 S.Ct. 2695.) "The dispositive question for the court is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion." (*Melaleuca, supra,* 66 Cal.App.4th at 1353) " 'Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide [citations], unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood.' " (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1471; *Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 578 ["If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. (Citation.)"].)

California courts apply the totality of the circumstances test to determine whether an allegedly defamatory statement constitutes opinion or fact. (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260; *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1401) In making that determination, the court places itself in the position of the hearer, and "determine[s] the sense or meaning of the statement according to its natural and popular construction." (*Baker v. Los Angeles Herald Examiner*, *supra*, 42 Cal.3d at p. 260, 228) But in doing so, it must also take account of whether or not the speaker of the allegedly defamatory statement was merely a lay person, or instead someone with some related specialized knowledge.

As the Court of Appeals, citing the California Supreme Court, explained: "An accusation that, if made by a layperson, might constitute opinion may be understood as being based on fact if made by someone with specialized knowledge of the industry." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th   883,   904 [citing *Slaughter   v.   Friedman* (1982)   32   Cal.3d   149,   154].)

In *Slaughter*, *supra*, the California Supreme Court disagreed with those defendants' contentions "that their letters contain mere statements of opinion, not fact" and noted, instead, that "[a]lthough accusations of 'excessive' fees or 'unnecessary' work when made by laymen might indeed constitute mere opinion, similar accusations by professional dental plan administrators carry a ring of authenticity and reasonably might be understood as being based on fact." (*Slaughter, supra,* 32 Cal.3d at 154).

To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances to test whether the statement in question communicates or implies a provably false statement of fact. (*Franklin v. Dynamic Details, Inc., supra,* 116 Cal.App.4th at p. 385, 10 Cal.Rptr.3d 429.) Under the totality of the circumstances test, "[f]irst, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense.... [¶] Next, the context in which the statement was made must be considered." (*Baker v. Los Angeles Herald Examiner, supra,* 42 Cal.3d at pp. 260–261, 228 Cal.Rptr. 206, 721 P.2d 87.)

Plaintiff's Complaint plainly states that during the bipartisan roundtable hosted by the House Committee on Education and the Workforce "**FEIGELIS** slandered and libeled Plaintiff by publishing an image and falsely claiming that "just after the attacks of October 7th, Stanford Lecturer Ameer Loggins segregated Jews in his classroom" that Plaintiff "proceeded to publicly shame these Stanford students...Ameer called these students "colonizers" and stated that Hamas is not a terrorist organization, but a group of legitimate freedom fighters" and that Plaintiff "Stated that Hamas represents the Palestinian people and what Hamas is doing is 100% legitimate."

Plaintiff's Complaint goes on to allege that "Plaintiff categorically did not segregate Jews in his classroom. Plaintiff categorically did not publicly shame the Jewish Stanford students or call these students "colonizers." Plaintiff categorically did not state that "Hamas is not a terrorist

organization, but a group of legitimate freedom fighters," or that "Hamas represents the Palestinian people and what Hamas is doing is 100% legitimate", making **FEIGELIS'** statement that Dr. Loggins was one of the two most racist professors at Stanford a defamatory and libelous mischaracterization as opposed to a protected opinion.  ECF No. 7, ¶ ¶ 147-148.  Moreover, the statements made about Plaintiff were not themselves a matter of public interest, similar to the statements made about the plaintiff in *Wilson v. Cable News Network, Inc*, 7 Cal. 5th 871 (Supreme Ct. Calif. 2019).

  **FEIGELIS** published all defamatory statements of fact in the testimony he knew were false, unprivileged, and had a natural tendency to injure or which caused special damage. Civ. Code, §§ 45, 46. The statements were clearly "of and concerning Plaintiff" as Plaintiff was referred to by name, in accusations of conduct that is libel *per se*. *Barnes-Hind,* 181 Cal.App.3d at p. 385.  Despite the burden of pleading and proving truth generally being on the defendant, per *Lipman v. Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 233, Plaintiff offered evidence that **FEIGELIS**' statements were false. In addition, **STANFORD**'s own investigation confirmed that "[t]he neutral fact finders concluded that the evidence did not establish that [Plaintiff] intended to target Jewish or Israeli students for different treatment. The investigators discovered quite wide differences in the way [Plaintiff's] actions were perceived by different students, and in light of these differences, the evidence did not support a finding that [Plaintiff] intentionally or objectively discriminated against any of the students."

