Jason S. Takenouchi (CBN 234835)
**Kasowitz Benson Torres LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (415) 421-6140
Fax: (415) 398-5030
jtakenouchi@kasowitz.com

Andrew L. Schwartz (*pro hac vice*)
Joshua E. Roberts (*pro hac vice*)
Lea Dartevelle Erhel (*pro hac vice*)
**Kasowitz Benson Torres LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
aschwartz@kasowitz.com
jroberts@kasowitz.com
ldartevelle@kasowitz.com

*Attorneys for Defendant Kevin T. Feigelis*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMEER HASAN LOGGINS, PH.D.,<br><br>Plaintiff,<br><br>v.<br><br>LELAND STANFORD JUNIOR UNIVERSITY, KEVIN T. FEIGELIS individually, R. LANIER ANDERSON, individually, DAN EDELSTEIN individually, PARNA SENGUPTA individually, ELIZABETH SOROKA individually, JENNY S. MARTINEZ individually, RICHARD SALLER individually,<br><br>Defendants. | Case No: 3:24-cv-02027-JSC<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT KEVIN FEIGELIS'S MOTION TO STRIKE AND TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  August 15, 2024<br>Hearing Time:  10:00 a.m.<br>Hearing Location:  Courtroom 8<br>Judge:  Hon. Jacqueline Scott Corley |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.   Loggins's Claims Against Feigelis Must Be Stricken Under California's Anti-SLAPP Statute ............................................................................................................................. 2

    A.   Feigelis Established That Loggins's Allegations Meet the First Prong of the Anti-SLAPP Statute ............................................................................................................. 2

    B.   Feigelis Has Established That the Claims Meet the Second Prong of the Anti-SLAPP Statute ............................................................................................................. 5

        1.   Feigelis's Statements Are Subject to Absolute Privilege .............................................. 5

        2.   Loggins Cannot Demonstrate a Probability of Prevailing on His Defamation Claim . 7

II.   Claims Which Loggins Fails to Defend Must Be Stricken and Dismissed ......................... 8

III.   In the Alternative, Loggins's Claims Against Feigelis Must be Dismissed Under Rule 12(b)(6) ......................................................................................................................... 9

    A.   Loggins Concedes Feigelis's Arguments Under Rule 8 ................................................. 9

    B.   Loggins Concedes the Single Publication Rule's Application ........................................ 9

    C.   Loggins Concedes That Feigelis Cannot Be Liable for Retaliation Under FEHA ........ 10

    D.   Loggins Concedes That Feigelis Cannot Be Liable Under the California Labor Code . 11

    E.   Loggins's Discrimination Claim Under Section 1981 Fails as a Matter of Law ........... 11

IV.   Loggins Should not Be Granted Leave to Amend His Complaint nor Take Discovery Before the Court Rules on the Instant Motion ................................................................. 12

V.   Feigelis Is Entitled to His Attorney's Fees ....................................................................... 13

CONCLUSION ...................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas v. Foreign Pol'y Grp., LLC*,
    975 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................................... 6

*Barry v. State Bar of Cal.*,
    2 Cal. 5th 318 (2017) ........................................................................................................ 2

*Bearden v. Alameda Cnty.*,
    2020 WL 3791645 (N.D. Cal. July 7, 2020) ................................................................... 11

*Birkner v. Lam*,
    156 Cal. App. 4th 275 (2007) ........................................................................................... 5

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    589 U.S. 327 (2020) ........................................................................................................ 12

*Correa v. Whittier City Police Dep't*,
    2023 WL 4409118 (C.D. Cal. Mar. 14, 2023) .................................................................. 8

*Day v. Cal. Lutheran Univ.*,
    2023 WL 4893650 (9th Cir. Aug. 1, 2023) ....................................................................... 3

*Eliott v. Lions Gate Ent. Corp.*,
    639 F. Supp. 3d 1012 (C.D. Cal. 2022) ............................................................................ 3

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) ................................................................................. 9

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ............................................................................................. 3

*Green v. City & Cnty. of San Francisco*,
    2021 WL 3810243 (N.D. Cal. Aug. 26, 2021) ................................................................ 10

*Guy v. City of Phoenix*,
    668 F. Supp. 1342 (D. Ariz. 1987) .................................................................................. 11

*Henrietta Mine, LLC v. A.M. King Indus., Inc.*,
    562 F. Supp. 3d 968 (E.D. Cal. 2021) ............................................................................ 10

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ........................................................................................... 13

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) .............................................................................. 3

ii

*Jones v. Lodge at Torrey Pines P'ship*,
    42 Cal. 4th 1158 (2008) ................................................................................. 10

*Laker v. Bd. of Trs. of Cal. State Univ.*,
    32 Cal. App. 5th 745 (2019)........................................................................ 5, 6

*Lobo v. Air-India Ltd.*,
    2021 WL 254312 (N.D. Cal. Jan. 26, 2021) ................................................ 11

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001)........................................................................... 9

*Mack v. Cal. Dep't of Corr. & Rehab.*,
    2016 WL 4000128 (E.D. Cal. July 25, 2016) ............................................. 14

*Miller v. Ford Motor Co.*,
    620 F. Supp. 3d 1045 (E.D. Cal. 2022)......................................................... 8

