# KASOWITZ BENSON TORRES LLP

|  |  |  |
|---|---|---|
| Joshua E. Roberts<br>Direct Dial: (212) 506-1929<br>Direct Fax: (212) 500-3506<br>JRoberts@kasowitz.com | 1633 BROADWAY<br>NEW YORK, NEW YORK 10019<br>(212) 506-1700<br>Fax: (212) 506-1800 | Atlanta<br>Houston<br>Los Angeles<br>Miami<br>Newark<br>San Francisco<br>Silicon Valley<br>Washington DC |

August 20, 2024

**VIA ECF**

Hon. Jacqueline Scott Corley
United States District Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Corley:

      We represent Defendant Kevin Feigelis and write in response to Plaintiff Ameer Loggins's August 16, 2024 letter, Dkt. 69, which confirms that granting Plaintiff leave to amend would be futile. The Court should grant Feigelis's motion to strike in full. *See* Dkts. 57, 64.[1]

      As explained in his motion, and as observed by the Court at the August 15, 2024 hearing, Feigelis's testimony to Congress—the basis of Plaintiff's claims against Feigelis—is absolutely privileged under California law. Dkt. 57 at 7-8, 10-11; Dkt. 70 at 26:15-18. At the hearing, Plaintiff's counsel could not argue otherwise and instead, requested leave to replead the defamation claim under District of Columbia law, which he claimed does not protect written testimony before Congress. *See* Dkt. 70 at 35:2-12. The Court granted Plaintiff the opportunity to provide such a case. Dkt. 67. Plaintiff's singular citation to dicta contained in a footnote in *Webster v. Sun Co.*, 731 F.2d 1 (D.C. Cir. 1984) ("*Webster I*") falls far short.

      As an initial matter, much like California, Congressional testimony is privileged in the District of Columbia. *See, e.g.*, *Banks v. Kramer*, 603 F. Supp. 2d 3, 11 (D.D.C. 2009) (citing *Webster v. Sun Co.*, 790 F.2d 157, 160 n. 2 (D.C. Cir. 1986) ("*Webster II*") ("Congressional

---

[1] Plaintiff does not dispute that California Code of Civil Procedure § 425.16 applies regardless of whether California or District of Columbia defamation law is at issue. *See Woulfe v. Universal City Studios LLC*, 2022 WL 18216089, at *4 (C.D. Cal. Dec. 20, 2022), *reconsideration denied*, 2023 WL 3321752 (C.D. Cal. Mar. 9, 2023) (applying California's anti-SLAPP statute to other state substantive causes of action); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1000 (N.D. Cal. 2015) ("the Court agrees with the Second Circuit and holds that California's anti-SLAPP law can be applied to Real Action's counterclaims brought pursuant to Indiana law").

K ASOWITZ  B ENSON  T ORRES LLP

Hon. Jacqueline Scott Corley
August 20, 2024
Page 2

testimony, if related to the Congressional proceeding, is absolutely privileged against defamation suits.")). As explained in *Webster I*, this protection extends to both oral and written testimony. *See Webster I*, 731 F.2d at 4 ("A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." (quoting Restatement (Second) of Torts § 590 (1977)). Indeed, "[i]n order for a democratic government to govern democratically . . . individual[s] must feel unrestrained by potential defamation liability when addressing the legislature. Only then can the lawmaking process be fully informed and operate with maximum effectiveness." *Id.* at 4-5.

Plaintiff ignores this basic principle and argues that "defamatory statements that are made to Congress are actionable when those statements are republished by Congress in its Congressional record." Dkt. 69. But *Webster I* (or District of Columbia law) says no such thing. And subsequent history of *Webster I*, which Plaintiff's letter omits, also reaffirms and declines to weaken "the common law privilege traditionally afforded to communications to the legislature" under District of Columbia law. *Webster II*, 790 F.2d at 162.[2]

In *Webster I*, the D.C. Circuit vacated the district court's original grant of summary judgment to defendants because "[t]he district court did not consider whether the disputed memorandum would have been sent to the [Congressional Research Service] but for [defendant's] intent to inform the Congressional Research Service] on a subject properly within its jurisdiction." 731 F.2d at 6-7. After expressly "limit[ing] [its] definition of privilege in this case to <u>the context of unsolicited statements made to the legislature</u> or its investigative arm," the court also noted, in a footnote (that Plaintiff relies on), that "[t]his privilege insulates statements made only to the legislature or its investigative arm. Publication to individuals not associated with the legislature and republication by the legislator are not covered by this privilege." *Id.* at 5, 5 n.9.

This footnote is inapplicable to the instant case. At Congress's request, Feigelis provided both oral and written testimony about antisemitism on campus. Plaintiff does not allege that Feigelis's testimony was unsolicited (nor could he), made outside of an official proceeding, nor is Plaintiff suing a congressperson for "republication" of Feigelis' testimony.

Plaintiff cites no case in which this *Webster I* footnote has ever been used to create individual liability for defamation based on written testimony provided to Congress that is published in the Congressional Record, as Plaintiff advocates here. This makes sense given that legislative proceedings are memorialized and recorded in the Congressional Record. *See* 44 U.S.C. § 903. If Congress's publication of written testimony (or oral testimony for that matter)

---

[2] In *Webster II*, the D.C. Circuit affirmed an order dismissing claims for defamation where a written memorandum provided to an employee of the Congressional Research Service was deemed absolutely privileged. *Id.* at 159.

KASOWITZ BENSON TORRES LLP

Hon. Jacqueline Scott Corley
August 20, 2024
Page 3

vitiated the speaker's privilege, no one would—as *Webster I* emphasized—"feel unrestrained by potential defamation liability when addressing the legislature." *Id.* at 4-5.

But even if Feigelis's statements are not absolutely privileged under District of Columbia law—and they are—Plaintiff has not established a reasonable probability that he could prevail on a defamation claim. Plaintiff has not—and cannot—sufficiently allege, among other things, that the statements were made with actual malice or "knowledge that it was false or with reckless disregard of whether it was false or not." *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 646 (D.C. 2023) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280, 285-86 (1964)); *see, e.g.*, Dkt. 57 at 11–13; Dkt. 64 at 7-8.[3]

Lastly, Plaintiff's discrimination and retaliation causes of action as they pertain to Feigelis are still subject to an absolute privilege under California Civil Code § 47(b). "This privilege affords absolute immunity against tort liability arising out of such a communication, regardless of attempts by the plaintiff to plead around this absolute barrier. Thus, the immunity applies regardless of the particular label given to the cause of action[.]" *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1152 (C.D. Cal. 2001) (citations omitted); *accord Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010) ("The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution.").[4] Thus, Plaintiff's discrimination and retaliation causes of action must also be stricken.

No amendment can save Plaintiff's claims from Feigelis's motion to strike, which should be granted in full with prejudice.

We thank Your Honor for your time and attention to this matter.

Sincerely,

*/s/ Joshua E. Roberts*

Joshua E. Roberts

cc:   All counsel of record

---

[3] As the District of Columbia Court of Appeals explains, "this is a significantly more demanding standard than negligence: 'Knowledge' means the defendant 'actually knew that the statement was false,' a state of mind we have referred to as 'subjective knowledge.' 'Reckless disregard' does not require such actual knowledge, but it requires a showing that the defendant in fact entertained serious doubts as to the truth of [the] publication.'" *Salem Media Grp.*, 301 A.3d at 646.

[4] These claims must also be stricken for the reasons explained in Mr. Feigelis's motion papers. *See* Dkts. 57, 64.