1

2

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMEER HASAN LOGGINS, | Case No.  24-cv-02027-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS' MOTIONS TO DISMISS AND ANTI-SLAPP MOTIONS TO STRIKE** |
| LELAND STANFORD JUNIOR UNIVERSITY, et al., | Re: Dkt. Nos. 30, 57 |
| Defendants. | |

Ameer Hasan Loggins (Dr. Loggins), a former lecturer at Stanford University, sues Defendants for claims arising from Stanford's investigation into Dr. Loggins's class sessions, suspension of Dr. Loggins pending Stanford's investigation, and decision not to extend Dr. Loggins's teaching contract.  (Dkt. No. 7.)[1]  Before the Court are Defendants' motions to dismiss and anti-SLAPP motions to strike.  (Dkt. Nos. 30, 57.)  Having carefully considered the briefing, and with the benefit of oral argument on August 15, 2024, the Court GRANTS Defendants' motions to dismiss and strike.

Dr. Loggins's first, second, fourth, and sixth causes of action against Stanford are DISMISSED with leave to amend because Dr. Loggins fails to allege facts sufficient to support the inference Dr. Loggins's protected characteristics caused or motivated any alleged adverse employment action.  Dr. Loggins's third, fifth, and seventh causes of action against Stanford are DISMISSED with leave to amend because Dr. Loggins fails to identify a protected activity underlying his suspension and fails to plausibly plead causation as to Stanford's refusal to extend his teaching contract.  Dr. Loggins's second, third, fourth, sixth, and seventh causes of action

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1    against the individual Stanford administrators are DISMISSED without leave to amend because

2    Dr. Loggins may not sue individual employees under Title VII or for discrimination, retaliation, or

3    failure to prevent discrimination under California's FEHA.  The same claims against Defendant

4    Feigelis are STRICKEN without leave to amend for the same reason.

5         Dr. Loggins's first cause of action against Defendant Feigelis is STRICKEN without leave

6    to amend because Dr. Loggins cannot plausibly allege an actual or proposed contractual

7    relationship with Defendant Feigelis.  His fifth cause of action against Defendant Feigelis is

8    STRICKEN without leave to amend because Dr. Loggins cannot plausibly allege Defendant

9    Feigelis took any adverse employment action against Plaintiff in violation of California Labor

10   Code § 98.6(a).

11        Finally, Dr. Loggins's eighth cause of action against all Defendants is STRICKEN without

12   leave to amend because the alleged statement underlying Dr. Loggins's defamation claim is

13   absolutely privileged under the laws of California and the District of Columbia, so Dr. Loggins

14   has no probability of prevailing.

15                               **BACKGROUND**

16        Dr. Loggins is a "black, African American, Muslim male[.]"  (Dkt. No. 7 ¶ 7.)  He earned

17   his doctorate degree from the University of California at Berkeley in 2019.  (*Id.*)  Stanford hired

18   him as a lecturer in August 2023.  (*Id.* ¶ 50.)

19        On October 10, 2023, Dr. Loggins led two Stanford class discussions on settler colonialism

20   and sought "to have a difficult dialogue" about "dehumanization, Israel, and Palestine."  (*Id.* ¶¶

21   62, 63.)  He "wanted the focus to be on the Palestinian civilians.  [Dr. Loggins] also wanted to

22   complicate the ways in which many frame the Israel and Palestine 'conflict,' which is through the

23   frame of Jewish people vs. Muslim people."  (*Id.* ¶ 70.)  So, Dr. Loggins "asked whether any

24   Jewish students were present in the classroom, in an effort to speak to the diversity within the

25   Jewish diaspora and to demonstrate to the students that the Jewish diaspora is not one with a

26   monolithic politic."  (*Id.* ¶ 71.)  Dr. Loggins then led an "exercise to create a scene within a

27   scripted space" wherein he selected two students "(one white/Jewish male and one woman of

28   Asian descent)" in each class section based on their seat and "physical size to illustrate a power

2

differential between the large and the small, the oppressed and the oppressor." (*Id*. ¶¶ 88-90.) After the selected students agreed to participate in the exercise, Dr. Loggins took their backpacks and computers and directed them to stand facing the classroom window. (*Id*. ¶¶ 91-92.) Dr. Loggins told the participating students they could come from facing the window if they could produce identification. (*Id*. ¶ 93.) The purpose of the exercise was to illustrate "profiling and policing within a scripted space." (*Id*. ¶ 94.) Dr. Loggins asserts Gaza "is an extreme version of a scripted space." (*Id*. ¶ 95.)

The next day, Defendants Professor Dan Edelstein, Human Resources Director Elizabeth Soroka, and Professor Parna Sengupta accused Dr. Loggins of antisemitism based on the classroom discussions. (*Id*. ¶ 101.) Defendants Edelstein, Soroka and Sengupta launched an investigation into Dr. Loggins's conduct and suspended him with pay with Stanford's approval. (*Id*. ¶¶ 102, 106.) The same day, Defendants then-President Richard Saller and Provost Jenny Martinez released a statement publicizing Stanford's investigation and suspension of Dr. Loggins, though the statement did not identify Dr. Loggins by name. (*Id*. ¶¶ 112, 114-15.)