  Defamation consists of false and unprivileged written, oral or recorded publications which expose the defamed person to hatred, contempt, ridicule or obloquy or cause the person to be shunned or avoided or injured in his or her occupation (Cal Civ Code § 45, defining libel). Few statements are more defamatory than labeling someone a racist, let alone one of the most racist people employed on a university campus. These and the other statements made by **FEIGELIS**

are *per se* defamatory and, as a result, damage is presumed. Thus, although establishing damage is not necessary, here Plaintiff in fact was damaged, and has shown evidence in support.

Conversely, the **FEIGELIS** Motion attempts to rely on a Schwartz Declaration which is impermissible, since it is not referenced in Plaintiff's complaint, in order to provide a counter-factual narrative. *In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 995–96 (S.D. Cal. 2005); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006). Despite the fact that the Declaration should not be considered, even if it were considered, it would only create an issue of fact that cannot be determined on a motion to dismiss. The declaration and motion are both replete with inadmissible argument and improper conclusions of law, falsely alleging that the complaint supplies admissions of fact which a plain reading of the complaint refutes and which clearly demonstrates why Defendant's Motion is objectively frivolous.  At this stage of the litigation, the allegations of Plaintiff's complaint are the operative facts and clearly set out claims that are actionable.

**DEFENDANT SHOULD BE REQUIRED TO COMPENSATE PLAINTIFF FOR HAVING TO RESPOND TO THIS MOTION**

Under California's anti-SLAPP statute, a party that defeats a special motion to strike may be entitled to fees. Cal. Code Civ. Proc. § 425.16(c)(1) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."), Such is the situation here. Defendant's anti-SLAPP motion is based a strained application of the law.

Finally, California's anti-SLAPP statute is intended "to weed out [and deter] *meritless* claims meant to harass or intimidate," not to punish litigants whose good-faith allegations happen to involve submissions to public agencies. Granting Defendant this relief

would run afoul of the American rule generally requiring parties to bear their own legal fees on Rule 12(b)(6) motions to dismiss.

Therefore, if the Court is inclined to find that Plaintiff has not made out a cognizable claim on any particular state law cause of action, including after any amendment, it should grant Defendant's Rule 12(b)(6) motion as to such claim(s), and deny the special motion to strike as moot. Courts have routinely followed this practice where anti-SLAPP challenges, like this one, are purely legal in nature. *See, e.g.*, *Mack v. Cal. Dep't of Corr. & Rehab.*, 2016 U.S. Dist. LEXIS 96808, *28-29 (E.D. Cal. July 25, 2016); *Jardin v. DATAllegro, Inc.*, 2011 U.S. Dist. LEXIS 84509, *16 (S.D. Cal. July 29, 2011); *Williams & Cochrane, LLP v. Quechan Tribe*, 2018 U.S. Dist. LEXIS 196075, *48-9 (S.D. Cal. Nov. 15, 2018); *Crowe v. County of San Diego*, 303 F. Supp. 2d 1050, 1111 (S.D. Cal. 2004) (denying anti-SLAPP motion and motion for fees as moot after disposing of claims on summary judgment), *rev'd in part on other grounds*, 2010 U.S. App. LEXIS 894 (9th Cir. 2010). Plaintiff humbly requests this Court to require that Defendant reimburse Plaintiff for his reasonable attorneys' fees incurred in having to respond to Defendant's anti-SLAPP motion under Cal. Code Civ. Proc. § 425.16(c)(1).