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
    491 F. Supp. 3d 738 (S.D. Cal. 2020)......................................................... 12

*Passman v. Torkan*,
    34 Cal. App. 4th 607 (1995)........................................................................... 6

*Patel v. Chavez*,
    48 Cal. App. 5th 484 (2020)...................................................................... 4, 6

*Pfeiffer Venice Props. v. Bernard*,
    101 Cal. App. 4th 211 (2002)...................................................................... 14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) ...................................................... 4, 5

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018)....................................................................... 13

*Qureshi v. Countrywide Home Loans, Inc.*,
    2010 WL 841669 (N.D. Cal. Mar. 10, 2010) ............................................... 8

*Ramirez v. Ghilotti Bros.*,
    941 F. Supp. 2d 1197 (N.D. Cal. 2013) ........................................................ 8

*Reno v. Baird*,
    18 Cal. 4th 640 (1998) ................................................................................. 10

*In re Sagent Tech., Inc. Derivative Litig.*,
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........................................................ 9

*Scott v. McDonnell Douglas Corp.*,
    37 Cal. App. 3d 277 (1974).......................................................................... 6

iii

*Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*,
2022 WL 1215307 (N.D. Cal. Apr. 25, 2022) ........................................................... 7

*Skidmore v. Gilbert*,
2022 WL 464177 (N.D. Cal. Feb. 15, 2022) ........................................................... 7

*Smith v. BP Lubricants USA Inc.*,
64 Cal. App. 5th 138 (4th Dist. 2021) ........................................................... 10

*Stossel v. Meta Platforms, Inc.*,
634 F. Supp. 3d 743 (N.D. Cal. 2022) ........................................................... 12

*Strick v. Superior Ct.*,
143 Cal. App. 3d 916 (1983) ........................................................... 4

*Vergos v. McNeal*,
146 Cal. App. 4th 1387 (2007) ........................................................... 3

*Verizon Del., Inc. v. Covad Comms. Co.*,
377 F.3d 1081 (9th Cir. 2004) ........................................................... 14

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*,
2018 WL 6018504 (S.D. Cal. Nov. 16, 2018) ........................................................... 14

*Wilson v. Cable News Network, Inc.*,
7 Cal. 5th 871 (2019) ........................................................... 5, 6

**Statutes**

42 U.S.C. § 1981 ........................................................... 1, 11

Cal. Civ. Code § 45 ........................................................... 5, 6

Cal. Civ. Code § 46 ........................................................... 5, 6

Cal. Civ. Code § 47 ........................................................... 1, 5, 6

Cal. Civ. Code § 3425.3 ........................................................... 9

Cal. Civ. Proc. Code § 425.16 ........................................................... *passim*

Cal. Gov. Code § 12940 ........................................................... 10

Cal. Labor Code § 98.6 ........................................................... 8, 11

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................... 8, 9

Fed. R. Civ. P. 12 ........................................................... *passim*

iv

Fed. R. Civ. P. 15 ................................................................................................ 12

Fed. R. Civ. P. 56 ................................................................................................ 13

**REPLY OF DEFENDANT FEIGELIS IN SUPPORT OF MOTION TO STRIKE AND DISMISS**
CASE NO. 3:24-CV-02027

Defendant Kevin Feigelis submits this reply in further support of his Motion to Strike and to Dismiss the First Amended Complaint ("Motion") (Dkt. 57).[1]

### INTRODUCTION

Loggins's claims against Feigelis lack supporting allegations and are contrary to controlling law. Rather than confront these gating issues (many of which are ignored), Loggins continues to blame everyone but himself for the consequences of his actions—his former employer, former colleagues, and a Jewish student who was invited by Congress to testify about the scourge of antisemitism on university campuses. But a lawsuit against the one student brave enough to represent his peers before Congress is legally impressible, and no amount of misplaced indignation can substitute for cognizable claims.

Loggins's briefing confirms that Feigelis's Motion should be granted in full. First, Loggins cannot and does not seriously refute that Feigelis meets the first prong of California's anti-SLAPP statute because Feigelis's testimony before Congress was a protected activity.

Second, Loggins cannot meet his burden under the second prong of the anti-SLAPP statute by demonstrating that he has a probability of prevailing on his causes of action. Loggins's misreading of the law manifests itself in his failure to submit any evidence in support of his claims against Feigelis. Loggins also glaringly fails to contest that Feigelis's testimony before Congress is subject to absolute privilege under California Civil Code Section 47(b). That Loggins believes Feigelis's testimony was false and maliciously made (allegations of which he only pled in a conclusory fashion) is irrelevant to the privilege determination. The entirety of Loggins's Complaint, which he concedes is based solely on Feigelis's testimony, should be stricken.

Finally, Loggins ignores many of Feigelis's arguments that require the same result, including that: Loggins improperly brings tort claims arising from the same alleged defamatory statements in violation of the "Single Publication Rule," and Feigelis was neither Loggins's employer nor his supervisor and thus cannot be liable under Loggins's FEHA and California Labor Code claims. The only cause of action Loggins seriously defends, Section 1981, still fails for the

---

[1] Terms defined in the Motion have the same meanings in this reply. "Opposition" or "Opp." refer to Plaintiff Ameer Loggins's opposition to the Motion (Dkt. 63).