On March 1, 2024, Defendant Feigelis, a post-doctoral researcher at Stanford, identified Dr. Loggins as one of Stanford's "most racist faculty member[s]" when speaking at a roundtable hosted by the U.S. House of Representatives' Committee on Education and the Workforce. (*Id*. ¶¶ 12, 140.) During the roundtable, Defendant Feigelis published an image claiming Dr. Loggins segregated and publicly shamed Jewish students in his classroom, among other things. (*Id*. ¶ 147.)

On March 25, 2024, Stanford reported their investigation into Dr. Loggins's classroom discussions "did not support a finding that [Dr. Loggins] intentionally or objectively discriminated against any of the students." (*Id*. ¶ 164.) Despite the conclusion of Stanford's investigation, Stanford and Defendant Professor and Senior Associate Dean R. Lanier Anderson declined to extend Dr. Loggins's employment contract. (*Id*. ¶ 165.)

Dr. Loggins brings eight causes of action against Defendants: (1) racial discrimination under 42 U.S.C. § 1981, (2) discrimination under California's Fair Employment and Housing Act (FEHA), (3) retaliation under FEHA, (4) failure to prevent FEHA violations, (5) retaliation in violation of California Labor Code § 98.6, (6) discrimination in violation of Title VII, (7)

United States District Court
Northern District of California

1    retaliation in violation of Title VII, and (8) defamation.  Each cause of action appears to be alleged

2    against all Defendants.

3        Defendants Stanford, Anderson, Edelstein, Sengupta, Soroka, Martinez, and Saller (the

4    Stanford defendants) move to dismiss Dr. Loggins' first through seventh causes of action for

5    failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to

6    strike Dr. Loggins' eighth cause of action pursuant to California Code of Civil Procedure §

7    425.16.  (Dkt. No. 30.)  Defendant Feigelis separately moves to strike Dr. Loggins's claims

8    against him pursuant to § 425.16, or, in the alternative, to dismiss the complaint under Rule

9    12(b)(6).  (Dkt. No. 57.)

10                                          **DISCUSSION**

11   **I.    Stanford Defendants' Motion to Dismiss**

12        Dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory

13   or the absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside*

14   *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up).  For Dr. Loggins's challenged

15   claims to survive, the complaint's factual allegations must raise a plausible right to relief.  *Bell Atl.*

16   *Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).  Though the Court must accept the complaint's

17   factual allegations as true, conclusory assertions are insufficient to state a claim.  *Ashcroft v. Iqbal*,

18   556 U.S. 662, 678 (2009).  A claim is facially plausible when the plaintiff pleads enough factual

19   content to justify the reasonable inference the defendant is liable for the misconduct alleged.  *Id.*

20   **A.  Title VII and FEHA Claims as to Individual Defendants**

21        As a threshold matter, Dr. Loggins may not sue individual supervisory employees under

22   Title VII or for discrimination, retaliation, or failure to prevent discrimination under FEHA.

23   *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (ruling there is no individual

24   liability under Title VII); *Reno v. Baird*, 18 Cal. 4th 640, 643 (1998) ("We conclude that the

25   FEHA, like similar federal statutes, allows persons to sue and hold liable their employers, but not

26   individuals."); *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1160, 1173 (2008) (ruling

27   nonemployer individuals are not personally liable under FEHA for retaliation); *see also Kovalenko*

28   *v. Kirkland & Ellis LLP*, No. 22-CV-05990-HSG, 2023 WL 5444728, at *6 (N.D. Cal. Aug. 23,

1    2023) ("The Ninth Circuit has held that Title VII does not allow for individual liability. . . . FEHA

2    similarly does not allow for individual liability for discrimination, retaliation, or failure to prevent

3    violations.").  Accordingly, Dr. Loggins's second, third, fourth, sixth, and seventh causes of action

4    against the individual defendants are DISMISSED without leave to amend.

5        **B. Discrimination (First (Section 1981), Second (FEHA), Fourth (FEHA), and Sixth**

6           **(Title VII) Causes of Action)**

7        Dr. Loggins accuses Stanford of racial discrimination under 42 U.S.C. § 1981,

8    discrimination in violation of Title VII, discrimination under California Government Code §

9    12940(a), and failure to prevent discrimination under § 12940(k).  Dr. Loggins also pleads his §

10   1981 claim against individual Stanford Defendants Anderson, Edelstein, Martinez, Saller, and

11   Sengupta.  Stanford moves to dismiss Dr. Loggins's discrimination claims on the grounds Dr.

12   Loggins fails to plausibly plead Dr. Loggins's protected characteristics caused any alleged adverse

13   employment action.

14       **1. Legal Standard**

15       To state a § 1981 claim for racial discrimination, a plaintiff must plausibly plead "but for

16   race, [they] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l*

17   *Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

18              If the defendant would have responded the same way to the plaintiff
             even if he had been white, an ordinary speaker of English would say
19           that the plaintiff received the "same" legally protected right as a white
             person.   Conversely, if the defendant would have responded
20           differently but for the plaintiff's race, it follows that the plaintiff has
             not received the same right as a white person.
21

22   *Id.* at 333.

23       Similarly, to plead discrimination under Title VII, a plaintiff must allege the defendant

24   "had a discriminatory intent or motive for taking a job-related action. . . . [L]iability depends on

25   whether the protected trait actually motivated the employer's decision."  *Wood v. City of San*

26   *Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (cleaned up).  However, unlike under § 1981, an

27   employee alleging status-based discrimination under Title VII need only show "the motive to

28   discriminate was one of the employer's motives, even if the employer also had other, lawful

United States District Court
Northern District of California

motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("So-called but-for causation is not the test."). The Court otherwise applies the same legal principles to § 1981 and Title VII disparate treatment claims. *Buhagiar v. Wells Fargo Bank, N.A.*, No. 22-16232, 2024 WL 2931427, at *2 (9th Cir. June 11, 2024) ("When analyzing § 1981 claims, we apply the same legal principles as those applicable in a Title VII disparate treatment case."); *see also Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case.").

"Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). So, Dr. Loggins's FEHA discrimination claim requires Dr. Loggins allege his protected characteristics motivated Defendants' adverse employment actions. Cal. Gov't Code § 12940(a). To do so, he must allege:

> (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Id*. at 355. Dr. Loggins's FEHA claim for failure to prevent discrimination "is essentially derivative of" his FEHA discrimination claim, and thus his fourth cause of action survives only if his second cause of action is sufficiently alleged. *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015); *see Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998), *as modified* (May 12, 1998) ("Employers should not be held liable to employees for failure to take necessary steps to prevent [discrimination], except where [discrimination] took place and w[as] not prevented.").

### 2. Analysis

Dr. Loggins alleges Stanford would not have investigated his class sessions, suspended him, publicly announced its investigation and his suspension, or refused to extend his contract "[b]ut for the fact that [Dr. Loggins] [is] black, Muslim and spoke out against Israeli policies that violated the Geneva Convention[.]" (Dkt. No. 7 ¶¶ 102, 106, 112, 115, 164-65, 171.) Stanford

1    moves to dismiss on the grounds Dr. Loggins fails to allege facts sufficient to support an inference

2    his race, color, or religion motivated or caused Stanford's investigation, suspension, public

3    announcement, or refusal to extend Dr. Loggins's contract.

4             Dr. Loggins insists Defendants' alleged adverse employment actions are "clearly

5    discriminatory" because Defendants did not investigate, suspend, or issue a public statement

6    regarding Stanford Law School Professor Bankman for his alleged involvement in defrauding

7    FTX.  (Dkt. Nos. 7 ¶¶ 118-25; 56 at 20.)  Stanford refused to speak about Professor Bankman to

8    the media, saying "as a matter of policy, Stanford University and the law school do not take

9    positions on the outside activities of our individual faculty members, nor do we discuss personnel

10   issues or other confidential matters."  (*Id*. ¶ 127.)  Despite Stanford's statement that it does not

11   discuss personnel issues, Stanford publicly announced on October 11, 2023, an unidentified

12   instructor was suspended from teaching pending investigation into the instructor's complained-

13   about class sessions.  (*Id*. ¶¶ 112, 114-15.)  This disparate treatment, Dr. Loggins argues, supports

14   a reasonable inference Stanford's conduct toward him was motivated by his race or religion.

15            For Stanford's alleged treatment of Professor Bankman to support the inference Dr.

16   Loggins' race or religion motivated (or served as the but-for cause of) Stanford's investigation,

17   suspension, public announcement, or refusal to extend Dr. Loggins's contract, Dr. Loggins must

18   allege facts permitting the inference he and Professor Bankman are "similarly situated."  *Vasquez*

19   *v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004); *see also*

20   *Takieh v. Banner Health*, No. 21-15326, 2022 WL 474170, at *2 (9th Cir. Feb. 16, 2022), *cert.*

21   *denied*, 143 S. Ct. 117 (2022) (affirming dismissal of § 1981 racial discrimination claim because

22   allegations regarding disparate treatment failed to support the inference the plaintiff's colleagues

23   were similarly situated).  "[I]ndividuals are similarly situated when they have similar jobs and

24   display similar conduct."  *Vasquez*, 349 F.3d at 641.

25            Dr. Loggins's factual allegations fail to support the inference he and Professor Bankman

26   displayed similar conduct.  As alleged, FTX sued Professor Bankman for engaging in fraudulent

27   conduct, including "fund[ing] an all-expenses paid trip for a [Stanford] law student to attend a

28   Formula One event in France" and donating FTX money to Stanford.  (Dkt. No. 7 ¶¶ 120, 122.)  In

United States District Court
Northern District of California

contrast, Dr. Loggins alleges he faced adverse employment actions based on his identity-based treatment of students in two class sessions.  Professor Bankman is accused of fraud for his involvement with FTX; whereas Dr. Loggins was investigated and suspended for his conduct as a Stanford instructor inside a Stanford classroom.  So, Dr. Loggins's allegations as to Stanford's disparate treatment of him as compared to Professor Bankman fail to support the reasonable inference Defendants would not have investigated, suspended, released a public statement regarding, or refused the contract extension of Dr. Loggins but for his protected characteristics, as required by § 1981, because Dr. Loggins and Professor Bankman are not "similarly situated." *Vasquez*, 349 F.3d at 641.  For the same reason, these comparative allegations also fail to support the inference Dr. Loggins's protected characteristics motivated Defendants' acts, as required by Title VII and FEHA.  *See id.* (ruling a plaintiff's Title VII discrimination claim failed because the plaintiff failed to show similarly situated employees outside the plaintiff's protected class were treated more favorably); *see also Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844 (9th Cir. Feb. 2, 2022) (dismissing both Title VII and FEHA discrimination claims for failure to allege facts sufficient to support the inference the plaintiff was terminated due to her protected characteristics).

Accordingly, Dr. Loggins's first, second, fourth, and sixth causes of action are DISMISSED with leave to amend.