**PLAINTIFF HAS SUFFICIENTLY  PLEADED ALL REMAINING CLAIMS**
Plaintiff was intentionally subjected to discriminatory comments and conduct by FEIGELIS, i.e., a **STANFORD** employee, wherein he was openly treated with less dignity and respect by those with whom he worked because of his race, and skin color.   California law holds that "individuals and entities who are not the plaintiff's employer may be liable under FEHA for aiding and abetting the plaintiff's employer's violation of FEHA." *Smith v. BP Lubricants USA Inc*., 64 Cal. App. 5th 138, 145–46, 278 Cal. Rptr. 3d 587, 593–94 (4th Dist. 2021) (citing *Alch v. Superior Court*, 122 Cal. App. 4th 339, 389–390, 19 Cal. Rptr. 3d 29, 94 Fair Empl. Prac. Cas. (BNA) 793 (2d Dist. 2004).

"Under FEHA, an employee who harasses another employee may be held personally liable." (citing § 12940(j)(3)); *Reno v. Baird*, 18 Cal. 4th 640, 657, 76 Cal; *Roby v. McKesson Corp.,* 219 P.3d 749, 761-62 (Cal. 2009)).Individual employees can be held personally liable for harassment, regardless of whether the employer knew or should have known about the harassment and failed to take immediate and appropriate corrective action (Cal. Gov't Code § 12940(j)(3).

The evidence is clear that, but for his protected characteristics, including his race and color, Plaintiff would not have been subjected to this misconduct, or these pretextual allegations, which undoubtedly contributed to the hostile work environment and his pretextual wrongful termination. This satisfies the section 1981 standard established by *Comcast Corp. v. National Association of African American Owned Media, et. at.*, 140 S. Ct. 1009 (2020).  **FEIGELIS** claim that the complaint does not make out a contractual relationship is likewise frivolous.  The paragraphs 40-51 and 175 of the Amended complaint show that there was a contractual relationship of employment between plaintiff and Stanford during the time that **FEIGELIS** violated Stanford's policy of commenting about employees who are under investigation based upon his race as an African American.

Plaintiff has also made out a claim for retaliation.  When an employee protests the actions of a supervisor, such opposition is a protected activity under Title VII, *and if* an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity; Civil Rights Act of 1964 § 704(a), 42 U.S.C.A. § 2000e-3(a). Employee supervisors are individually liable for acts of retaliation. Gov't Code § 12 940 (h), *Winarto v. Toshiba AM Electronics Components,* 274 F.3d 1276, 1287-1288 (9th Cir. 2001); *Taylor v. City of Los Angeles Dept. Of Water and Power* (2006) 144 Cal App.4th 1216, 1236-1237. To state a claim for retaliation under

FEHA, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific. When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Porter v. California Dep't of Corr.,* 419 F.3d 885, 895 (9th Cir. 2005) *citing Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3rd Cir.1997).

Per paragraph 105 of Plaintiff's Complaint, in response to Plaintiff's supervisors subjecting him to clearly false allegations, "Plaintiff immediately engaged in protected activity by vehemently objecting to and denying these clearly false allegations and pretextual investigation. Plaintiff provided a detailed explanation of his intentions with his lecture, establishing that there was nothing antisemitic about it whatsoever."

Additionally, "Plaintiff took further protected action by retaining a law firm to protect and enforce his rights under the anti-discrimination laws" at paragraph 136 of the Amended Complaint. Therefore, Defendant was undoubtedly aware of Plaintiff's protected activities, which were specific and clearly pertained to discrimination based on Plaintiff's race, color, and religion.

It is well established that the causation element of a retaliation claim can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Therefore, where the temporal proximity between the protected activities and the adverse employment actions is short and frequent a trier of fact should find that the adverse employment actions are retaliatory and discriminatory in nature.

Here, where the adverse employment decisions occurred within weeks of Plaintiff's

protected conduct, the temporal proximity is sufficient, in and of itself, to allow a trier of fact to find that the adverse actions taken against Plaintiff are retaliatory and discriminatory. Plaintiff can rely on temporal proximity between his protected conduct, and the unlawful retaliatory acts, including pretextual wrongful suspension, and pretextual wrongful termination, to establish causation, and Plaintiff has indeed pleaded his claims properly at this stage.