**REPLY OF DEFENDANT FEIGELIS IN SUPPORT OF MOTION TO STRIKE AND DISMISS**
CASE NO. 3:24-CV-02027

additional reasons that Loggins does not introduce evidence of a contract between Feigelis and Loggins, nor that Feigelis's testimony was racially motivated.

These errors and omissions are pervasive. Accordingly, Loggins's entire Complaint against Feigelis must be stricken under the anti-SLAPP statute and, in the alternative, his claims fail as a matter of law and should be dismissed under Rule 12(b)(6).

**ARGUMENT**

**I.  Loggins's Claims Against Feigelis Must Be Stricken Under California's Anti-SLAPP Statute**

As explained in his Motion, Mot. at 7, "[t]he analysis of an anti-SLAPP motion proceeds in two steps: First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity." *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 321 (2017) (cleaned up). Second, once a defendant establishes that the activity is protected, the burden shifts to the plaintiff to "demonstrate[] a probability of prevailing on the claim." *Id.* (cleaned up).

**A.  Feigelis Established That Loggins's Allegations Meet the First Prong of the Anti-SLAPP Statute**

As to the first step of the anti-SLAPP analysis, Feigelis has established that his Congressional testimony is "protected" under all four subsections of California Code of Civil Procedure § 425.16(e) because it was a written or oral statement or writing made: (1) "before a legislative . . . proceeding, or any other official proceeding authorized by law"; (2) "in connection with an issue under consideration or review by a legislative . . . body"; and (3) "in a place open to the public or a public forum in connection with an issue of public interest"; and (4) it was "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In response, Loggins concedes that subsections (e)(1) and (2) are satisfied and that his claims for defamation, retaliation, and discrimination against Feigelis arise entirely from Feigelis's Congressional testimony. Opp. at 5 (Feigelis's statements "were publicly posted to the Congressional Docket"); Opp. at 9 ("those statements took place before a congressional panel");

2

Opp. at 14 (during "the bipartisan roundtable hosted by the House Committee on Education and the Workforce[,] FEIGELIS slandered and libeled Plaintiff"); Opp. at 4 ("FEIGELIS published this false mischaracterization with the purpose and intended effect of further retaliating and discriminating against Dr. Loggins"). This alone should end the inquiry.

Loggins argues that Feigelis's statements do not fall under subsections (e)(3) and (4) as they "do not qualify as statements of an issue of public interest notwithstanding that those statements took place before a congressional panel." Opp. at 9. This argument is irrelevant—the subsections are not factors to be weighed, they are independent bases of protected activity, two of which Loggins concedes apply to the statements at issue. *See Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1395 (2007) ("Under the plain terms of the statute[,] . . . all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding" (cleaned up)).

Nonetheless, the argument that Feigelis's statements before Congress did not concern issues of public interest is also wrong. By its very nature, any hearing before Congress involves issues of public interest. This is especially true here, where Congress held the hearing as part of its investigation on the widely reported and discussed topic of "antisemitism on American university campuses." Mot. at 9; *see, e.g.*, *Day v. Cal. Lutheran Univ.*, 2023 WL 4893650, at *1-2 (9th Cir. Aug. 1, 2023) (striking defamation claims based on statements "made in connection with an incident that sparked campus-wide discussions about racism and racial justice, matters involving significant public interest").

Far from being a "private" or "personal matter," as he claims, Loggins's antisemitic remarks attracted national attention. Opp. at 9.[2] The publicity and controversy surrounding Loggins's

---

[2] Feigelis properly submitted the exhibits in the Schwartz Declaration in support of his Motion because they are expressly referenced in the Complaint and/or are public articles of which the Court can take judicial notice. *See, e.g.*, *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1023 (C.D. Cal. 2022) (considering judicially noticeable extrinsic materials to evaluate a purely legal challenge brought under anti-SLAPP statute); *see also* Mot. at 4 n.4. Loggins disingenuously argues that considering the exhibits would create an issue of fact, Opp. at 16, and his cited caselaw is inapplicable. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005) (cited Opp. at 16) (non-anti-SLAPP case, when the court said no judicial notice of facts "subject to reasonable dispute" (citation omitted)); *Glob. Network Commc'ns, Inc. v. City of New York*, 458

1    classroom antics is confirmed by his own Complaint. *See, e.g.*, FAC ¶ 112 (Stanford's declaration

2    about Loggins's class was "picked up worldwide[,] . . . thereby demonizing and scandalizing

3    Plaintiff before the world"). And every single email and letter from his "supporters," *see* FAC

4    ¶ 131, pre-dates—and could not have resulted from—Feigelis's testimony.[3]

5            Loggins's argument that Feigelis's "opinion that Dr. Loggins was one of the two most racist

6    professors at Stanford . . . [is] untrue and therefore not protected," Opp. at 10, fares no better.