## C.   Retaliation (Third (FEHA), Fifth (Labor Code § 98.6), and Seventh (Title VII) Causes of Action)

Dr. Loggins accuses Stanford of retaliation in violation of California Labor Code § 98.6, FEHA, and Title VII, alleging Stanford suspended him and declined to extend his contract in retaliation for his objections to Stanford's investigation into his class sessions and his retention of counsel.  (Dkt. Nos. 7 ¶¶ 105-07, 136, 165; 56 at 23.)

To plausibly plead a Title VII retaliation claim, Dr. Loggins must allege "(1) involvement in protected activity, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action."  *Albro v. Spencer*, 854 F. App'x 169, 170 (9th Cir. 2021) (quoting *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006)).  "Title VII retaliation claims

must be proved according to traditional principles of but-for causation," so Dr. Loggins must plausibly plead "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.  "The requisites for proving an unlawful retaliation case under FEHA [are] the same as for Title VII." *Tarin v. Cnty. of Los Angeles*, 123 F.3d 1259, 1264 n.4 (9th Cir. 1997), *superseded by statute on other grounds as stated in Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 n.2 (9th Cir. 2002) (citing *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 475-76 (1992), *reh'g denied and opinion modified* (Mar. 5, 1992)).  However, unlike Title VII, FEHA retaliation does not require but-for causation; instead, the plaintiff must show his protected conduct was a "substantial motivating factor" in the adverse employment decision.  *See, e.g.*, *Schlitt v. Abercrombie & Fitch Stores, Inc.*, No. 15-CV-01369-WHO, 2016 WL 2902233, at *12 (N.D. Cal. May 13, 2016) ("[I]n contrast with retaliation claims under Title VII, the requisite causal link for retaliation claims under FEHA is not but-for causation, but rather a substantial motivating factor." (cleaned up)); *Alamo v. Prac. Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 469-70 (2013) ("[T]he proper standard of causation in a FEHA discrimination or retaliation claim is not 'a motivating reason,' as used in the CACI instructions, but rather 'a substantial motivating' reason[.]").

As to the suspension, Stanford contends Dr. Loggins fails to identify a protected activity. As to the refusal to extend Dr. Loggins's teaching contract, Stanford urges Dr. Loggins fails to plausibly plead causation.

### 1.  Suspension

Stanford suspended Dr. Loggins pending its investigation into his class sessions based on reports he had "target[ed] individual students based on their religious or national identity[.]"  (Dkt. No. 7 ¶¶ 101, 164, 168.)  After Stanford notified Dr. Loggins of its investigation, Dr. Loggins alleges he "vehemently object[ed] to" the investigation.  (*Id.* ¶ 105.)  Additionally, he retained a law firm on October 24, 2023.  (*Id.* ¶ 136.)

To plead involvement in a protected activity under Title VII, Dr. Loggins must allege he "opposed any practice made an unlawful employment practice by [Title VII], or [] he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

9

United States District Court
Northern District of California

1  under [Title VII]." 42 U.S.C. § 2000e-3(a).  Similarly, FEHA requires Dr. Loggins allege he

2  "opposed any practices forbidden under [FEHA] or [ . . .] has filed a complaint, testified, or

3  assisted in any proceeding under [FEHA]."  Cal. Gov't Code § 12940(h).  For the purposes of Dr.

4  Loggins's § 98.6 claim, he must allege he was suspended for "exercis[ing] a right protected *by the*

5  *Labor Code.*"  *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 87 (2004) (emphasis in

6  original); *see also Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 969 (N.D. Cal. 2010)

7  ("Protected activity that would support a Labor Code violation includes the exercise by the

8  employee on behalf of himself, herself, or others of any rights afforded him or her under the Labor

9  Code."  (cleaned up)).

10        Dr. Loggins has not alleged facts sufficient to support a plausible inference he engaged in

11  protected activity prior to his suspension.  Dr. Loggins alleges he opposed Stanford's investigation

12  on the grounds he is not antisemitic.  (Dkt. No. 7 ¶¶ 101-105.)  Drawing all reasonable inferences

13  in Dr. Loggins's favor, his objection he is not antisemitic is not a complaint about an allegedly

14  discriminatory practice.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1046 (2005)

15  ("Standing alone, an employee's unarticulated belief that an employer is engaging in

16  discrimination will not suffice to establish protected conduct for the purposes of establishing a

17  prima facie case of retaliation[.]").  Because Dr. Loggins's first amended complaint lacks factual

18  content to support the inference his objections to Stanford's investigation qualify as opposition to

19  unlawful discrimination, Dr. Loggins fails to allege his objections are protected activity.  So, Dr.

20  Loggins fails to state a retaliation claim against Stanford for Stanford's suspension of him based

21  on his objections to Stanford's investigation.

22        As to Dr. Loggins's retention of counsel, Dr. Loggins argues "Defendants were

23  undoubtedly aware of Plaintiff's protected activities" based on a letter Dr. Loggins's counsel sent

24  to Stanford on October 24, 2023.  (Dkt. Nos. 56 at 23; 56-1.)  The first amended complaint does

25  not mention the letter or allege Dr. Loggins's counsel contacted Stanford.  Regardless, Dr.

26  Loggins's retention of counsel could not have been the protected activity Stanford retaliated

27  against in suspending him because Stanford suspended Dr. Loggins before his counsel

28  communicated with Stanford.