Moreover,  Plaintiff reminds the Court that his Title VII claims will be assessed under the *McDonnell Douglas* burden-shifting scheme, at which time Defendant will have his opportunity to articulate a legitimate, nondiscriminatory reason for his actions and plaintiff will have to show pretext if such reasons are presented. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).   But for purposes of this motion to dismiss, plaintiff's allegations must be considered as true without regard to the burden shifting aspect.

Even if Defendant claims a legitimate, non-retaliatory reason for his adverse employment actions, such an argument is completely improper on a motion to dismiss. Defendant's dismissal arguments are based on disputed facts which more accurately represent his proposed legitimate non-discriminatory reason for the adverse actions taken against Plaintiff. This argument is reserved for a motion for summary judgment because at this stage all Plaintiff's allegations must be accepted as true. Therefore, these disputed factual arguments are premature at the motion to dismiss stage and should be disregarded. Accordingly, Defendant's request for dismissal of Plaintiff's well-pleaded retaliation causes of action should not be granted, because Plaintiff has alleged enough facts to state plausible claims of relief. Therefore, the Motion to Dismiss should be denied in its entirety.

**IF A MOTION FOR LEAVE TO FURTHER AMEND THE COMPLAINT IS REQUIRED, PLAINTIFF SO MOVES AND THE AMENDMENT SHOULD BE GRANTED**

Under Federal Rules of Civil Procedure, Rule 15(a), leave to amend the complaint should be freely given in the absence of any apparent or declared reason, such as undue delay, bad faith, or

dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.

Additionally, "[p]rocedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980)). The Ninth Circuit has "accordingly refused to apply certain discovery-limiting provisions of the anti-SLAPP statute because they would conflict with Fed.R.Civ.P. 56," and has also held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc*. 377 F.3d at 1091 (citing *Metabolife*, 264 F.3d at 845). As a result, "the federal court special motion is a far different (and tamer) animal than its state-court cousin." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, C.J., concurring) ("Anti-SLAPP motion has no proper place in federal court in light of the Federal Rules of Civil Procedure"); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J. concurring) ("The California anti-SLAPP statute cuts an ugly gash through [the FRCP's] orderly process" by implementing new timelines, standards, and awards of attorneys' fees); *id*. at 275 (Paez, J., concurring) ("California's anti-SLAPP statute is 'quintessentially procedural,' and its application in federal court has created a hybrid mess that now resembles neither the Federal Rules nor the original state statute").

If the anti-SLAPP statute's discovery-limiting provisions "were used in federal court to test the plaintiff's evidence before the plaintiff has completed discovery, it would collide with Federal Rule of Civil Procedure 56." *Metabol Life*, 264 F.3d at 846 (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 980 (C.D.Cal.1999).

In the present matter, the merits of the Complaint are not before the Court. Plaintiff's Complaint is not futile or patently insufficient, *especially* when judged by the liberal standards that are to be accorded to all pleadings. Moreover, as nothing has happened in this matter that would prejudice the Defendant by granting leave to amend, same cannot be claimed by Defendant as a reason for its denial. Plaintiff should, at a minimum, be authorized to take discovery from **FEIGELIS** on the issues related to the anti-SLAPP portion of **FEIGELIS**' Motion before the Court rules on the same. *Davis v. Elec. Arts Inc.*, No. C-10-03328 RS DMR, 2011 WL 2621626, at *7 (N.D. Cal. July 5, 2011) (permitting discovery is "essential to Plaintiffs' opposition to the anti-SLAPP motion.")

Accordingly, to the extent that leave to amend is determined to be required by this Court, it should be granted. The said Motion to Dismiss should therefore be denied in its entirety.

## **CONCLUSION**

Defendants' Motion should be denied. Plaintiff has clearly alleged enough facts to state a claim for relief that is plausible on its face for defamation, discrimination, hostile work environment, and retaliation. As such, the Defendants' Motion should be denied in its entirety, together with such other and further relief as this Court may deem just and proper.

New York, New York
July 19, 2024

Respectfully submitted,


____/s/ Tracey L. Brown____
Tracey L. Brown, Esq.
The Cochran Firm
55 Broadway, 23rd Floor
New York, NY 10006
T: (212) 553-9215
F: (212) 227-8763
tbrown@cochranfirmny.com