7    Loggins offers no support for the claim that opinions (false or otherwise) are an exception to the

8    enumerated activities in § 425.16(e)—nor could he. "Even if false" (and Feigelis's testimony was

9    true), testimony "constitute[s] the 'valid exercise' of the constitutional right of free speech to which

10   the Legislature referred in" the anti-SLAPP statute. *Patel v. Chavez*, 48 Cal. App. 5th 484, 490

11   (2020). The only case Loggins cites in support of this argument, Opp. at 10-11, directly contradicts

12   his position:

13              California law does not require a statement to be serious or truthful
                in order to concern an issue of public interest. In fact, courts have
14              explicitly rejected this view. By asserting that the statements are not
                in the public interest because they are false, plaintiffs urge the Court
15              to "read a separate proof-of-validity requirement into the operative
                sections of the statute," which this Court cannot do. Moreover,
16              "[p]laintiffs' argument confuses the threshold question of whether
                the SLAPP statute potentially applies with the question of whether
17              an opposing plaintiff has established a probability of success on the
                merits."
18

19   *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 969 (N.D. Cal. 2013)

20   (citations omitted), *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

21           Because all allegations against Feigelis are based on his Congressional testimony[4]—a

22   protected activity—causes of action I through VIII should be stricken. *See Strick v. Superior Ct.*,

23   ───────────────────────
     F.3d 150, 156-57 (2d Cir. 2006) (cited Opp. at 16) (testimony proffered in exchange for a guilty
24   plea was not incorporated into complaint by reference to the guilty plea; and court could not take
     judicial notice of another case's court filings because court filings in another case can only provide
25   "notice" that the other case existed).

26   [3] Loggins offers no support for his argument that some Stanford policy was violated and, in turn,
     such violative conduct must be treated as per se nonpublic. Opp. at 9. The Court should disregard
27   this baseless contention.

28   [4] *See* Opp. at 11 (in discussing whether Feigelis's statements arose from protected activity, Loggins
     argues that "the Court need not address the second prong of the anti-SLAPP analysis because
                                                    4

143 Cal. App. 3d 916, 924 (1983) (dismissing additional tort claims based on defamation where the tort claims were "inextricably linked to the entire contents of the [] communication"); *see also Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 890-92 (2019) (striking discrimination and retaliation claims because "for anti-SLAPP purposes[,] discrimination and retaliation claims arise from the [protected activity]"); *Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal. App. 5th 745, 766-68 (2019) (professor's allegation that university retaliated against him by making defamatory statements arose from protected activity under anti-SLAPP statute).

### B.   Feigelis Has Established That the Claims Meet the Second Prong of the Anti-SLAPP Statute

As to the second step of the anti-SLAPP analysis, Loggins fails to present legal support or evidence that there is a reasonable probability of success on each of his claims. *See* Opp. at 11-20; *see also Piping Rock Partners*, 946 F. Supp. 2d at 989 ("not only must the claims sufficiently state a claim for relief, but the plaintiff must also 'introduce substantial evidence of each element on which an ultimate verdict in [its] favor could be affirmed.'" (citation omitted)). Loggins also fails to demonstrate that Feigelis's many defenses are "not applicable to the case as a matter of law." *Birkner v. Lam*, 156 Cal. App. 4th 275, 285 (2007) (citation omitted). In fact, many are entirely ignored.

### 1.   Feigelis's Statements Are Subject to Absolute Privilege

Feigelis's statements are subject to an absolute privilege under Section 47(b) because they were made before a "legislative proceeding" or "other official proceeding authorized by law." Mot.

---

FEIGELIS has failed to prove that all Plaintiff's claims arise from protected activity"); Opp. at 3 ("FEIGELIS contributed to STANFORD's misconduct, including retaliation, and personally violated Plaintiff's rights . . . by circulating outright lies about Plaintiff"); Opp. at 4 ("FEIGELIS published this false mischaracterization with the purpose and intended effect of further retaliating and discriminating against Dr. Loggins."); Opp. at 5 ("FEIGELIS' publishing the testimony proximately harmed Plaintiff by negatively impacting his ability to return to and/or obtain professional employment. FEIGELIS' publishing the testimony and infographic referenced above has proximately harmed Plaintiff by causing persons in his chosen profession to form an unfavorable opinion of Plaintiff."); Opp. at 15 ("FEIGELIS published all defamatory statements of fact in the testimony he knew were false, unprivileged, and had a natural tendency to injure or which caused special damage." (citing Cal. Civ. Proc. Code §§ 45, 46.")).

at 10-11. Loggins fails to reference the statute in his Opposition—much less argue that it does not apply,[5] *see* Opp. at 11-16—and therefore, Loggins concedes its application. *See supra* Section II.[6]

Loggins's argument that Feigelis's testimony was false (it was not) or maliciously made (it was not) is not an exception to the privilege. Opp. at 12-15. "Absolute immunity attaches to statements made before a legislative body, and the existence of malice on the part of the declarant will not defeat the privilege [] when it is shown that the statement which is alleged to be defamatory bears some connection to the work of the legislative body." *Scott*, 37 Cal. App. 3d at 285; *see Passman v. Torkan*, 34 Cal. App. 4th 607, 614 (1995) (Section 47(b) applies "to *all* publications, irrespective of their maliciousness" (citation omitted)); *Patel*, 48 Cal. App. 5th at 490 (statements subject to the absolute privilege are protected "even if false").