Because Dr. Loggins's objection to being labelled antisemitic does not qualify as a protected activity, and Stanford could not have suspended him in retaliation for his counsel's October 24, 2023 letter because the suspension occurred before that date, Dr. Loggins fails to plausibly plead Stanford's suspension of him was unlawfully retaliatory. Accordingly, Dr. Loggins's retaliation claims involving his suspension are DISMISSED with leave to amend.

### 2. Refusal to Extend Contract

Dr. Loggins also alleges Stanford's decision not to extend his teaching contract on March 25, 2024 was in retaliation for his objections to Stanford's investigation and his retention of counsel. (Dkt. No. 7 ¶¶ 164-65.) As discussed above, Dr. Loggins' objection to Stanford's investigation on the grounds he is not antisemitic is not protected activity. So, he fails to state a retaliation claim against Stanford for Stanford's decision not to extend his contract based on his objection to Stanford's investigation.

Dr. Loggins also fails to plausibly allege Stanford refused to extend his contract in retaliation for his retention of counsel. Dr. Loggins's retaliation claims require he allege "a causal link between the protected activity and the adverse action." *Albro*, 854 F. App'x at 170. Causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

> [C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. But timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (cleaned up). "If a plaintiff relies solely on the proximity in time inference to support the causation prong, that proximity in time must be 'very close.'" *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

To show causation, Dr. Loggins relies solely on the temporal proximity—five months—between his counsel's October 24, 2023 letter to Stanford and Stanford's decision not to extend

his contract.  (Dkt. No. 56 at 24.)  But the five-month gap indicates "[t]hese events do not follow directly on each other's heels," so Dr. Loggins must allege additional facts sufficient to permit the reasonable inference the events "are closely enough linked to suggest a causal connection." *Brown v. Potter*, 457 F. App'x 668, 673 (9th Cir. 2011).  Without more, the five-month gap is insufficient to give rise to an inference of causation.  *See, e.g.*, *Govan v. Sec. Nat. Fin. Corp.*, 502 F. App'x 671, 674 (9th Cir. 2012) (ruling a six-month gap fails to support an inference of causation based on timing alone).  Because Dr. Loggins fails to allege or argue a causal link apart from the five-month gap, he fails to allege facts sufficient to support an inference of causation. So, Dr. Loggins fails to state a retaliation claim against Stanford for refusing to extend his contract based on his retention of counsel.  Accordingly, Dr. Loggins's retaliation claims as to Stanford's refusal to extend his contract are DISMISSED with leave to amend.

* * *

Dr. Loggins fails to plausibly plead Stanford suspended him and declined to extend his contract in retaliation for his objections to Stanford's investigation on the grounds he is not antisemitic or Stanford's knowledge of his retention of counsel.  Accordingly, Dr. Loggins's retaliation causes of action are DISMISSED with leave to amend.

## II.     Anti-SLAPP Motions to Strike

Dr. Loggins' defamation claim arises from Defendant Feigelis' speech at a roundtable hosted by the U.S. House of Representatives' Committee on Education & the Workforce. Defendant Feigelis and Stanford move under California Civil Procedure Code § 425.16, California's anti-SLAPP statute, to strike the defamation claim on the grounds Defendant Feigelis's alleged speech is absolutely privileged under California Civil Code § 47(b)(1). Defendant Feigelis also moves under the anti-SLAPP statute to strike all other claims against him.

California's anti-SLAPP statute "enables courts, early in litigation, to strike meritless claims in lawsuits when those claims risk chilling continued participation in matters of public significance." *Serova v. Sony Music Ent.*, 13 Cal. 5th 859, 871 (2022) (cleaned up).

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in

1

connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

2

3    Cal. Civ. Proc. Code § 425.16. "First, courts ask whether the claim calls for the anti-SLAPP

4    statute's protections and, if so, whether the claim has sufficient merit." *Gunn v. Drage*, 65 F.4th

5    1109, 1118 (9th Cir. 2023). Stanford and Defendant Feigelis bear the initial burden of showing

6    Dr. Loggins's defamation claim arises from an act in furtherance of Defendants' constitutional

7    right to free speech. *Id*. If Defendants satisfy their initial burden, then Dr. Loggins must

8    demonstrate his defamation claim is legally sufficient and factually substantiated. *Id*. Because

9    Defendants attack only the legal sufficiency of Dr. Loggins's defamation claim, the Court

10   evaluates Defendants' anti-SLAPP motion to strike according to "the Federal Rule of Civil

11   Procedure 12(b)(6) standard and consider[s] whether a claim is properly stated." *Planned*

12   *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*,

13   897 F.3d 1224 (9th Cir. 2018).

14        **A.  Defamation (Eighth Cause of Action)**

15        Dr. Loggins accuses Defendant Feigelis and Stanford of defamation based on Defendant

16   Feigelis's alleged statement Dr. Loggins was one of "STANFORD's most racist faculty

17   member[s]" and false description of Dr. Loggins's October 10, 2024, class sessions. (Dkt. Nos. 7

18   ¶¶ 140, 147; 56 at 25.)

19        **1.  First Prong: Defendant Feigelis's Protected Speech**

20        Defendants have shown Dr. Loggins's defamation claim arises from protected conduct.

21   (Dkt. No. 56 at 26-27.) Dr. Loggins accuses Defendant Feigelis of defamation for the statement

22   Defendant Feigelis submitted to the U.S. House of Representatives' Committee on Education and

23   the Workforce for a roundtable on antisemitism. (Dkt. Nos. 7 ¶ 140, 30-1 ¶ 4.) "[A]ny written or

24   oral statement or writing made in connection with an issue under consideration or review by a

25   legislative, executive, or judicial body, or any other official proceeding authorized by law" is an

26   act in furtherance of a person's First Amendment rights in connection with a public issue. Cal.