Because the alleged statements are subject to absolute privilege, all of Loggins's causes of action are barred and Feigelis's anti-SLAPP motion to strike must be granted as to all claims. *See Laker*, 32 Cal. App. 5th at 769 (a "plaintiff cannot establish a probability of prevailing if the litigation privilege precludes [] liability on the claim" (citation omitted)); *see also Wilson*, 7 Cal. 5th at 890-92 (striking discrimination and retaliation claims because "for anti-SLAPP purposes[,] discrimination and retaliation claims arise from the [protected activity]").

---

[5] Rather, Loggins cites Sections 45 and 46 of the California Code of Civil Procedure, which are not subject to this Motion. Opp. at 15.

[6] In fact, Loggins acknowledges that the statements at issue were made before a legislative proceeding. *See* Opp. at 9, 14 (admitting that the allegedly defamatory statements "took place before a congressional panel," "during [a] bipartisan roundtable hosted by the House Committee on Education and the Workforce"). Section 47(b) designates as absolutely privileged statements made in any "legislative proceeding" or "other official proceeding authorized by law." And statements before a Congressional committee fall squarely within that section. *See e.g.*, *Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 13 (D.D.C. 2013) (testimony before Congress was within protection of anti-SLAPP statute), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015); *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 285-86 (1974) (statements during city council meeting were privileged because they were made in "connection with the work of the legislative body").

### 2. Loggins Cannot Demonstrate a Probability of Prevailing on His Defamation Claim

Even if absolute privilege protection did not apply, Loggins cannot establish a probability of prevailing on his defamation claim because he cannot show that Feigelis's statements were false or malicious.

Loggins cannot establish that Feigelis's statements were false. *See* Mot. at 11-12. Loggins must show that "each statement which [he] claim[s] is defamatory is, in fact, materially false in the context of the whole publication." *Shahid Buttar for Cong. Comm. v. Hearst Commc'ns, Inc.*, 2022 WL 1215307, at *5 (N.D. Cal. Apr. 25, 2022). Instead, Loggins summarily asserts that Stanford's report on its investigation into Loggins's conduct "simply proved the falsity" of the narrative. Opp. at 2. And Loggins's own Complaint corroborates Feigelis's statements. Mot. at 12 (citing FAC ¶¶ 62, 71).

Loggins further provides no legal support for his contention that "[f]ew statements are more defamatory than labeling someone a racist, let alone one of the most racist people employed on a university campus," Opp. at 15, and fails to address authorities stating otherwise. *See, e.g.*, Mot. at 13-14 (citing *Skidmore v. Gilbert*, 2022 WL 464177, at *9 (N.D. Cal. Feb. 15, 2022) ("a term like 'racist,' while 'exceptionally negative, insulting, and highly charged'—is not actionable under defamation-type claims" (citation omitted)), *appeal dismissed*, 2023 WL 2552349 (9th Cir. Feb. 8, 2023)). In its place, Loggins argues that because he denies many statements attributed to him, Feigelis's statement is a "mischaracterization as opposed to a protected opinion." Opp. at 15. This confounds the relevant argument. Calling someone a "racist" is "not actionable under defamation-type claims because it is a word that lacks precise meaning," *Skidmore*, 2022 WL 464177, at *9, regardless of whether Loggins denies the accusation.

Beyond falsity, Loggins must, but has failed to, "establish a reasonable probability that [he] can produce clear and convincing evidence showing that the statements were made with actual malice." Mot. at 12-13 (citing *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 563 (2012)).[7] Far

---

[7] Loggins must demonstrate malice because, among other things, he is a "limited public figure." Mot. at 12-13 (citing *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007)). Loggins fails to refute this argument, and therefore concedes it is indeed the case.

from producing "clear and convincing evidence," Loggins does not even mention Feigelis's arguments on malice, Mot. at 12-13, and thus concedes the argument altogether. *See supra* Section II.

Accordingly, Loggins's defamation claim—as well as his derivative discrimination and retaliation claims—should be stricken.[8]

## II.   Claims Which Loggins Fails to Defend Must Be Stricken and Dismissed

When a plaintiff fails to oppose a defendant's motion as to a specific claim or argument, it is "deemed his concession that the Complaint fails to state this claim." *Correa v. Whittier City Police Dep't*, 2023 WL 4409118, at *7 (C.D. Cal. Mar. 14, 2023), *R. & R. adopted*, 2023 WL 4406015 (C.D. Cal. July 7, 2023); *see Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (granting dismissal without leave to amend where plaintiff failed to respond to defendant's challenges of claims in its motion to dismiss, which was an "abandonment of those claims"); *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210, 1210 n.7 (N.D. Cal. 2013) (deeming argument conceded where opposing party failed to address it in opposition); *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1066 (E.D. Cal. 2022) ("Where a party fails to address arguments against a claim raised in a motion[,] the claims are abandoned and dismissal is appropriate." (citation omitted)). Loggins fails to respond to several of the Motion's arguments, including: Feigelis's immunity under Section 47(b)(1), Mot. at 10-11; Loggins's failure to satisfy Rule 8, Mot. at 14-16; the inapplicability of discrimination and retaliation claims to Feigelis under Labor Code § 98.6 and FEHA subsections (a), (h), and (k), Mot. at 16-18; or the Single Publication Rule, Mot. at 16. On this basis alone, these claims, which all rely on the same Congressional testimony, should be stricken, or, in the alternative, dismissed.

---

[8] Loggins's defamation claim against Feigelis should be dismissed under Rule 12(b)(6) for the same reasons.