27   Civ. Code § 425.16(e). "[I]t is the context or setting itself that makes the issue a public

28   issue: all that matters is that the First Amendment activity take place in an official proceeding or

United States District Court
Northern District of California

be made in connection with an issue being reviewed by an official proceeding." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1116 (1999). Because Defendant Feigelis's statement was made in connection with a legislative proceeding, it is protected speech under § 425.16(e). So, unless Dr. Loggins demonstrates a reasonable probability of prevailing on his defamation claim, the Court must grant Defendants' motion. *See Salveson v. Kessler*, No. 22-55472, 2023 WL 2674370, at *1 (9th Cir. Mar. 29, 2023).

Dr. Loggins argues Defendant Feigelis's statements are not protected conduct because they "do not qualify as statements of an issue of public interest notwithstanding that those statements took place before a congressional panel." (Dkt. No. 63 at 16.) But "it is the context or setting itself that makes the issue a public issue:" Defendant Feigelis's statement concerned a matter of public interest because Defendant Feigelis's accused speech took place during and in connection with an official congressional proceeding. *See Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1395 (2007). Dr. Loggins also argues Defendant Feigelis's statement is not protected because it was untrue. But "California law does not require a statement to be serious or truthful in order to concern an issue of public interest." *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 969 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015). So, drawing all inferences from the record in Dr. Loggins' favor, Defendant Feigelis's accused speech is protected by the anti-SLAPP statute.

### 2.  Second Prong: Dr. Loggins's Probability of Prevailing

Dr. Loggins fails to demonstrate a probability of prevailing on his defamation claim because, drawing all reasonable inferences from the allegations in Dr. Loggins's favor, Defendant Feigelis's alleged statement is absolutely privileged under what is known as California's "litigation privilege." The litigation privilege covers statements made in any "legislative proceeding." Cal. Civ. Code § 47(b); *see Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 107 (2018) (ruling the litigation privilege covers "statements made in a 'legislative proceeding,' a 'judicial proceeding,' 'any other official proceeding authorized by law,' or 'in the initiation or course of any other proceeding authorized by law and reviewable pursuant to' pertinent provisions of the Code of Civil Procedure."); *see also 1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th

568, 586 (2003) (striking the plaintiff's claim under California's anti-SLAPP statute because "the tortious charge against [the defendant] was precluded by Civil Code section 47, subdivision (b)(1), the 'litigation privilege' as statutorily applicable to legislative proceedings."). "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. Put another way, application of the privilege does not depend on the publisher's motives, morals, ethics or intent." *Dean*, 21 Cal. App. 5th at 107-08 (cleaned up). "If the challenged action falls within the litigation privilege, the trial court should grant an anti-SLAPP motion to strike. A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes the defendant's liability on the claim." *Laker v. Bd. of Trustees of California State Univ.*, 32 Cal. App. 5th 745, 769 (2019).

Dr. Loggins concedes the alleged statement underlying his defamation claim was made in a legislative proceeding. (Dkt. No. 56 at 26-27.) He fails to address Defendants' arguments as to the applicability of the litigation privilege; indeed, his opposition fails to mention the litigation privilege at all. Because Defendant Feigelis's alleged statement is absolutely privileged under § 47(b), Dr. Loggins has no probability of prevailing on his defamation claim against Defendants as a matter of law. *Laker*, 32 Cal. App. 5th at 769. Accordingly, the Court STRIKES Dr. Loggins's defamation claim.

### 3. Leave to Amend

At the hearing, Dr. Loggins requested leave to replead his defamation claim under District of Columbia law. (Dkt. No. 70 at 35.) The District of Columbia, like California, has a legislative privilege. *Webster v. Sun Co.*, 790 F.2d 157, 159 (D.C. Cir. 1986) ("A witness is absolutely privileged to publish defamatory matter as a part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding."). The legislative privilege exists because "[a]n individual must feel unrestrained by potential defamation liability when addressing the legislature. Only then can the lawmaking process be fully informed and operate with maximum effectiveness." *Webster v. Sun Co.*, 731 F.2d 1, 5 (D.C. Cir. 1984). "The law is well established in this circuit that testimony and statements are absolutely privileged when presented to legislative proceedings at the express

request of those conducting such hearings." *Newman v. Legal Servs. Corp.*, 628 F. Supp. 535, 542 (D.D.C. 1986); *see also Banks v. Kramer*, 603 F. Supp. 2d 3, 11 (D.D.C. 2009) ("Congressional testimony, if related to the congressional proceeding, is absolutely privileged against defamation suits.") *aff'd*, No. 09-5140, 2009 WL 5526780 (D.C. Cir. Dec. 30, 2009).