8

III.    **In the Alternative, Loggins's Claims Against Feigelis Must be Dismissed Under Rule 12(b)(6)**[9]

A.    **Loggins Concedes Feigelis's Arguments Under Rule 8**

Missing from Loggins's Opposition is any response to the position that by "lump[ing] together" multiple defendants in "broad allegation[s]," the Complaint fails to satisfy the notice requirements under Rule 8. *See* Mot. at 14-15; *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("lump[ing] together" multiple defendants "in a single, broad allegation" fails to satisfy notice requirements of Rule 8). When given the opportunity to at least clarify his allegations against Feigelis, Loggins failed to do so. *See In re Sagent Tech., Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1093-94 (N.D. Cal. 2003) (broad allegations that fail to specify which individual defendants are responsible for what allegedly wrongful conduct are insufficient under Rule 8(a)).

Loggins does quite the opposite. Apparently confused by his own allegations against the collective and indistinct "Defendants," Loggins spends nearly three pages defending claims that he is not asserting against Feigelis. *Compare* Opp. at 18-20 (arguing for the application of Title VII), *with* Schwartz Decl., Ex. G (Plaintiff's counsel "confirm[s] that the Title VII claims [] are not asserted against Mr. Feigelis"). *See* Opp. at 17 (suggesting but not arguing liability for "aiding and abetting the plaintiff's employer's violation of FEHA," despite not pleading such a claim); Opp. at 18 (arguing harassment under FEHA subsection (j)(3), despite not pleading such a claim).

B.    **Loggins Concedes the Single Publication Rule's Application**

California Code of Civil Procedure § 3425.3—the "Single Publication Rule"—provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance[.]" In other words, a "plaintiff may have only one cause of action for one publication rather than multiple causes of action for torts[,] . . . civil rights violations, or fraud and deceit." *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 630 (2001). The Motion establishes that Loggins's multiple causes of action are based on the same allegations underlying Loggins's defamation claim. Mot. at 16.

---

[9] For the same reasons explained below that all claims against Feigelis should be dismissed pursuant to Rule 12(b)(6), they also establish that Loggins cannot demonstrate a probability of prevailing on his causes of action under the anti-SLAPP statute and should be stricken.

1   Loggins offers no response, much less a rebuttal, to the application of this rule, *see* Opp. at 17-20,

2   and thus concedes its application to these causes of action. *See infra* Section II.

3       **C.    Loggins Concedes That Feigelis Cannot Be Liable for Retaliation Under FEHA**

4       Subsections (a), (h), and (k) of FEHA—the bases of the second through fourth causes of

5   action—"like similar federal statutes, allow[] persons to sue and hold liable their employers, but

6   not individuals." *Reno v. Baird*, 18 Cal. 4th 640, 643 (1998); *see also Jones v. Lodge at Torrey*

7   *Pines P'ship*, 42 Cal. 4th 1158, 1173 (2008) ("nonemployer individuals are not personally liable

8   for their role in that retaliation"). Feigelis is not Loggins's employer, Mot. at 17, and Loggins does

9   not dispute this fact, Opp. at 3 (admitting that Feigelis is "a postdoctoral researcher at

10  STANFORD").[10]

11      Instead, Loggins introduces entirely new theories under FEHA subsection (j)(3)[11] and that

12  Feigelis supposedly aided and abetted Stanford's alleged FEHA breaches, Opp. at 17-18—neither

13  of which are alleged in the Complaint. A plaintiff, however, cannot "raise additional theories of

14  liability in an opposition to a motion to dismiss." *Henrietta Mine, LLC v. A.M. King Indus., Inc.*,

15  562 F. Supp. 3d 968, 973 (E.D. Cal. 2021) (citing *Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D.

16  Cal. 2009)).[12]

17  _____

18  [10] Loggins states that "[e]mployee supervisors are individually liable for acts of retaliation," Opp.
    at 18, but fails to point to any allegation that Feigelis was Loggins's supervisor. *See* Mot. at 16-17.

19  [11] The second cause of action is pled under "Cal. Gov. Code, § 12940, subd. (a)," FAC ¶¶ 196-205,
20  the third cause of action under "§ 12940, subd. (h)," FAC ¶¶ 206-13, and the fourth cause of action
    under "§ 12940, subd. (k)," FAC ¶¶ 214-21. Section 12940(j) is not mentioned let alone pled in the
    Complaint.

21  [12] Loggins cites *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138 (2021), for the proposition
22  that Feigelis can be liable under FEHA for "aiding and abetting" Stanford's FEHA violation. Opp.
    at 17. Loggins omits that *Smith*'s "aiding and abetting" language comes from FEHA subsection (i),
23  which Loggins does not plead in his Complaint or even cite in his Opposition. *See Green v. City &*
    *Cnty. of San Francisco*, 2021 WL 3810243, at *19 n.15 (N.D. Cal. Aug. 26, 2021) (dismissing
24  aiding and abetting claim because the single sentence in the complaint was insufficient to survive
    motion to dismiss), *aff'd*, 2023 WL 7211421 (9th Cir. Nov. 2, 2023). But even if Loggins had
25  properly alleged it in his Complaint, he does not—and could not reasonably—allege, among other
    things, that Feigelis gave Stanford "substantial assistance or encouragement" to violate FEHA (or
26  that he even knew of Stanford's refusal to renew Loggins's contract). *See Smith*, 64 Cal. App. 5th
    at 146 (citation omitted) (rejecting subsection (i) argument because the "FAC has no facts
27  suggesting concerted activity between [plaintiff's employer and the two defendants] to commit
    FEHA violations, which is the crux of an aiding abetting claim under FEHA.").