Dr. Loggins argues Defendant Feigelis's statement "was completely gratuitous and not at all related to the topic for which he was asked to comment upon to Congress." (Dkt. No. 73 at 1.) "The 'some relation' requirement has been construed broadly precisely to avoid subjective judgments on the informative value of legislative input. So long as the statement has some objective pertinence to the legislative issue it was meant to address, it meets the second part of the test." *Webster v. Sun Co.*, 731 F.2d 1, 5 (D.C. Cir. 1984). Defendant Feigelis provided testimony to the U.S. House of Representative's Committee on Education & the Workforce for the roundtable "Antisemitism at Postsecondary Institutions," which occurred on February 29, 2024. (Dkt. No. 30-1 at 11-36.)[2] In his written testimony, Defendant Feigelis characterized Dr. Loggins as one of "Stanford's most racist faculty members" in the context of Dr. Loggins's October 2023 class sessions wherein he asked Jewish students to identify themselves. (*Id.* at 13-16.) So, drawing all reasonable inferences in Dr. Loggins's favor, Defendant Feigelis's statement about Dr. Loggins bears some objective relation to the legislative topic of "Antisemitism at Postsecondary Institutions." Accordingly, Defendant Feigelis's statement is absolutely privileged.

Citing *Webster*, 731 F.2d at 5 n.9, Dr. Loggins contends "the absolute privilege for statements made to the legislature or its investigative arm does not extend to republication of those

---

[2] The Court takes judicial notice of Defendant Feigelis's testimony to the U.S. House of Representative's Committee on Education & the Workforce for the roundtable "Antisemitism at Postsecondary Institutions" on February 29, 2024, as a matter of public record. (Dkt. No. 30-1 at 11-36); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts" (citation omitted)). Additionally, Defendant Feigelis's testimony is incorporated into Dr. Loggins's complaint because the complaint refers to the testimony, the testimony is central to Dr. Loggins's defamation claim, and no party questions the authenticity of the testimony. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011); *see also Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) ("Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint.").

16

statements by the legislature." (Dkt. No. 69.)  So, Dr. Loggins argues, "[s]ince [he] has alleged that Defendant Feigelis['s] written statement to Congress was subsequently republished in the congressional record by the legislature, the absolute privilege for those republished statements would not be immune from suit." (*Id.*)  Not so.  Republication of congressional testimony in the congressional record is required by law and thus absolutely privileged.  *See Newman v. Legal Servs. Corp.*, 628 F. Supp. 535, 542-43 (D.D.C. 1986) (finding the dissemination of a statement pursuant to the Freedom of Information Act was absolutely privileged).  Because Congress is required to publish public proceedings in the congressional record, *see* 44 U.S.C. § 903, the republication of Defendant Feigelis's statement is absolutely privileged under D.C. law.  It is thus unsurprising Dr. Loggins does not cite, and the Court is unaware of, any case holding an individual liable for defamation based on a statement published in the congressional record.

Because Defendant Feigelis's statement and its republication in the congressional record are absolutely privileged under District of Columbia law, leave to amend would be futile.  *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017)("If the court dismisses a complaint, it should give leave to amend unless the pleading could not possibly be cured by the allegation of other facts." (cleaned up)).  Accordingly, Dr. Loggins's eighth cause of action is STRICKEN without leave to amend.

### B.  Discrimination & Retaliation Claims

Dr. Loggins accuses Defendant Feigelis of racial discrimination under 42 U.S.C. § 1981, discrimination in violation of Title VII, and discrimination under FEHA.  He also accuses Defendant Feigelis of retaliation in violation of California Labor Code § 98.6, FEHA, and Title VII.  These claims against Defendant Feigelis arise from the same alleged conduct as his defamation claim; namely, Defendant Feigelis's statement to Congress.

#### 1.  First Prong: Defendant Feigelis's Protected Speech

As discussed above, Defendant Feigelis's statement is protected speech under § 425.16(e) because it was made in connection with a legislative proceeding.  So, unless Dr. Loggins demonstrates a reasonable probability of prevailing on his discrimination and retaliation claims against Defendant Feigelis, the Court must grant Defendant Feigelis's motion.  *See Salveson*, 2023

17

1    WL 2674370, at *1.

2        **2.   Second Prong: Plaintiff Loggins's Probability of Prevailing**

3            **i.   Title VII, FEHA**

4        Dr. Loggins fails to demonstrate a probability of prevailing on his Title VII and FEHA

5    claims against Defendant Feigelis because Dr. Loggins may not sue individual employees under

6    Title VII or for discrimination, retaliation, or failure to prevent discrimination under FEHA.

7    *Miller*, 991 F.2d at 587 (ruling there is no individual liability under Title VII); *Reno*, 18 Cal. 4ᵗʰ at

8    643 ("We conclude that the FEHA, like similar federal statutes, allows persons to sue and hold

9    liable their employers, but not individuals."); *Jones*, 42 Cal. 4th at 1160, 1173 (2008) (ruling

10   nonemployer individuals are not personally liable under FEHA for retaliation); *see also*

11   *Kovalenko*, 2023 WL 5444728, at *6 ("The Ninth Circuit has held that Title VII does not allow for

12   individual liability. . . . FEHA similarly does not allow for individual liability for discrimination,

13   retaliation, or failure to prevent violations.").  Accordingly, Dr. Loggins's second, third, fourth,

14   sixth, and seventh causes of action against Defendant Feigelis are STRICKEN without leave to

15   amend.

16           **ii.   California Labor Code § 98.6**

17       Dr. Loggins cannot plausibly allege Defendant Feigelis, a postdoctoral researcher at

18   Stanford who is not alleged to have had any supervisory authority over Dr. Loggins, took adverse

19   employment action against Dr. Loggins in violation of California Labor Code § 98.6(a).  (Dkt. No.