28

10

D.      **Loggins Concedes That Feigelis Cannot Be Liable Under the California Labor Code**

As explained in the Motion, Feigelis cannot be liable under California Labor Code § 98.6(a), the basis for Loggins's fifth of action, FAC ¶¶ 222-32. *See* Mot. at 17. Loggins does not dispute that Feigelis is not alleged to have had any authority or supervisory responsibility over Loggins. *See Lobo v. Air-India Ltd.*, 2021 WL 254312, at *1, *5-6, *5 n.7 (N.D. Cal. Jan. 26, 2021) (dismissing Labor Code claims where "no facts alleged" that defendant "could plausibly be considered an individual with corporate policy-making authority"). Again, because Loggins does not address these arguments (or mention Labor Code § 98.6(a) at all), *see* Opp. at 18-20, the fifth cause of action for retaliation should be dismissed.

E.      **Loggins's Discrimination Claim Under Section 1981 Fails as a Matter of Law**

To establish a claim under 42 U.S.C. § 1981 ("Section 1981"), Loggins must, but failed to, plead that he: "(1) is a member of a protected class; (2) attempted to contract for certain services; (3) was denied the right to contract for those services; and (4) was deprived of those services while similarly situated persons outside the protected class were not, or received services in a hostile manner that is objectively discriminatory." *Bearden v. Alameda Cnty.*, 2020 WL 3791645, at *3 (N.D. Cal. July 7, 2020) (citation omitted), *aff'd sub nom. Bearden v. Cnty. of Alameda*, 2021 WL 4891982 (9th Cir. Oct. 20, 2021). As a result, allegations of defamation alone do not establish a cause of action under Section 1981, *see* Mot. at 18, which Loggins does not dispute is fatal to his Section 1981 claim, *see* Opp. at 17-20.

In addition, neither the Complaint nor the Opposition mention an actual or prospective contract with Feigelis, or how Feigelis (a student) would have had any authority over that contract. *See* Mot. at 17-18. Loggins only puts forward "a contractual relationship of employment between plaintiff and Stanford[.]" Opp. at 18. However, "[n]on-supervisory co-workers . . . cannot be subject to liability for an adverse employment action under Section 1981." *Guy v. City of Phoenix*, 668 F. Supp. 1342, 1352 (D. Ariz. 1987).

Similarly unavailing is Loggins's argument as to causation. Loggins claims, without citation, that the "evidence is clear that, but for his protected characteristics, including his race and color, Plaintiff would not have been subjected to this misconduct, or these pretextual allegations,

11

1    which undoubtedly contributed to the hostile work environment and his pretextual wrongful

2    termination." Opp. at 18. But Loggins must adequately plead (he does not) and ultimately prove

3    (he cannot) "that, but for race, [he] would not have suffered the loss of a legally protected right."

4    *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). There is

5    nothing—not even an allegation—suggesting that Feigelis took any action against Loggins because

6    of his <u>race</u>. Mot. at 18 (citing FAC ¶ 152 ("Feigelis published the testimony . . . because Plaintiff

7    had expressed opinions critical of the Israeli government.")).[13]

8    **IV.    Loggins Should not Be Granted Leave to Amend His Complaint nor Take Discovery
9           Before the Court Rules on the Instant Motion**

10           Loggins argues that he should be permitted to amend his Complaint under Rule 15(a). Opp.

11   at 20-22. Given Loggins's failure to even address legal arguments put forward in the Motion, and

12   outright abandonment of certain claims, amendment would be futile. While Loggins does not

13   describe the specific amendments he seeks, there are no facts which he could add to or remove from

14   his Complaint that would change dispositive facts, such as Feigelis not being Loggins's employer

15   or supervisor, or controlling law such as Feigelis's testimony being protected and absolutely

16   privileged. *See* Mot. at 7; *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 760-61 (N.D. Cal.

17   2022) (plaintiff did "not describe the amendments he propose[d]," but "even if he had, the Court is

18   not persuaded that [plaintiff] could make any amendments that would remedy the critical

19   deficiency . . . —i.e., that the challenged statements are not actionable as false statements of

20   objective fact"), *appeal dismissed*, 2023 WL 3434064 (9th Cir. Mar. 1, 2023). As in *Stossel*, this

21   Court "not only [has] the allegations of the complaint, but also the [testimony] in question and the

22   entirety of the challenged statements," and "no additional allegations could alter the nature of the

23   underlying statements challenged as defamatory." 634 F. Supp. 3d at 760-61; *see also Pappy's*

24   *Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) (denying leave

---

[13] Loggins confusingly intersperses arguments about standards that supposedly apply to claims against "employers"—which Feigelis is not. *See* Opp. at 19 ("It is well established that the causation element of a retaliation claim can be inferred from circumstantial evidence such as the <u>employer's knowledge</u> of the protected activities[.]" (emphasis added)). The Court should disregard these arguments.