20   7 ¶¶ 12, 224.)  *See Henry v. Regents of the Univ. of California*, 37 F. Supp. 3d 1067, 1077-78

21   (N.D. Cal. 2014) (construing § 98.6 as requiring an "adverse action" element similarly required

22   under Title VII or FEHA), *aff'd*, 644 F. App'x 787 (9th Cir. 2016); *Lobo v. Air-India Ltd.*, No. 20-

23   CV-08790-WHO, 2021 WL 254312, at *6 (N.D. Cal. Jan. 26, 2021) (dismissing California Labor

24   Code claims when there were no facts alleged to support the inference the individual defendant

25   could plausibly be considered as someone with policy-making authority).  As Dr. Loggins cannot

26   state a § 98.6 claim against Defendant Feigelis as a matter of law, Dr. Loggins has no probability

27   of prevailing on his fifth cause of action against Defendant Feigelis.  So, Dr. Loggins's fifth cause

28   of action against Defendant Feigelis is STRICKEN without leave to amend.

United States District Court
Northern District of California

1

United States District Court
Northern District of California

### iii.   Section 1981

Finally, to allege a § 1981 intentional discrimination claim against Defendant Feigelis, Dr.

Loggins "must identify injuries flowing from a racially motivated breach of their own contractual

relationship, not of someone else's." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80

(2006); *see also Bearden v. Alameda Cnty.*, No. 19-CV-04264-SI, 2020 WL 3791645, at *3 (N.D.

Cal. July 7, 2020), *aff'd sub nom. Bearden v. Cnty. of Alameda*, No. 20-16508, 2021 WL 4891982

(9th Cir. Oct. 20, 2021) (ruling a § 1981 discrimination claim requires a plaintiff allege he

attempted to contract for certain services and was denied the right to contract for those services

based on his status as a protected-class member); *Bibi v. VxL Enterprises, LLC*, No. 21-CV-

04670-EMC, 2021 WL 5998439, at *4 (N.D. Cal. Dec. 20, 2021) ("Because Dr. Bibi has failed to

make allegation that racial discrimination blocked the creation of a contractual relationship, or

impaired an existing contractual relationship, he has failed to plead a § 1981 claim against

VXL.").  Dr. Loggins does not allege or argue he had any actual or proposed contractual

relationship with Defendant Feigelis, so he has no probability of prevailing on his § 1981 claim

against Defendant Feigelis.  Accordingly, Dr. Loggins's first cause of action against Defendant

Feigelis is STRICKEN without leave to amend.

\* \* \*

Dr. Loggins's first cause of action against Defendant Feigelis is STRICKEN without leave

to amend because Dr. Loggins had no actual or proposed contractual relationship with Defendant

Feigelis.  His second, third, fourth, sixth, and seventh causes of action against Defendant Feigelis

are STRICKEN without leave to amend because Dr. Loggins may not sue individual employees

under Title VII or for discrimination, retaliation, or failure to prevent discrimination under FEHA.

His fifth cause of action against Defendant Feigelis is STRICKEN without leave to amend

because Dr. Loggins cannot plausibly allege Defendant Feigelis took any adverse employment

action against Plaintiff in violation of California Labor Code § 98.6(a).  Finally, Dr. Loggins's

eighth cause of action against Defendant Feigelis is STRICKEN without leave to amend because

the alleged statement underlying Dr. Loggins's defamation claim is absolutely privileged under

both California and District of Columbia law.

1

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, the Court rules as follows:

- Dr. Loggins's first, second, fourth, and sixth causes of action against Stanford are DISMISSED with leave to amend because Dr. Loggins fails to allege facts sufficient to support the inference Dr. Loggins's protected characteristics caused or motivated any alleged adverse employment action.

- Dr. Loggins's third, fifth, and seventh causes of action alleging retaliation against Stanford are DISMISSED with leave to amend because Dr. Loggins fails to identify a protected activity underlying his suspension and fails to plausibly plead causation as to Stanford's refusal to extend his teaching contract.

- Dr. Loggins's second, third, fourth, sixth, and seventh causes of action against the individual Stanford administrators are DISMISSED without leave to amend because Dr. Loggins may not sue individual employees under Title VII or for discrimination, retaliation, or failure to prevent discrimination under California's FEHA. The same claims against Defendant Feigelis are STRICKEN without leave to amend for the same reason.

- Dr. Loggins's first cause of action against Defendant Feigelis is STRICKEN without leave to amend because Dr. Loggins cannot plausibly allege an actual or proposed contractual relationship with Defendant Feigelis.

- Dr. Loggins's fifth cause of action against Defendant Feigelis is STRICKEN without leave to amend because Dr. Loggins cannot plausibly allege Defendant Feigelis took any adverse employment action against Dr. Loggins in violation of California Labor Code § 98.6(a).

- Dr. Loggins's eighth cause of action against all Defendants is STRICKEN without leave to amend because the alleged statement underlying Dr. Loggins's defamation claim is absolutely privileged, so Dr. Loggins has no probability of prevailing.

//

//

//

//

Dr. Loggins's amended complaint, if any, must be filed by September 20, 2024 and may not add any new defendants or claims without first seeking further leave to amend. The September 5, 2024 case management conference is continued to November 21, 2024 at 1:30 p.m. via Zoom video. A joint case management conference statement is due November 14, 2024.

This Order disposes of Docket Nos. 30 and 57.

**IT IS SO ORDERED.**

Dated: August 26, 2024

JACQUELINE SCOTT CORLEY
United States District Judge