1   to amend because "[n]o amount of artful pleading by Plaintiffs can state a plausible claim" under

2   their insurance policy).

3          Loggins also improperly seeks to convert Feigelis's legal challenge under § 425.16(e) and

4   Rule 12(b)(6) into a factual challenge under Rule 56(d), requesting that he be allowed to take

5   discovery before the Court rules on the instant Motion. *See* Opp. at 21-22. Loggins is essentially

6   "attempting to blur these two categories by implanting the procedural requirements of Rule 56 into

7   a Rule 12(b)(6) analysis." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021).

8   But where the challenge is purely legal in nature, which, as Loggins acknowledges, is the case here*,

9   see* Opp. at 17 ("anti-SLAPP challenges, like this one, are purely legal in nature"), they "are

10  analyzed pursuant to Rule 12; [and] the latter are analyzed pursuant to Rule 56."[14] *Herring

11  Networks*, 8 F.4th at 1156 (citation omitted). Using evidence beyond the pleadings to defend against

12  a <u>legal</u> challenge in the anti-SLAPP context is thus improper. *Id.* at 1156 n.1 ("If we permitted

13  plaintiffs to present evidence in defense of all anti-SLAPP motions, then every anti-SLAPP motion

14  would necessarily become a motion for summary judgment. This would effectively negate the

15  purpose of anti-SLAPP motions, which is to remedy the problem of SLAPP suits through 'the

16  prompt exposure, dismissal, and discouragement of [further] suits.'" (citation omitted)). Loggins is

17  not entitled to discovery in order to defend against the instant motion.

18  **V.     Feigelis Is Entitled to His Attorney's Fees**

19         In an effort to avoid paying Feigelis's attorney's fees, Loggins requests that this Court first

20  decide Feigelis's motion to dismiss—*i.e.*, that the Court should grant Feigelis's Rule 12(b)(6)

21  motion to dismiss and deny as moot Feigelis's anti-SLAPP motion. Opp. at 17. Loggins cannot

22  avoid the consequences of his frivolous and costly claims. "Because the award of attorney's fees

23  under [§ 425.16(c)(1)] is mandatory, 'the trial court must, upon defendant's motion for a fee award,

---

14  Loggins's argument that the anti-SLAPP statute's "discovery-limiting provisions" conflict with the federal rules, Opp. at 21-22, relies on cases that pre-date the Ninth Circuit's decision in *Planned Parenthood*, which found no conflict, and outlined the process to evaluate evidence proffered on anti-SLAPP motions. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."), *amended*, 897 F.3d 1224 (9th Cir. 2018).

rule on the merits of the SLAPP motion' even if the matter was dismissed before reaching said merits." *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 218-19 (2002). The cases Plaintiff cites for his improper request are inapposite. *See, e.g.*, *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*, 2018 WL 6018504, at *1, *17-18 (S.D. Cal. Nov. 16, 2018) (cited Opp. at 17) (granting Rule 12(b)(6) motion to dismiss and denying as moot the Section 425.16 motion to strike which was only argued in the alternative); *Mack v. Cal. Dep't of Corr. & Rehab.*, 2016 WL 4000128, at *10-11 (E.D. Cal. July 25, 2016) (cited Opp. at 17) (denying as moot special motion to strike because court already determined that res judicata barred plaintiff's claims, with no discussion of attorney's fees), *aff'd as modified*, 760 F. App'x 846 (9th Cir. 2019).

The statutory mandate is simple: Feigelis "<u>shall</u> be entitled to recover [his] attorney's fees and costs" if this Court grants his special motion to strike. *See* Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); *see also Verizon Del., Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (citations omitted) (a party "sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail").[15]

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion, Feigelis respectfully requests that the Court strike all of Loggins's causes of action with prejudice. In the alternative, Feigelis requests that the Court dismiss Loggins's causes of action with prejudice.

---

[15] Loggins audaciously argues that it is he who is entitled to attorney's fees, but neglects to show that the Motion was "frivolous or [] solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c)(1). Loggins makes no such showing; nor can he in light of the many cases and arguments he ignores and claims he abandons.

14

1    Dated: July 26, 2024                    Respectfully submitted,

2

3                                            By:  */s/ Andrew L. Schwartz*
                                                  Andrew L. Schwartz (admitted *pro hac vice*)
4                                                 Joshua E. Roberts (admitted *pro hac vice*)
                                                  Lea Dartevelle (admitted *pro hac vice*)
5                                                 KASOWITZ BENSON TORRES LLP
                                                  1633 Broadway
6                                                 New York, New York 10019
                                                  Tel.: (212) 506-1700
7                                                 Fax: (212) 506-1800
                                                  aschwartz@kasowitz.com
8                                                 jroberts@kasowitz.com
                                                  ldartevelle@kasowitz.com
9

10                                                Jason S. Takenouchi (CBN 234835)
                                                  KASOWITZ BENSON TORRES LLP
11                                                101 California Street, Suite 3950
                                                  San Francisco, California 94111
12                                                Tel.: (415) 421-6140
                                                  Fax: (415) 398-5030
13                                                jtakenouchi@kasowitz.com

14
                                                  *Attorneys for Defendant Kevin Feigelis*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

15